UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,


      -against-                                  S1 05 Crim. 0888 (LAK)


JEFFREY STEIN, et al.,

                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

Justin S. Weddle
Kevin M. Downing
Stanley J. Okula, Jr.
Margaret Garnett
Assistant United States Attorneys
MICHAEL J. GARCIA
UNITED STATES ATTORNEY
*Attorneys for the United States*

David Spears
RICHARDS SPEARS KIBBE & ORBE LLP
Craig Margolis
VINSON & ELKINS LLP
*Attorneys for Jeffrey Stein*

Stanley S. Arkin
Joseph V. DiBlasi
Elizabeth A. Fitzwater
ARKIN KAPLAN LLP
*Attorneys for Jeffrey Eischeid*

Michael S. Kim
Leif T. Simonson
KOBRE & KIM LLP
*Attorneys for Mark Watson*

Caroline Rule
Robert S. Fink
Christopher M. Ferguson
Usman Mohammad
KOSTELANETZ & FINK, LLP
*Attorneys for Richard Smith*

Richard Mark Strassberg
GOODWIN PROCTOR LLP
*Attorneys for David Greenberg*

George D. Niespolo
DUANE MORRIS LLP
*Attorneys for Randy Bickham*

Steven M. Bauer
Karli E. Sager
LATHAM & WATKINS, LLP
*Attorneys for John Larson*

David C. Scheper
Julio V. Vergara
OVERLAND BORENSTEIN SCHEPER
& KIM LLP
*Attorneys for Robert Pfaff*

Stuart Abrams
M. Breeze McMennamin
David S. Hammer
FRANKEL & ABRAMS
Jack S. Hoffinger
Susan Hoffinger
HOFFINGER STERN & ROSS, LLP
*Attorneys for Raymond J. Ruble*

Ronald E. DePetris
Marion Bachrach
Dana Moskowitz
DEPETRIS & BACHRACH, LLP
*Attorneys for Philip Wiesner*

John F. Kaley
DOAR RIECK KALEY & MACK
*Attorneys for Steven Gremminger*

Susan R. Necheles
HAFETZ & NECHELES
*Attorneys for Richard Rosenthal*

James R. DeVita
BRYAN CAVE LLP
John A. Townsend
TOWNSEND & JONES LLP
*Attorneys for Carol Warley*

Michael Madigan
Robert H. Hotz, Jr.
Christopher T. Schulten
AKIN GUMP STRAUSS HAUER
& FELD LLP
*Attorneys for John Lanning*

E. Lawrence Barcella, Jr.
Deborah Salzberg
PAUL, HASTINGS, JANOFSKY &
WALKER LLP
*Attorneys for Larry DeLap*

Russell M. Gioiella
Richard M. Asche
LITMAN, ASCHE & GIOIELLA, LLP
*Attorneys for Carl Hasting*

Cristina Arguedas
Ann Moorman
ARGUEDAS, CASSMAN & HEADLY, LLP
*Michael Horowitz Michelle Seltzer*
CADWALADER, WICKERSHAM &
TAFT LLP
*Attorneys for Gregg Ritchie*

Ronald P. Fischetti
*Attorney for David Amir Makov*

LEWIS A. KAPLAN, *District Judge.*

Eighteen financial professionals and attorneys, all but two formerly employed by or affiliated with the accounting firm KPMG, stand indicted in what has been called the largest criminal tax fraud case in history.[1] The case is before the Court on a host of defendants' motions. This opinion deals with their applications for severance.

---

[1] An additional defendant has pleaded guilty.

*Facts*

A.     *The Indictment*

The superseding indictment contains forty-six counts. Count One (the "Conspiracy Count") charges all defendants with conspiracy to defraud the IRS by designing, marketing, and implementing fraudulent tax shelters for wealthy individual clients and deliberately concealing those shelters from the IRS. Defendants' scheme allegedly involved at least four separate tax shelter vehicles designed to generate phony tax losses through a series of sham transactions. Defendants allegedly sought to protect their clients from potential IRS penalties by paying co-defendant Raymond Ruble, a New York tax attorney, to issue opinion letters falsely representing that the tax shelters were likely to survive IRS review. Count One charges also that the defendants conspired to conceal the fraudulent tax shelters from the IRS by, among other things, failing to register the shelters with the IRS, preparing tax returns that concealed the phony tax losses, and obstructing IRS and Senate investigations into the shelters.[2]

Counts Two through Forty (the "Tax Evasion Counts") charge all defendants with tax evasion based on the tax returns of approximately twenty-five different tax shelter clients and defendants.[3]

Counts Forty-one through Forty-four (the "Ruble Counts") charge Ruble with evading taxes on income related to the alleged scheme, including payments he received from

---

[2]     Ind. ¶¶ 1-78.

