UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

   -against-           S1 05 Crim. 0888 (LAK)

JEFFREY STEIN, et al.,

      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

Justin S. Weddle
Kevin M. Downing
Stanley J. Okula, Jr.
Margaret Garnett
Assistant United States Attorneys
MICHAEL J. GARCIA
UNITED STATES ATTORNEY
*Attorneys for the United States*

David Spears
RICHARDS SPEARS KIBBE & ORBE LLP
Craig Margolis
VINSON & ELKINS  LLP
*Attorneys for Jeffrey Stein*

Stanley S. Arkin
Joseph V. DiBlasi
Elizabeth A. Fitzwater
ARKIN KAPLAN LLP
*Attorneys for Jeffrey Eischeid*

Michael S. Kim
Leif T. Simonson
KOBRE & KIM LLP
*Attorneys for Mark Watson*

Caroline Rule
Robert S. Fink
Christopher M. Ferguson
Usman Mohammad
KOSTELANETZ & FINK, LLP
*Attorneys for Richard Smith*

Richard Mark Strassberg
GOODWIN PROCTOR  LLP
*Attorneys for David Greenberg*

George D. Niespolo
DUANE MORRIS LLP
*Attorneys for Randy Bickham*

Steven M. Bauer
Karli E. Sager
LATHAM & WATKINS, LLP
*Attorneys for John Larson*

David C. Scheper
Julio V. Vergara
OVERLAND BORENSTEIN SCHEPER
& KIM LLP
*Attorneys for Robert Pfaff*

Stuart Abrams
M. Breeze McMennamin
David S. Hammer
FRANKEL & ABRAMS
Jack S. Hoffinger
Susan Hoffinger
HOFFINGER STERN & ROSS, LLP
*Attorneys for Raymond J. Ruble*

Ronald E. DePetris
Marion Bachrach
Dana Moskowitz
DEPETRIS & BACHRACH, LLP
*Attorneys for Philip Wiesner*

John F. Kaley
DOAR RIECK KALEY & MACK
*Attorneys for Steven Gremminger*

Susan R. Necheles
HAFETZ & NECHELES
*Attorneys for Richard Rosenthal*

James R. DeVita
BRYAN CAVE LLP
John A. Townsend
TOWNSEND & JONES LLP
*Attorneys for Carol Warley*

Michael Madigan
Robert H. Hotz, Jr.
Christopher T. Schulten
AKIN GUMP STRAUSS HAUER
& FELD LLP
*Attorneys for John Lanning*

E. Lawrence Barcella, Jr.
Deborah Salzberg
PAUL, HASTINGS, JANOFSKY &
WALKER LLP
*Attorneys for Larry DeLap*

Russell M. Gioiella
Richard M. Asche
LITMAN, ASCHE & GIOIELLA, LLP
*Attorneys for Carl Hasting*

Cristina Arguedas
Ann Moorman
ARGUEDAS, CASSMAN & HEADLY, LLP
*Michael Horowitz Michelle Seltzer*
CADWALADER, WICKERSHAM &
TAFT LLP
*Attorneys for Gregg Ritchie*

Ronald P. Fischetti
*Attorney for David Amir Makov*

LEWIS A. KAPLAN, *District Judge.*

As noted elsewhere, defendants have filed 26 motions supported by memoranda of law totaling approximately 1,100 pages. The motions are quite duplicative. The Court is dealing with them in a series of orders and memorandum opinions, including this one, which is addressed to so much of the motions as seek additional discovery other than disclosure of grand jury minutes, which will be dealt with elsewhere.

*Civil Audit Files in the Possession of the IRS*

Many, perhaps all, defendants seek an order compelling the government to disclose to defendants' civil audit files relating to all FLIP/OPIS and SOS transactions that are not in the possession of the prosecution team – the members of the United States Attorney's Office involved in this case and the IRS personnel in the Criminal Investigation Division. These materials are in the possession of the civil side of the IRS in locations dispersed throughout the country. There is no evidence that any member of the prosecution team has reviewed any of the requested materials.

While the prosecution's disclosure obligation in some circumstances may extend to materials beyond the knowledge of the individual prosecutors assigned to a case, it does not extend to the collective knowledge of the entire United States government or even to the entire government agency concerned. To the contrary, "the prosecution is only obliged to disclose information known to others acting on the government's behalf in a particular case."[1] The Court does not accept that the entire Internal Revenue Service is "acting on the government's behalf" in this case. In consequence, assuming without deciding that the moving defendants otherwise have satisfied the requirements of FED. R. CRIM. P. 16, they are not entitled to these documents.