[3]     *Id.* ¶¶ 79-80.

nominee entities controlled by John Larson and Robert Pfaff in exchange for fraudulent opinion letters included in Count One. Two of these counts name defendants Larson and Pfaff as well.[4]

Finally, Counts Forty-five and Forty-six (the "Obstruction Counts") charge certain defendants with obstructing the IRS investigation of the tax shelters. Count Forty-five charges that Richard Smith and Steven Gremminger caused KPMG to make false statements regarding its compliance with IRS document requests. Count Forty-six charges that Gremminger and Jeffrey Eischeid caused KPMG to misinform investigators that "KPMG did not promote or market SOS."[5]

## B.  *Defendants' Motions*

Although defendants have filed fifteen separate motions for severance, their arguments are largely duplicative.[6] Several seek severance of the Obstruction and the Ruble Counts,[7] and Richard Rosenthal seeks severance of those of the Tax Evasion Counts that are based on his personal tax returns.[8] A number of the motions seek severance of defendants. Several defendants seek separate trials or severance from defendants who allegedly made incriminating statements about the conspiracy.[9] Others argue that the defendants should be severed and tried according to their roles

---

[4]

*Id.* ¶¶ 81-83.

[5]

*Id.* ¶¶ 84-85..

[6]

Defendants briefs are cited based on the numbering system in Exhibit A of the government's opposition brief.

[7]

D. Brs. 11, 15, 16, 17, 18, 21 22, 23, 24, 26.

[8]

D. Br. 23.

[9]

*E.g.,* D. Brs. 9, 11, 12, 18, 19, 20, 21, 24, 25.

in the alleged scheme.[10]

*Discussion*

Defendants seek severance under FED.R.CRIM.P. 8 and 14(a) and the Second Circuit's decision in *United States v. Casamento*.[11] This opinion addresses each in turn.

A.      *Rule 8(b)*

FED.R.CRIM.P. 8 governs the joinder of multiple offenses and defendants in a single indictment or information. Though Rule 8(a) addresses joinder of offenses and Rule 8(b) concerns joinder of defendants, "when a defendant in a multi-defendant action challenges joinder, whether of offenses or defendants, the motion is construed as arising under Rule 8(b)."[12]

Rule 8(b) permits joinder of defendants who "are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." The Second Circuit has explained that "a 'series' exists if there is a logical nexus between the transactions"[13] and that joinder is proper when the charged offenses are "unified by some

---

[10]
D. Brs. 15, 16, 20, 23, 26.

[11]
887 F.2d 1141 (2d Cir. 1989).

[12]
*United States v. Rojas,* No. S 01 Cr. 257 (AGS), 2001 WL 1568786, *5 (S.D.N.Y. Dec. 7, 2001) (citing *United States v. Turoff,* 853 F.2d 1037, 1043 (2d Cir. 1988)).

[13]
*United States v. Joyner,* 201 F.3d 61, 75 (2d Cir. 2000).

substantial identity of facts or participants, or arise out of a common plan or scheme."[14]

Defendants claim that the Obstruction Counts, the Ruble Counts, and the Tax Evasion Counts based on Rosenthal's tax returns are misjoined because they are unrelated to the primary conspiracy to design and market tax shelters. Their arguments are unpersuasive.

The Conspiracy Count charges all defendants with a single conspiracy to design, implement, and conceal fraudulent tax shelters. The alleged conduct at issue in the Tax Evasion and Obstruction counts all is said to have been in furtherance of that conspiracy.[15] The claim of an overall conspiracy said to link the substantive crimes charged in an indictment justifies joinder under Rule 8(b).[16] Further, even if Count One actually alleged more than one conspiracy, as defendants allege in a separate motion,[17] joinder still would be proper under Rule 8(b) because there would be a logical connection among all of the counts.[18] The alleged conspiracy to design and implement fraudulent tax shelters is clearly related to the alleged tax evasion that was an object of the scheme. Likewise, even if the agreement to conceal the tax shelters from regulators were a separate

[14]
*United States v. Stewart,* 433 F.3d 273, 314 (2d Cir. 2006) (citing *United States v. Attanasio,* 870 F.2d 809, 815 (2d Cir. 1989)) (internal quotation marks omitted).