*Bills of Particulars*

Nearly all defendants have moved for bills of particulars, seeking details concerning various aspects of the charges against them.

---

[1] *United States v. Pelullo,* 399 F.3d 197, 218 (3d Cir. 2005), *cert. denied,* 126 S.Ct. 1141 (2006); *accord, United States v. Avellino,* 136 F.3d 249, 255 (2d Cir. 1998); *United States v. Locascio,* 6 F.3d 924, 949 (2d Cir. 1993).

A bill of particulars is available where neccessary "to prepare for trial; to prevent surprise, and to interpose a plea of double jeopardy should [a defendant] be prosecuted a second time for the same offense."[2] It is not, however, a discovery device or investigative tool and is required "only when the charges in the indictment are so general that they do not advise the defendant of the specific acts of which he is accused."[3] Nor is it a device to obtain disclosure of how the government intends to prove its case.

Here, the indictment describes in detail the nature and goals of the charged conspiracy and discloses sufficient information generally to inform defendants of the charges against them. The government has produced voluminous discovery, much of it in a word-searchable electronic database – a factor that weighs against granting a bill.[4] Perhaps most important, the Deferred Prosecution Agreement between the government and KPMG incorporates an agreed Statement of Facts that lays out the government's theory in considerable detail. In the main, therefore, the Court is not satisfied that any defendant needs a bill of particulars for any proper purpose. There is, however, one exception.

The indictment repeatedly alleges that defendants devised, marketed, and implemented fraudulent tax shelters."[5] Thus, the indictment on its face appears to be consistent with at least two theories: (1) the structures of the tax strategies clearly violated existing tax law, and the defendants nevertheless wilfully implemented them, and (2) the structures, if they had been implemented through

---

[2] *United States v. Bortnovsky,* 820 F.2d 572, 573 (2d Cir. 1987).

[3] *United States v. Torres,* 901 F.2d 205, 234 (2d Cir. 1990).

[4] *See, e.g., United States v. Reinhold,* 994 F. Supp. 194, 201 (S.D.N.Y. 1998).

[5] Ind. ¶¶ 25-26, 28.

*bona fide* transactions, would not have involved criminal violations of the tax laws, but the defendants implemented them fraudulently by such measures as sham transactions, false tax returns, and the like.

There are clear indications that the government intends to proceed on the second theory, but not the first. For example, a senior advisor to the Commissioner of the IRS reportedly told an ABA gathering last summer that the case against KPMG "is about core criminally fraudulent activities in four specific contexts:" "(1) prepar[ing] false and fraudulent tax returns, (2) prepar[ing] false and fraudulent factual representations as part of the underlying documentation and issuing tax opinions based on those false representations, (3) actively concealing from the IRS the abusive tax shelter transactions by failing to register them, and (4) imped[ing] the IRS audit by knowingly failing to produce documents covered by the summonses."[6] The government seemed to adopt this view during the argument of the motions in this case.[7] Nevertheless, ambiguity remains, as the government has yet to define with precision exactly what it means by devising, marketing, and implementing fraudulent tax shelters.

In ordinary circumstances, a degree of ambiguity would fall considerably short of what is required to warrant a bill of particulars. But the circumstances here are not ordinary. This is said to be the largest criminal tax case in history, involving 18 defendants, 46 counts, and an alleged tax loss said to be in the billions. The government forecasts a trial of several months. The ramifications of the government proceeding on one track versus the other, or both, are profound, both for the defendants' ability properly to prepare for trial and for the conduct of the trial itself. Accordingly, the government, on or before April 21, 2006, shall furnish a bill of particulars as follows:

---

[6] Tax Analysts, Article d (Sept. 20, 2005).

[7] *See* Tr., Mar. 30, 2006, at 123-27.

With respect to each of the tax shelters as to which the government intends to offer proof, does the government allege that the tax shelter was fraudulent as designed and approved by KPMG and, if so, in what respects?