[15]
The conduct underlying Count Forty Five is alleged to have been an overt act in furtherance of the Count One conspiracy. *Compare* Ind. ¶¶ 78 vv *with id.* ¶ 85. That underlying Count Forty Six fits well within the objects, means and methods of Count One.

[16]
*United States v. Bernstein,* 533 F.2d 775, 789 (2d Cir.), *cert. denied,* 429 U.S. 998 (1976); *United States v. Bin Laden,* 109 F.Supp.2d 211, 214 n.7 (S.D.N.Y. 2000); *United States v. Lino,* 00 Cr. 632 (WHP), 2001WL 8356, at *24 (S.D.N.Y. Dec. 29, 2000).

[17]
*See* D. Br. 1.

[18]
Defendant Wiesner moves also for a pretrial proffer from the government justifying joinder in light of defendants' claim that Count One charges more than one conspiracy. D. Br. 25. Because there is a logical connection among all the acts charged in the indictment regardless of the number of conspiracies alleged in Count One, this application is denied.

conspiracy, as defendants allege, it would have been connected logically to the original plan to design and market the shelters.[19] Indeed, "[c]ourts have repeatedly recognized the appropriateness of trying perjury or obstruction charges together with the underlying crimes to which the perjury relates, where proof of the alleged perjury requires proof of knowledge of the underlying crime."[20] Here, in order to prove that Gremminger, Eischeid, and Smith concealed the scheme from IRS investigators, the government will have to prove that the scheme existed in the first place and that those defendants knew of it. Accordingly, the Tax Evasion and Obstruction Counts and the Conspiracy Count are unified by a substantial identity of facts and therefore properly joined under Rule 8(b).

The Ruble Counts also are properly joined regardless of whether Count One alleges multiple conspiracies. The Second Circuit has made clear that tax evasion counts are joined properly where, as here, the defendant evaded taxes on funds received from other illegal activities charged in the indictment.[21] Moreover, the Ruble Counts clearly depend on many of the same facts as the Conspiracy Count, which alleges that certain defendants paid Ruble to issue fraudulent opinion letters and to participate in the scheme.

At least one defendant, David Greenberg, argues that he is misjoined under Rule 8(b).

---

[19]

*United States v. Feyrer,* 333 F.3d 110, 114 (2d Cir. 2003) (joinder proper where two alleged conspiracies were "united by overlapping facts and participants and a common plan"); *United States v. Chang,* 131 F.3d 132 (2d Cir. 1997) (joinder appropriate where "the two conspiracies were of the same or similar character . . . and were connected as parts of a common scheme or plan").

[20]

*United States v. Butler,* No. S104 Cr. 340 (GEL), 2004 WL 2274751, at *4 (S.D.N.Y. Oct. 7, 2004) (collecting cases).

[21]

*See United States v. Turoff,* 853 F.2d 1037, 1043 (2d Cir. 1988).

He claims that the case against him is different from the case against his co-defendants because he had no involvement in three of the four tax shelter vehicles alleged in the indictment. This argument is meritless. First, it is an "'established rule' that 'a non-frivolous conspiracy charge is sufficient to support joinder of defendants under FED.R.CRIM.P. 8(b).'"[22] Further, even if the transactions in which Greenberg participated and the other tax shelter vehicles alleged in Count One were not part of a single overarching scheme, as Greenberg contends, there is a sufficient relationship among them to justify joinder under Rule 8(b).

## B.    Rule 14(a)

Even where joinder is proper under Rule 8(b), a court may sever counts or defendants to prevent unfair prejudice to a defendant or the government under Rule 14(a).[23] As the Supreme Court has explained, however, the interests of efficiency and consistency of outcome generally favor joint trials of defendants indicted together.[24] Accordingly, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."[25] Further, even where there is a serious risk of prejudice, "less drastic measures – such

---

[22] *United States v. Uccio,* 917 F.2d 80, 87 (2d Cir. 1990) (quoting *United States v. Nerlinger,* 862 F.2d 967, 973 (2d Cir. 1988); *see also United States v. Vanwort,* 887 F.2d 375, 384 (2d Cir. 1989), *cert. denied,* 495 U.S. 906 (1990).