*Trial Exhibits and Witness List*

Several defendants seek an order requiring the government to produce its trial exhibits and a witness list months before trial. The government agrees to the request in principle provided the obligation is mutual. Accordingly, the government shall provide its list of intended witnesses and premarked copies of the exhibits it intends to offer on its case-in-chief no later than July 1, 2006. Defendants shall provide their lists of intended witnesses and premarked copies of the exhibits they intend to offer on their cases-in-chief no later than August 1, 2006. Additions will be permitted only on a showing of good cause. The exchange of premarked exhibits may be in electronic form.

Brady *and* Giglio *Material*

Certain of the defendants seek the disclosure of exculpatory and impeachment material under *Brady v. Maryland*[8] and *Giglio v. United States,*[9] respectively. The government agrees that it is obliged to disclose material exculpatory information, as well as information that would be useful in impeaching its witnesses, at a point when the information may be used effectively by the defense. It claims, however, that there is no such information in the hands of the prosecution team. Even putting to one side defendants' claim, rejected above, that the government's obligation extends to information possessed by the United States and its agencies but not the prosecution team in this case, the defense

---

[8] 373 U.S. 83 (1963).

[9] 405 U.S. 150 (1972).

argues that it is likely that the prosecution team has such evidence and that it should be produced. Before proceeding to specifics, however, it is useful to focus on the Court's role in dealing with such a dispute prior to trial.

The duty of a prosecutor to turn over evidence favorable to the accused rests on the proposition that "our system of the administration of justice suffers when any accused is treated unfairly."[10] When a failure to produce such information arises following a conviction, a court naturally is concerned with whether the failure was prejudicial. As the point is fairness to the accused rather than discovery for its own sake or punishment of prosecutors, it would make little sense to overturn convictions in the absence of sufficient reason to believe that the outcome would have been different if the evidence had been disclosed. Accordingly, a defendant seeking to upset a conviction on the basis of a *Brady* violation must show not only that the prosecution failed to disclose evidence favorable to the defendant, but that the evidence would have been material in the sense that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."[11]

It has been argued that a different approach must be taken prior to trial. One court has written that as "[t]he judge cannot know what possible effect certain evidence will have on a trial not yet held," a "court should require the disclosure of favorable evidence under *Brady* and *Giglio* [before

---

[10]

      *Brady,* 373 U.S. at 87; *see also United States v. Coppa,* 267 F.3d 132, 139 (2d Cir. 2001) ("essential purpose" of *Brady* and its progeny "is to protect . . . right to a fair trial").

[11]

      *Avellino,* 136 F.3d at 256; *accord, United States v. Madori,* 419 F.3d 159, 169 (2d Cir. 2005), *cert. denied,* 126 S.Ct. 1080 (2006); *Coppa,* 267 F.3d at 140.

trial] without attempting to analyze its 'materiality' at trial."[12]  It appears, however, that this view has been rejected in this Circuit.

In *Coppa,* the district court concluded, subject to a narrow exception, that "the Constitution requires the government to provide a defendant with all exculpatory and impeachment materials immediately upon request by a defendant, even if the request is made far in advance of trial."[13]  The Second Circuit, however, granted mandamus to overturn this ruling, holding that "a *Brady* violation occurs only where the government suppresses evidence that 'could reasonably [have been] taken to put the whole case in such a different light as to undermine confidence in the verdict.'"[14]  In doing so, it rejected the view that *Brady* imposes a duty independent of any prejudice to the accused:

> "Although the government's obligations under *Brady* may be thought of as a constitutional duty arising before or during the trial of a defendant, the scope of the government's constitutional duty – and, concomitantly, the scope of a defendant's constitutional right – is ultimately defined retrospectively, by reference to the likely effect that the suppression of particular evidence had on the outcome of the trial."[15]

The fact that there can be no *Brady* violation in the absence of prejudice is not to say either that the government has no cause for concern, or that a trial court is without power to order disclosure, in advance of trial.  The government faces the prospect that too niggardly an approach risks the validity of any conviction and thus "should resolve . . . doubts [as to the usefulness of evidence to

---

[12]     *United States v. Carter,* 313 F. Supp.2d 921, 925 (E.D. Wis. 2004); *accord United States v. Sudikoff,* 36 F. Supp.2d 1196, 1198-99 (C.D. Cal. 1999); *see also United States v. Peitz,* No. 01-CR-852, 2002 WL 226865, at *3 (N.D. Ill. Feb. 14, 2002).