[23] *Butler,* 2004 WL 2274751 at *3 (citing *United States v. Cody,* 722 F.2d 1052, 1061 (2d Cir. 1983)).

[24] *Zafiro v. United States,* 506 U.S. 534, 537 (1993).

[25] *Id.* at 539.

as limiting instructions – often suffice as an alternative to granting a Rule 14 severance motion."[26]

Defendants here argue that a joint trial of all counts and defendants would result in prejudice sufficiently substantial to justify severance under Rule 14(a). First, certain defendants claim that they played limited roles in the alleged conspiracy and that trying them with more culpable defendants would be prejudicial. The Second Circuit has made clear, however, that "differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials."[27] Moreover, it would blink reality to ignore the fact that the joinder of relatively peripheral defendants can work to their advantage when the attention of the jury is focused on the activities of those accused of far more extensive wrongdoing.

Second, defendants argue that a joint trial would create spillover prejudice. The possibility that some incriminating evidence will be admissible only against certain defendants does not, as defendants assert, justify severance. Because all defendants are charged with the same conspiracy, much of the evidence would be admissible against each defendant, even in a separate trial.[28] As the Second Circuit has explained, such evidence is "neither spillover nor prejudicial."[29]

---

[26]

*Feyrer,* 333 F.3d at 114.

[27]

*United States v. Chang An-Lo,* 851 F.2d 547, 557 (2d Cir.), *cert. denied,* 488 U.S. 966 (1988) (internal quotation marks omitted); *see also United States v. Locascio,* 6 F.3d 924, 947 (2d Cir. 1993), *cert. denied,* 511 U.S. 1070 (1994) ("[T]his Court has repeatedly recognized that joint trials involving defendants who are only marginally involved alongside those heavily involved are constitutionally permissible.").

[28]

*United States v. Salameh,* 152 F.3d 88, 115 (2d Cir. 1998), *cert. denied,* 525 U.S. 1112 (1999).

[29]

*United States v. Rosa*, 11 F.3d 315, 341 (2d Cir. 1993), *cert. denied,* 511 U.S. 1042 (1994); *see also Salameh,* 152 F.3d at 115-16; *United States v. Villegas,* 899 F.2d 1324, 1347-48 (2d Cir.), *cert. denied,* 498 U.S. 991 (1990).

Nor does the joinder of the Obstruction and the Ruble Counts threaten sufficient spillover prejudice, as these counts are not particularly inflammatory.[30] Further, appropriate limiting instructions likely would eliminate spillover prejudice between defendants and counts.[31]

Third, defendants argue for severance based on the potential for antagonistic defenses. They assert, for example, that the defendants charged with designing and approving the shelters will claim that the shelters were legal as designed and that any illegality must have resulted from their implementation, while defendants charged with marketing and implementing the shelters may make the opposite argument. As the Supreme Court explained *Zafiro v. United States*,[32] however, "[m]utually antagonistic defenses are not prejudicial *per se*." Instead, they require severance only if "acceptance of one party's defense would tend to preclude the acquittal of the other."[33] The potential defenses here do not rise to this level.[34] It would be entirely possible, for example, for a jury to find that the tax shelters were legal as designed *and* as implemented.[35]

---

[30]     *United States v. Li,* 133 F.3d 908 (2d Cir. 1997) (joint trial was not prejudicial because the evidence for each count was non-inflammatory); *Butler,* 2004 WL 2274751 at *7 (charges that did "not involve shocking or outrageous actions" would not create spillover prejudice).

[31]     *Butler,* 2004 WL 2274751 at *5 (denying severance after noting that "the jury will be instructed to consider the evidence against each defendant separately and there is no reason to believe it will not follow those instructions").

[32]     506 U.S. at 538.

[33]     *Salameh,* 152 F.3d at 116.

[34]     This is particularly so in light of the government's recent clarification of its theory. Tr., Mar. 30, 2006, at 123-26.