[13]      267 F.3d at 135.

[14]      *Id.* at 139 (quoting *Kyles v. Whitley,* 514 U.S. 419, 435 (1995)).

[15]      267 F.3d at 140.

the defense] in favor of full disclosure."[16] Moreover, the trial court "has wide latitude . . . to carry out successfully its mandate to effectuate, as far as possible, the speedy and orderly administration of justice."[17] Indeed, the Second Circuit pointedly underscored this point in *Coppa* when it noted that the "case present[ed] no occasion to consider the scope of a district court's discretion to order pretrial disclosures as a matter of sound case management" and remanded "to afford the District Court an opportunity to determine what disclosure order, if any, it deems appropriate as a matter of case management."[18]

In this case, defendants have not attempted to show that sound case management, as opposed to a supposed duty to disclose all favorable evidence upon demand, warrants pretrial disclosure of any of the material to which defendants are not otherwise entitled. The government, for its part, arguably has been less than forthcoming, and there appear to have been no meaningful discussions between the parties with a view toward reaching a mutually acceptable accommodation. Accordingly, this aspect of the motion is denied without prejudice to renewal no later than April 28, 2006. The parties are directed to meet and confer promptly in an effort to resolve the issue.

Bruton *and* Crawford *Material*

At least one defendant requests disclosure of incriminating statements made by any

---

[16] *United States v. Van Brandy,* 726 F.2d 548, 552 (9th Cir. 1984).

[17] *United States v. Richter,* 488 F.2d 170, 173 (9th Cir. 1973).

[18] *Coppa,* 267 F.3d at 146.

person, which, if used at trial, would raise issues under *Bruton v. United States,[19]* or *Crawford v. Washington.[20]*

In *Bruton,* the Supreme Court held that a defendant is deprived of his rights under the Confrontation Clause when the government introduces in a joint trial the confession of a non-testifying co-defendant naming the defendant as a participant in the crime.[21] Nearly forty years later, *Crawford* court expanded on this proposition, holding that the use at trial of testimonial hearsay statements by any witness violates a defendant's right to confrontation unless the witness is unavailable and the defendant had a prior opportunity for cross-examination.[22] These cases, however, do not mandate pretrial disclosure of such statements to the defense.[23] Nor does any other specific discovery rule require the government to produce statements that might raise issues under *Bruton* or *Crawford.[24]*

Accordingly, the request for pretrial production of *Bruton* or *Crawford* materials is

---

[19] 391 U.S. 123 (1968).

[20] 541 U.S. 36 (2004).

[21] 391 U.S. at 136-37.

[22] 541 U.S. at 68-69.

[23] *Richardson v. Marsh,* 481 U.S. 200, 209 (1987) (noting that requiring the prosecution to share a co-conspirator's statements with the defense during the pretrial stage would be "time consuming," "far from foolproof," and of "doubtful" feasibility); *see also United States v. Robles,* No. 04 Cr. 1036 (GEL), 2005 WL 957338, at *1 (S.D.N.Y. Apr. 22, 2005); *United States v. Wei,* 862 F.Supp. 1129, 1134 (S.D.N.Y. 1994); *United States v. Munoz,* 736 F.Supp. 502, 504 (S.D.N.Y. 1990); *United States v. Mitchell,* 372 F.Supp. 1239, 1257 (S.D.N.Y. 1973).

[24] FED.R.CRIM.P. 16(a)(1)(A)-(B) (identifying statements that must be produced to defendant); *Robles,* 2005 WL 957338 at *1; *Munoz,* 736 F.Supp. at 504; *Wei,* 862 F.Supp. at 1134.

denied. The government should note, however, that it would be "wise . . . to produce such materials in sufficient time for issues regarding such statements to be resolved pre-trial."[25]

*Rule 404(b) Material*

Several defendants request that the government provide pre-trial notice of evidence of other crimes, wrongs, or acts the government intends to offer against them at trial under FED.R.EVID. 404(b). Rule 404(b) provides that such evidence may be admissible for certain purposes "provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial." Having shown no good cause to excuse pretrial notice, the government is ordered to provide notice of any FED.R.EVID. 404(b) evidence it intends to offer no later than thirty days prior to trial.