[35]     Conversely, defendants Mark Watson and Larry DeLap claim that a joint trial would be prejudicial because their co-defendants have information that exculpates them, but likely would refuse to testify on their behalf at a joint trial because such testimony would incriminate them. Watson claims that his co-defendants might testify on his behalf if he was

Fourth, defendants argue that a joint trial would be unreasonably long and burdensome. Severance is not likely to result in a significant time savings, however, because much of the evidence regarding the conspiracy would be admissible against all defendants, even if they were tried individually or in smaller groups. Although severance would reduce the number of defense lawyers cross-examining witnesses and giving opening and closing statements, any attendant time savings would be outweighed by the risk of inconsistent verdicts, the burden on the court and the prosecution of trying the defendants or several groups of defendants *seriatim,* and the need for defense counsel to cover repeatedly on cross-examination in successive trials material that could be covered but once in a joint trial.

Defendants remaining arguments also fail to demonstrate that a joint trial would compromise a specific trial right or prevent the jury from making reliable decisions. Accordingly, while the Court is not unsympathetic to some of defendants' concerns and urges the government to streamline its case, severance is not warranted under Rule 14(a).

*C.* United States v. Casamento

Finally, defendants seek severance under the Second Circuit's decision in *Casamento.*

---

tried after them. D. Br. 19; D. Rep. Br. 18. This does not suffice to establish prejudice under Rule 14(a). In deciding whether to grant severance based on the defendant's alleged need to call a co-defendant, district courts consider "(1) the sufficiency of the showing that the co-defendant would testify at a severed trial and waive his Fifth Amendment privilege; (2) the degree to which the exculpatory testimony would be cumulative; (3) the counter arguments of judicial economy; and (4) the likelihood that the testimony would be subject to substantial, damaging impeachment." *United States v. Wilson,* 11 F.3d 346, 354 (2d Cir. 1993). Here, there is no evidence that any of the other defendants would be willing to offer favorable testimony if – and only if – either Watson or DeLap were tried separately. Judicial efficiency concerns also weighs against severance, regardless of whether the testimony would be cumulative or subject to impeachment.

There, the court rejected a due process challenge to the seventeen month joint trial of twenty-one defendants for money laundering and narcotics trafficking, holding that the length and complexity of the trial did not create substantial prejudice. Nevertheless, it expressed its "misgivings about trials of this magnitude" and established guidelines for future decisions.[36] In such cases, district courts should gauge the time anticipated to present the government's case based on a "good faith estimate" from the prosecutor and make its own independent assessment.[37] Where that time exceeds four months,

> "the judge should oblige the prosecutor to present a reasoned basis to support a conclusion that a joint trial of all the defendants is more consistent with the fair administration of justice than some manageable division of the case into separate trials for groups of defendants. In determining whether the prosecutor has made an adequate showing, the judge should weigh the interests of the prosecution, the defendants, the jurors, the court, and the public."[38]

The prosecutor's showing must be "especially compelling" where the trial will include more than ten defendants.[39]

Here, the government estimates that its case will take three months, including cross-examination by defendants.[40] The Court pressed the government as to the basis for the estimate, inquiring as to numbers of important exhibits and of witnesses. On the basis of that information, its

---

[36] 887 F.2d at 1151.

[37] *Id.* at 1151-52.

[38] *Id.* at 1152.

[39] *Id.*

[40] Contrary to defendants' assertions, there is no contradiction between this estimate, which *includes* cross-examination, and the government's subsequent estimate of two months *excluding* cross-examination.

assessment of the indictment, and its experience both on the bench and at the Bar, it independently accepts this estimate and intends to hold the government to it. Even if the government's case were to exceed four months, however, the government's case would be sufficiently compelling to warrant a joint trial of all defendants. As discussed above, much of the evidence regarding the conspiracy would be admissible against all defendants, even if each were tried individually. Separate trials would not result in significant time savings for defendants or jurors and would increase radically the burden on the Court and the prosecution. The interest of the public in consistent outcomes also supports a joint trial. Further, a joint trial here would be substantially shorter – and include at least three fewer defendants – than the one approved *Casamento*. To be sure, the government's allegations here perhaps may prove more complex than those in *Casamento*. Nevertheless, this case is not beyond the ken of our jury pool, particularly given the high caliber of the attorneys involved.

Accordingly, the Court concludes that a joint trial would be more consistent with the administration of justice than the various separate and small-group trials proposed by defendants.

*Conclusion*

For the foregoing reasons, defendants' motions for severance and defendant Wiesner's motion for a pretrial proffer justifying joinder are denied.

SO ORDERED.

Dated: April 4, 2006

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)