*Early Disclosure of Jencks Material*

Some of the defendants ask the Court to encourage the government to produce all Jencks Act materials no later than thirty days before trial. As the Second Circuit has made clear, the "Jencks Act prohibits a District Court from ordering the pretrial disclosure of witness statements.[26] The government is, of course, free to produce this material prior to trial, and the Court recommends

---

[25]     *Robles,* 2005 WL 957338 at *1; *see also United States v. Glover,* 506 F.2d 291, 298 n.14 (2d Cir. 1974) ("[W]e see no reason why the prosecutor cannot show [a statement raising potential *Bruton* problems] to the judge for his ruling in advance of trial.")

[26]     *Coppa,* 267 F.3d at 145; *In re United States,* 834 F.2d 283, 286-87 (2d Cir. 1987); *United States v. Percevault,* 490 F.2d 126, 131 (2d Cir. 1974).

this "salutary practice,"[27] which often serves to avoid "those abhorrent lengthy pauses at trial to examine documents."[28]

*Interview Notes*

Defendants Watson and Warley, joined by defendant DeLap, seek immediate production of contemporaneous notes made by government agents of interviews and proffer sessions with the movants. They contend that the government's production of typed memoranda subsequently created from those notes is insufficient. The government has not specifically addressed this application.

FED. R. CRIM. P. 16(a)(1)(B)(ii) provides that, upon a defendants' request, the government must produce "the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent." The rule plainly requires production of "any written record" containing statements made during interrogation and is "not limited to a typed, formalized statement" or "a verbatim or near-verbatim transcription."[29] As the Advisory Committee Notes make clear, the record requested "must only be some written reference which would provide some means for the prosecution and the defense to identify the statement."[30] The rough notes

---

[27]

*Coppa,* 267 F.3d at 146 n.12.

[28]

*Percevault,* 490 F.2d at 132.

[29]

*E.g., United States v. Vallee,* 380 F.Supp.2d 11, 12 (D. Mass. 2005).

[30]

FED. R. CRIM. P. 16 advisory committee's notes.

defendants request clearly fall within this definition.

Although most recent cases have reached this same conclusion,[31] a 1989 Second Circuit decision, *United States v. Koskerides*, held that production of contemporaneous notes is not necessary where the government produces interview summaries prepared from those notes.[32]   That decision, however, relied on an earlier version of Rule 16, which required production only of "the substance of any oral statement" made by defendant during interrogation that the government intends to offer at trial.[33]  The adoption of the current rule in 1991 broadened the government's disclosure obligations and invalidated *Koskerides* in this respect.  Further, although several post-1991 cases have held that Rule 16 does not require production of rough interview notes where the government produces more formal summaries created from those notes, these cases fail to take into account the 1991 amendment and therefore are not persuasive.[34]

Accordingly, the government shall produce any rough notes taken by government agents during interviews with the moving defendants.  It shall preserve notes taken during interviews with non-moving defendants and produce them upon request by non-moving defendants.

---

[31]

    *E.g., United States v. Clark,* 385 F.3d 609, 619 (6th Cir. 2004) ("[T]he government violated Rule 16 by failing to turn over [the interrogating agent's] rough notes upon Defendant's request."); *United States v. Molina Guevara,* 96 F.3d 968, 705 (3d Cir. 1996) (production of government agent's handwritten notes from interview with defendant was required under Rule 16); *Vallee,* 380 F.Supp.2d at 12 (collecting cases and holding that "[t]he language of Rule 16 plainly, and unambiguously, requires production of any handwritten notes of government agents containing the substance of anything said by the defendant during interrogation"); *United States v. W.R. Grace,* 401 F.Supp.2d 1087, 1091 (D. Mont. 2005).

[32]

    877 F.2d 1129, 1133 (2d Cir.1989).

[33]

    FED. R. CRIM. P. 16(a)(1)(A) (1990) (superseded by 1999 amendment).

[34]

    *See Valle,* 380 F.Supp.2d at 13.

*Conclusion*

The Court has considered defendants' other discovery arguments and concluded that all lack merit.

Accordingly, defendants' motions, to the extent they seek discovery other than disclosure of grand jury minutes are granted to the extent noted above and denied in all other respects save that the denial of so much of the motions as seek production of what defendants term *Brady* and *Giglio* material is without prejudice to renewal as stated above.

SO ORDERED.

Dated: April 7, 2006

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)