UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,


       -against-                                      S1 05 Crim. 0888 (LAK)


JEFFREY STEIN, et al.,

                       Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

Justin S. Weddle
Kevin M. Downing
Stanley J. Okula, Jr.
Margaret Garnett
Assistant United States Attorneys
MICHAEL J. GARCIA
UNITED STATES ATTORNEY
*Attorneys for the United States*

David Spears
RICHARDS SPEARS KIBBE & ORBE LLP
Craig Margolis
VINSON & ELKINS LLP
*Attorneys for Jeffrey Stein*

Stanley S. Arkin
Joseph V. DiBlasi
Elizabeth A. Fitzwater
ARKIN KAPLAN LLP
*Attorneys for Jeffrey Eischeid*

Michael S. Kim
Leif T. Simonson
KOBRE & KIM LLP
*Attorneys for Mark Watson*

Caroline Rule
Robert S. Fink
Christopher M. Ferguson
Usman Mohammad
KOSTELANETZ & FINK, LLP
*Attorneys for Richard Smith*

Richard Mark Strassberg
GOODWIN PROCTOR LLP
*Attorneys for David Greenberg*

George D. Niespolo
DUANE MORRIS LLP
*Attorneys for Randy Bickham*

Steven M. Bauer
Karli E. Sager
LATHAM & WATKINS, LLP
*Attorneys for John Larson*

David C. Scheper
Julio V. Vergara
OVERLAND BORENSTEIN SCHEPER
& KIM LLP
*Attorneys for Robert Pfaff*

Stuart Abrams
M. Breeze McMennamin
David S. Hammer
FRANKEL & ABRAMS
Jack S. Hoffinger
Susan Hoffinger
HOFFINGER STERN & ROSS, LLP
*Attorneys for Raymond J. Ruble*

Ronald E. DePetris
Marion Bachrach
Dana Moskowitz
DEPETRIS & BACHRACH, LLP
*Attorneys for Philip Wiesner*

John F. Kaley
DOAR RIECK KALEY & MACK
*Attorneys for Steven Gremminger*

Ronald P. Fischetti
*Attorney for David Amir Makov*

James R. DeVita
BRYAN CAVE LLP
John A. Townsend
TOWNSEND & JONES LLP
*Attorneys for Carol Warley*

Michael Madigan
Robert H. Hotz, Jr.
Christopher T. Schulten
AKIN GUMP STRAUSS HAUER
& FELD LLP
*Attorneys for John Lanning*

Diana Davis Parker
*Attorney for Larry DeLap*

Russell M. Gioiella
Richard M. Asche
LITMAN, ASCHE & GIOIELLA, LLP
*Attorneys for Carl Hasting*

Cristina Arguedas
Ann Moorman
ARGUEDAS, CASSMAN & HEADLY, LLP
*Michael Horowitz Michelle Seltzer*
CADWALADER, WICKERSHAM &
TAFT LLP
*Attorneys for Gregg Ritchie*

Susan R. Necheles
HAFETZ & NECHELES
*Attorneys for Richard Rosenthal*

LEWIS A. KAPLAN, *District Judge.*

Defendants have filed more than two dozen largely duplicative pretrial motions. Having addressed their requests for discovery and severance in separate opinions, the Court now turns to all of the remaining applications save those relating to the claim that the government improperly interfered with the advancement of defense costs by KPMG.

*Background*

This case arises out of an alleged scheme to defraud the IRS through fraudulent tax shelters designed to generate phony tax losses for clients of the accounting firm KPMG. The scheme allegedly involved at least four tax shelter vehicles – Foreign Leveraged Investment Program ("FLIP"), Offshore Portfolio Investment Strategy ("OPIS"), Bond Linked Issue Premium Structure ("BLIPS"), and Short Option Strategy ("SOS") – and allegedly resulted in more than $10 billion in phony losses.

The superseding indictment names eighteen financial professionals and attorneys, all but two formerly employed by or affiliated with KPMG, and includes forty-six counts.[1] Count One (the "Conspiracy Count") charges all eighteen defendants with conspiracy to defraud the IRS by designing, marketing, and implementing the tax shelters. It charges also that the defendants conspired to conceal the fraudulent tax shelters from the IRS by, among other things, failing to register the shelters with the IRS, preparing tax returns that concealed the phony tax losses, and obstructing IRS and Senate investigations into the shelters.[2] Counts Two through Forty (the "Tax Evasion Counts") charge all defendants with tax evasion based on the tax returns of approximately twenty-five different tax shelter clients and defendants.[3] Counts Forty-one through Forty-four (the "Ruble Counts") charge certain defendants with evading taxes on payments to defendant Raymond Ruble for his participation in the alleged scheme, including payments he received in exchange for

---

[1]
An additional defendant pleaded guilty.

[2]
Ind. ¶¶ 1-78.

[3]
*Id.* ¶¶ 79-80.

issuing opinion letters that falsely represented that the tax shelters were likely to survive IRS review.[4]

Finally, Counts Forty-five and Forty-six (the "Obstruction Counts") charge certain defendants with

obstructing the IRS investigation of the tax shelters in violation of 26 U.S.C. § 7212.[5]


*Discussion*

A.    *Motions to Dismiss Substantive Counts of the Indictment*

1.    *Duplicitousness*

Defendants move to dismiss the Conspiracy Count as duplicitous, arguing that it

charges two distinct conspiracies: the original conspiracy to design, implement and market fraudulent

tax shelters and a subsequent conspiracy to conceal the tax shelters from IRS and Senate

investigators.[6]

As the Second Circuit has explained, "[a]n indictment is impermissibly duplicitous

where: (1) it combines two or more distinct crimes into one count in contravention of

FED.R.CRIM.P. 8(a)'s requirement that there be 'a separate count for each offense,' and (2) the

defendant is prejudiced thereby."[7]    Although a single count alleging multiple independent

---

[4]
    *Id.* ¶¶ 81-83.  Two of these counts name defendants John Larson and Robert Pfaff as well.

[5]
    *Id.* ¶¶ 84-85.

[6]
    D. Br. 1.  Defendants' briefs are cited based on the numbering system in Exhibit A of the government's opposition brief.

[7]
    *United States v. Sturdivant,* 244 F.3d 71, 75 & n.3 (2d Cir. 2001).

conspiracies is duplicitous, a count alleging a single conspiracy to commit multiple crimes is not.[8] Whether defendants engaged in two different conspiracies or a single conspiracy to commit more than one crime is a question of fact for a properly instructed jury and cannot determined prior to trial.[9] Accordingly, an indictment alleging a single conspiracy should not be dismissed before trial based on defendants' contrary factual allegations.

Here, the Conspiracy Count charges a conspiracy to design, market, and implement the tax shelters and alleges that it was a part and object of that conspiracy that defendants "would and did take additional steps to conceal from the IRS the existence of the shelters, their true facts, and certain conspirators' role in designing, marketing, and implementing the shelters, including, but not limited to, failing to register the shelters, using sham attorney-client privilege claims, and concealing documents and providing false and misleading information in response to IRS and Senate investigations."[10] This is sufficient. Whether the government can prove that the original conspiracy included an agreement to obstruct subsequent IRS and Senate investigations is a question of fact for the jury. Accordingly, defendants' motion to dismiss the Conspiracy Count as duplicitous is denied.

---

[8] *United States v. Aracri,* 968 F.2d 1512, 1518 (2d Cir. 1992).

[9] *Id.* at 1519*; United States v. Fernandez,* No. 97 CR 233 (LMM), 1999 WL 1038049, at *1 (S.D.N.Y. Nov. 16, 1999); *United States v. Szur,* No. S5 97 CR 108 (JGK), 1998 WL 132942, at *11 (S.D.N.Y. Mar. 20, 1998); *United States v. Gabriel,* 920 F.Supp. 498, 504 (S.D.N.Y. 1996), *aff'd,* 125 F.3d 89 (2d Cir. 1997).

[10] Ind. ¶ 77(h).

2.       *The Alleged Legality of the Transactions*

A number of defendants contend that the tax shelters were legal when designed and implemented – or, at worst, governed by uncertain law – and, in consequence, that the government will be unable to prove that the defendants acted with the requisite criminal intent. Hence, they move to dismiss the Conspiracy and Tax Evasion Counts for failure to state an offense or, alternatively, to strike from these counts references to SOS transactions and allegations that any of tax shelters was fraudulent.[11] Similarly, several defendants move for a determination pursuant to FED.R.CRIM.P. 12(b)(2) that the opinion letter drafted and approved by KPMG in 1999 regarding the economic substance of the BLIPS template transaction was objectively reasonable.[12]

In essence, defendants ask the Court to determine as a matter of law that the tax shelters – as described in defendants' briefs and the template opinion letters – were legal. The government has made clear, however, that it intends to prove that the transactions as described in the template opinion letters never actually happened. Instead, according to the government, defendants developed a series of fraudulent transactions designed solely to produce tax losses and then drafted opinion letters intended to disguise the true nature of the transactions and to mislead the IRS.[13] The government intends to prove, for example, that the BLIPS transactions – which defendants claim involved nonrecourse premium loans to tax shelter clients to finance seven-year, multi-stage investments in emerging market currencies – actually were "designed to be terminated

---

[11]

   D. Brs. 2, 7, 17.

[12]

   D. Br. 3.

[13]

   Bill of Particulars (docket item 446) at 1; *see also* Tr., Mar. 30, 2006, at 123-27.

before year-end for tax purposes" and to involve "no real loan premium, no realistic possibility of making a reasonable pre-tax profit, no contingency to the obligation to repay the loan premium, and no purpose for the purported borrowing except to generate a tax loss.[14]  Given this theory, the question whether the transactions described in the allegedly phony opinion letters were lawful is immaterial.[15]  Defendants' motions therefore are denied.

### 3.    *Statute of Limitations*

Defendant Ruble asserts that Count Forty-one, which charges tax evasion based on his personal tax returns for 1998, should be dismissed as time-barred.[16]

The limitations period for tax evasion is six years, excluding any time in which the defendant was outside of the United States.[17]  Here, the statute began to run on October 15, 1999, the date of the filing of the allegedly fraudulent tax return, and would have expired on October 15, 2005, two days before the return of the superseding indictment, unless Ruble traveled outside of the United States for at least two days during the limitations period.  Although the indictment alleges no international travel during that time, the government claims that it will prove at trial that Ruble

---

[14]    Bill of Particulars at 3; *see also* Tr., Mar. 30, 2006, at 55-56.

[15]    In any event, the government has disclaimed any assertion in this action that the opinion letters and the tax treatments they recommended would have been criminal if (1) the transactions had actually occurred as described therein; (2) "the facts set forth in the opinion letters were . . . true and . . . complete;" and (3) "the individuals who participated in creating and issuing the opinion letters believed in good faith the legal analysis of those facts."  Bill of Particulars at 3-4, 6, 8.

[16]    D. Br. 21.

[17]    26 U.S.C. § 6531.

spent several weeks per year outside of the United States.[18]  Accordingly, Ruble's motion is denied.

### 4. Obstruction Counts

Defendants Eischeid and Gremminger move to dismiss the Obstruction Counts  on two grounds.[19]  Neither is persuasive.

First, Eischied claims that the indictment does not allege a nexus linking his conduct to the IRS investigation he allegedly obstructed because it does not allege the existence of the IRS investigation or his knowledge of it.  He cites no case law indicating that the Second Circuit requires such a nexus for obstruction charges brought under Section 7212, and the Court is aware of none.  Further, even if such a nexus were required, the indictment specifically alleges that the IRS began an investigation into the tax shelters in October 2001, that Eischeid and Gremminger responded on behalf of KPMG to summonses issued in furtherance of that investigation, and that their responses were false and misleading.[20]

Second, defendants contend that the decision to charge them under Section 7212 of the Internal Revenue Code violated a policy statement instructing officers of the Tax Division of the Department of Justice not to charge offenders under that section "where other more specific charges

---

18

Gov. Br.  at 150.

19

D. Brs.15, 24.

20

Ind. ¶¶ 59-63.

are available and adequately reflect the gravamen of the offense."[21]  The Second Circuit, however, already has rejected a challenge to a Section 7212 charge based on the Tax Division policy statement, noting that "non-compliance with internal departmental guidelines is not, of itself, a ground of which defendants can complain.  Such guidelines provide no substantive rights to criminal defendants."[22]

Accordingly, the motion to dismiss the Obstruction Counts is denied.

B.    *Alleged Prosecutorial Misconduct*

Defendants seek dismissal based on three types of alleged prosecutorial misconduct: improprieties involving the grand jury, abuse of parallel civil and criminal litigation, and manipulation of KPMG.  This opinion addresses only the first two, as the Court already has denied one motion based on alleged misconduct relating to KPMG[23] and will address another following an evidentiary hearing next month.

1.    *Misconduct Before the Grand Jury*

A number of defendants move to dismiss portions of the indictment or, alternatively, for disclosure of the grand jury transcripts, on the grounds that the government failed properly to instruct the grand jury on the relevant law, failed to present certain exculpatory evidence, and

---

[21]

*United States v. Kelly,* 147 F.3d 172, 176 (2d Cir. 1998) (quoting the Tax Division policy statement).

[22]

*Id.* (internal citations and quotation marks omitted).

[23]

Docket item 422.

improperly forced certain defendants to appear before the grand jury after they had stated their intention to invoke the Fifth Amendment.[24]

As the Supreme Court has explained, "an indictment returned by a legally constituted and unbiased grand jury . . . is enough to call for trial of the charge on the merits"[25] and is not subject to challenge based on the sufficiency of the evidence presented to grand jurors.[26] Although a court can dismiss an indictment obtained through prosecutorial misconduct or error, it may not do so unless errors in the grand jury proceeding prejudiced the defendant by "substantially influenc[ing] the grand jury's decision to indict" or by creating "grave doubt that the decision to indict was free from such substantial influence."[27] Further, because "the proper functioning of the grand jury system depends on the secrecy of the grand jury proceedings,"[28] a party may obtain disclosure of grand jury transcripts under Rule 6(e) only by "a strong showing of particularized need" that outweighs the need for continued secrecy.[29]

Defendants have shown neither the prejudice necessary to justify dismissal of the indictment nor the particularized need required for disclosure of grand jury transcripts. They claim that they are "concerned" that the government failed to instruct the grand jury on tax law necessary

---

[24]

D. Brs. 5, 26.

[25]

*United States v. Costello,* 350 U.S. 359, 363 (1956).

[26]

*Bank of Nova Scotia v. United States,* 487 U.S. 250, 261 (1988).

[27]

*Id.* at 255-56 (internal quotation marks omitted).

[28]

*Douglas Oil Co. of Cal.v. Petrol Stops Northwest,* 441 U.S. 211, 218 (1979).

[29]

*United States v. Sells Eng'g, Inc.,* 463 U.S. 418, 443 (1983); *Douglas Oil,* 441 U.S. at 222.

to determine whether the tax shelter transactions actually were illegal, including the economic substance doctrine and certain provisions of the Internal Revenue Code.[30]  Although defendants claim that this concern is based on a number of factors, including public statements by Department of Justice officials regarding the government's theory of the case, they point to no real evidence that prosecutors improperly instructed the grand jury or that any such failure would have substantially influenced the grand jury's decision to indict. Such unsupported and speculative assertions are not sufficient to overcome the "presumption of regularity" afforded to grand jury proceedings.[31]  Indeed, in light of the government's bill of particulars, it is far from clear that instructions concerning the tax law doctrines to which defendants point would have been appropriate.

Nor does the government's alleged failure to present exculpatory evidence to the grand jury justify the relief defendants seek.  As the Supreme Court has explained, prosecutors are not required to present exculpatory evidence to the grand jury.[32]  Further, even if presentation of such evidence were required, there is no indication that the government's alleged failure would have prejudiced defendants.  Defendants claim, for example, that the government presented testimony

---

[30]

   D. Br. 5 at 2.

[31]

   *United States v. Mechanik,* 475 U.S. 66, 75 (1986) (O'Connor, J., concurring) ("The grand jury proceeding is accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process."); *United States v. Jailall,* 00 CR 069 (EWS), 2000 WL 1368055, at *2 (S.D.N.Y. Sept. 20, 2000) ("[S]peculation and surmise as to what occurred before the grand jury are not sufficient to overcome this presumption.") (internal quotation marks omitted); *United States v. Trochelmann,* 98 CR 1276 (JFK), 1999 WL 294992, at * 3 (S.D.N.Y. May 11, 1999) ("Allegations based on belief . . . provide no reason to disregard the presumption of regularity of grand jury proceedings, and do not even warrant an in camera review of the grand jury minutes.") (internal quotation marks omitted).

[32]

   *United States v. Williams,* 504 U.S. 36, 52 (1992).

from cooperating co-conspirator Domenick DeGiorgio to show that the transactions were illegal, without presenting DeGiorgio's prior assertions that the transactions were legitimate. Though DeGiorgio's prior inconsistent statements may have been relevant, there is no indication that the grand jury would not have indicted defendants if presented with those statements and therefore no showing of prejudice.

Defendants Larson and Pfaff contend that the government improperly forced them to testify before the grand jury after they stated their intention to invoke the Fifth Amendment in order to help the government obtain a stay of its obligation to respond to a summary judgment motion in the civil tax fraud case in California and to discredit them in front of the grand jury.[33] The Supreme Court has made clear, however, that it is not improper for the government to require witnesses to appear before a grand jury "despite an avowed intention to invoke their Fifth Amendment privilege" because the government is "not required to take at face value the unsworn assertions made by [grand jury] witnesses outside the grand jury room."[34] Further, there is no indication – aside from their own bald assertions – that the government forced Larson and Pfaff to testify in order to obtain a stay of the civil tax fraud case, and this nefarious motive seems unlikely, considering that the government has proceeded with the criminal prosecution of Larson and Pfaff at great expense for more than a six months after the civil case was stayed.

---

[33] D. Br. 26.

[34] *Bank of Nova Scotia,* 487 U.S. at 258-59.

2.      *Abuse of Parallel Civil and Criminal Litigation*

Defendants Larson and Pfaff argue also that the indictment should be dismissed on the theory that the government used parallel civil litigation against their company, Presidio Growth LLC ("Presidio"), to deplete their resources and prevent the court in a civil case from deciding their summary judgment motion regarding the alleged legality of the BLIPS transactions.[35]   Their arguments are without merit.

a.      *Background*

According to the government, Larson and Pfaff implemented BLIPS tax shelters through approximately ninety different Strategic Investment Funds (the "SIFs") established for that purpose.  Presidio was the Tax Matters Partner for the SIFs.[36]

In April 2002, the examination division of the IRS began a civil investigation of these transactions.   In 2004, the IRS announced that it was considering designating some of the transactions as "litigating vehicles" to allow the parties to litigate the merits of the transactions and requested that the SIFs involved in the remaining transactions extend the statute of limitations for any future IRS challenges.[37]   Presidio offered to extend the limitations period on behalf of most of the SIFs, but the IRS  refused to accept this offer based on concerns that Presidio could not execute valid and enforceable waivers on their behalf because it had changed ownership status after the SIFs

---

[35]

D. Br. 26.

[36]

Gov. Br. at 152.

[37]

*Id.* at 152-53; D. Br. 26 at 12.

were established.[38]  The IRS then unsuccessfully sought extensions from all participants in the SIFs, including Larson and Pfaff.[39]

Unable to obtain satisfactory waivers, the IRS issued nearly one hundred civil adjustment notices to SIFs controlled by Presidio between December 2004 and June 2005.[40]  Presidio challenged these notices in the United States District Court for the Northern District of California. In order to bring suit in that forum, Presidio had to deposit the full amount of the IRS's claimed adjustment – nearly $1 million – with the Secretary of the Treasury.[41]

Between March and September 2005, the government filed two unsuccessful motions to stay the Presidio's civil suits.[42]   In August 2005, Presidio filed a summary judgment motion relating to the purported legality of the BLIPS transactions.[43]  The government opposed the motion, arguing that it needed substantial additional discovery, and renewed its motion for stay on the ground that additional discovery would interfere with this criminal case.  Over Presidio's opposition, the court stayed the civil actions until the beginning of the trial in this case.[44]

---

[38]
Gov. Br. at 154-56.

[39]
*Id.*

[40]
*Id.* at 156; D. Br. 26 at 13.

[41]
D. Br. 26 at 13.

[42]
Gov. Br. at 157-58.

[43]
D. Br. 26 at 15.

[44]
*Id.*; Gov. Br. at 159.

b.      *Discussion*

"Nothing in the Constitution forbids contemporaneous civil and criminal proceedings concerning the same subject matter,"[45] and the government pursues such parallel litigation quite frequently.

There is no indication here that the government took advantage of this broad authority in order to drain defendants' resources. The IRS was under no obligation to litigate only a subset of the SIF transactions as test cases or to accept waivers of doubtful validity. Further, defendants themselves chose to challenge the IRS adjustments in a forum that required a large deposit. Presumably, they could have challenged the adjustments in the United States Tax Court without making such a deposit.[46] Nor is there evidence that the government acted improperly in seeking a stay of the civil litigation pending trial in this case.[47] Defendants' claim that the government sought the stay to preclude a decision on Presidio's allegedly meritorious motion for summary judgment is not persuasive, considering that the government moved to stay the civil case several times before

---

[45]

*Nosik v. Singe,* 40 F.3d 592, 596 (2d Cir. 1994); *see also United States v. Kordel,* 397 U.S. 1, 11 (1970) (the government may conduct civil and criminal proceedings concerning the same subject matter simultaneously and need not "defer civil proceedings pending the ultimate outcome of a criminal trial").

[46]

26 U.S.C. §§ 6226(a), (e) (permitting Tax Matters Partners to challenge IRS adjustments in the Tax Court, the United States District Court for the district in which the partnership's principal place of business is located, and the Court of Federal Claims and requiring deposit of the disputed tax amount for cases filed in District Court or the Court of Federal Claims).

[47]

"It is well established that federal courts have discretion to stay civil proceedings pending the outcome of criminal proceedings where the interests of justice so require." *Beacon Hill Asset Mgmt., LLC v. Asset Alliance Corp.,* No. 03 Civ. 1560 (LAK), 2003 WL 1845208, at *2 (S.D.N.Y. Mar. 25, 2003); *see also, e.g., Afro-Lecon, Inc. v. United States,* 820 F.2d 1198, 1202 (Fed. Cir. 1987); *Kashi v. Gratsos,* 790 F.2d 1050, 1057 (2d Cir. 1986); *SEC v. Dresser Indus., Inc.,* 628 F.2d 1368, 1375 (D.C.Cir.), *cert. denied,* 449 U.S. 993 (1980); *cf. Kordel,* 397 U.S. at 12 n. 27.

Presidio filed its summary judgment motion.

Finally, there is no evidence that the government used the civil discovery process to aid in its prosecution of the criminal case. The mere fact that the IRS civil litigation team conducted discovery in the civil case is not improper absent evidence that it shared information gleaned from this discovery with prosecutors in this case. Defendants do not claim that the IRS civil litigators shared discovery information with the prosecution team, asserting only that the two teams communicated about scheduling and a stay of the civil case. This, by itself, is not improper.

*    *    *

Accordingly, defendants' motions to dismiss based alleged misconduct before the grand jury and abuse of parallel litigation are denied.

C.    *Venue*

A number of defendants move to dismiss the Tax Evasion Counts for improper venue on the ground that they committed no affirmative acts of tax evasion in this district.[48] Defendants Warley, Ritchie, Hasting, and Greenberg seek transfer to the districts in which they reside.[49]

---

[48]

D. Brs. 9, 10, 12, 16, 19, 20, 24, 25, 26.

[49]

D. Brs. 10, 11, 12. Warley seeks transfer of all counts against her to the Southern District of Texas. Ritchie, Hasting and Greenberg each request transfer to the Central District of California, although Greenberg seeks to transfer only the Tax Evasion Counts, while Ritchie and Hasting request transfer of all counts against them.

*1.      Venue for Tax Evasion Counts*

FED.R.CRIM.P. 18 provides that, "[u]nless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed." When a defendant is charged in more than one count, venue must be proper with respect to each count.[50]

In order to prove venue in tax cases, "the government generally must show that the defendant engaged in some affirmative act in this district with a tax evasion motive."[51] As the Supreme Court has explained, affirmative acts include "keeping a double set of books, making false entries or alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal."[52]

Although criminal defendants have a right to be tried in a proper forum, they have no right to be charged with the proper venue.[53] An indictment therefore is sufficient despite the absence of any statement as to the place of the crime, although a bill of particulars typically will be granted

---

[50]

*United States v. Beech-Nut Nutrition Corp.,* 871 F.2d 1181, 1188 (2d Cir.), *cert. denied,* 493 U.S. 933 (1989).

[51]

*United States v. Martino*, No. S1 00 CR 389 (RCC), 2000 WL 1843233, at *2 (S.D.N.Y. Dec. 14, 2000).

[52]

*Spies v. United States,* 317 U.S. 492, 499 (1943).

[53]

1 CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL 3d § 125, at 572-73 (1999).

where an indictment contains no venue allegation.[54]  Moreover, as long as the indictment alleges

venue, a pretrial motion to dismiss based on contrary allegations by the defendant must be denied.[55]

Here, the indictment alleges that, "in the Southern District of New York and

elsewhere," all eighteen defendants and their co-conspirators "attempt[ed] to evade and defeat a

substantial part of the income tax due and owing" from tax shelter clients and certain defendants by,

*inter alia,* the preparation and filing of fraudulent tax returns, the preparation of other fraudulent

documents, including opinion letters and transactional documents, the creation of entities to be used

in executing the tax shelter transactions, the execution of financial transactions to implement the tax

shelters, the concealment of the shelters and the conspiracy from IRS and Senate investigators.

Each count alleges the taxpayer, the tax return, the approximate amount of fraudulent tax shelter

loss, and the approximate date of filing.[56]

The allegation that defendants prepared and filed tax returns in this district and

elsewhere alone would have been sufficient, as preparation and filing are quintessential affirmative

---

[54]

*United States v. Castellano,* 610 F. Supp. 1359, 1388 (S.D.N.Y. 1985); 1 WRIGHT at 573.

[55]

*See, e.g., Martino,* 2000 WL 1843233, at * 1.

The more interesting question is whether there would be a prejudicial variance or a constructive amendment of the indictment if the government were to prove venue at trial on a theory different than that alleged in the indictment.  "A variance requires reversal of a conviction 'only if [the variance] is both material and prejudicial, for example, if the variance works a substantial interference with the defendant's right to be informed of the charges laid at his doorstep.'" *United States v. Escobar De Jesus,* 187 F.3d 148, 172 (1st Cir. 1999) (citing *United States v. Arcadipane,* 41 F.3d 1, 6 (1st Cir. 1994)), *cert. denied,* 528 U.S. 1176 (2000).  Whether any such variance in this case would meet that standard must abide the event.

[56]

Ind. ¶ 80.

acts of tax evasion.[57]  The government's brief, however, implies that only three of the thirty-nine

returns actually were prepared in the Southern District of New York.   Despite this apparent

concession, the indictment sufficiently alleges venue for the remaining thirty-six counts based on the

other alleged conduct, including the preparation of fraudulent supporting documents, the creation

of financial entities and the implementing of tax shelter transactions through those entities, and the

concealment of the tax shelters from regulators.  These acts constitute affirmative acts of tax evasion

under *Spies* because their likely effect would be to mislead or to conceal.[58]  Defendants' contention

that these acts were "merely preparatory" to the offense of tax evasion is unpersuasive.  Whether an

act is merely preparatory or part of the offense itself depends on the conduct the governing statute

proscribes.[59]  Here, defendants are alleged to have violated 26 U.S.C. § 7201, which makes it

unlawful to "wilfully attempt in any manner to evade or defeat any tax . . . or the payment thereof."

This language is broad enough to encompass a wide range of activities, including those acts

defendants are alleged to have committed in this district.[60]

---

[57]

> *United States v. Rooney,* 866 F.2d 28, 31 (2d Cir. 1989); *In re United States,* 608 F.2d 76, 78 n. 2 (2d Cir. 1979), *cert. denied,* 446 U.S. 908 (1980); *United States v. Gross,* 276 F.2d 816, 820 (2d Cir.), *cert. denied,* 363 U.S. 831 (1960).

[58]

> *See, e.g., United States v. Strawberry,* 892 F. Supp. 519, 524 (S.D.N.Y. 1995) (receipt of cash with intent to evade sufficient to confer venue as an affirmative act under *Spies*).

[59]

> *United States v. Ramirez,* 420 F.3d 134, 143-44 (2d Cir. 2005) (citing *United States v. Rodriguez-Moreno,* 526 U.S. 275, 279 (1999)), *cert. denied,* 126 S. Ct. 1074 (2006).

[60]

> Defendants Wiesner and Lanning move to dismiss the Tax Evasion Counts as to them without regard to venue, asserting that the indictment does not allege that they committed an affirmative act of tax evasion anywhere.  D. Brs. 17, 25.  Their motions are denied for the reasons discussed above.

Accordingly, defendants' motions to dismiss the Tax Evasion Counts for improper venue are denied.[61]  If the government's proof at trial fails to establish venue, defendants may renew their objections under FED.R.CRIM.P.  29(a).[62]

### 2.    Transfer

FED.R.CRIM.P. 21(b) provides that "[f]or the convenience of the parties and witnesses, and in the interest of justice, the court upon motion of the defendant may transfer the proceeding as to that defendant or any one or more of the counts thereof to another district." Defendants bear the burden of justifying such a transfer.[63]  To determine whether defendants have met their burden,

> "the court should consider such factors as (a) location of the defendants; (b) location of the possible witnesses; (c) location of the events likely to be at issue; (d) location of relevant documents and records; (e) potential for disruption of the defendants' businesses if transfer is denied; (f) expenses to be incurred by the parties if transfer is denied; (g) location of defense counsel; (h) relative accessibility of the place of

---

[61]

Because the indictment alleges that all eighteen defendants committed an affirmative act of tax evasion, it is not necessary to consider defendants' argument that venue is not proper based on their alleged aiding and abetting of the principal tax evaders or based on their co-conspirators actions within the district.  Further, the government has made clear that "each of the defendants is charged in Counts Two through Forty as a principal based on his or her respective role in the evasion of the tax shelter clients' taxes."  Gov. Br. at 102.

[62]

*See United States v. Heredia,* 02 CR 1246 (SWK), 2003 WL 21524008, at *5 (S.D.N.Y. July 3, 2003); *United States v. Mapp,* 95 CR 1162 (FB), 1996 WL 506933, at *12 (E.D.N.Y. Sept. 3, 1996).

[63]

*United States v. Valdes,* No. 05 CR 156 (KMK), 2006 WL 738403, at *3 (S.D.N.Y. Mar. 21, 2006).

trial; (i) docket conditions of each potential district; and (j) any other special circumstance that might bear on the desirability of transfer."[64]

No one of these considerations is dispositive, however, and "[i]t remains for the court to try to strike a balance and determine which factors are of greatest importance."[65]  Disposition of a Rule 21(b) motion is vested in the sound discretion of the district court.[66]

Several of the relevant factors weigh in favor of transfer, including the defendants' residences and the additional cost and potential for disruption of defendants' lives caused by commuting to and residing in New York for trial.  Defending a massive case like this one, however, would be expensive in any forum and, as Judge Cote observed in a decision denying transfer, "[e]very life is significantly disrupted during a trial wherever it is held.  Besides the need to be in court every day, the evenings and weekends are usually consumed analyzing the evidence that has been admitted and preparing for the remainder of trial."[67]

The remaining factors do not support transfer.  Many of the events alleged in the indictment occurred in the Southern District of New York, including meetings and conference calls about the tax shelters, sales pitches to tax shelter clients, and the drafting of allegedly fraudulent

---

[64]    *United States v. Maldonado-Rivera,* 922 F.2d 934, 966 (2d Cir. 1990) (citing *Platt v. Minn. Mining & Mfg. Co.,* 376 U.S. 240, 243-44 (1964)), *cert. denied,* 501 US 1211 (1991).

[65]    *United States v. Stephenson,* 895 F.2d 867, 875 (2d Cir. 1990).

[66]    *Maldonado-Rivera,* 922 F.2d at 966.

[67]    *United States v. Wilson,* No. 01 CR 53 (DLC), 2001 WL 798018, at *3 (S.D.N.Y. July 13, 2001).

opinion letters.[68] The vast bulk of the government's paper document production is in New York and would be difficult to access from other cities. New York is easily accessible by air and other public transport, and this Court already has scheduled trial in this case, ensuring that defendants will receive ample attention regardless of docket conditions.[69] Defendants have put forward no evidence that potential witnesses would be unable or unwilling to travel to this district for trial. Finally, the circumstances here weigh against transfer, including the potential for multiple trials in multiple districts, which would cause great inconvenience to witnesses, considerable additional expense to the government, duplication of court time and effort, and the risk of inconsistent results.

 Accordingly, defendants' motions to transfer are denied.

### D.   *Motions to Strike Portions of the Indictment*

 Several defendants move to strike certain allegations from the indictment as surplusage under FED. R. CRIM. P. 7(d).[70]

 Although Rule 7(d) permits a court to strike surplusage from an indictment upon defendant's motion, "'it has long been the policy of courts within the Southern District to refrain from tampering with indictments.'"[71] A motion to strike surplusage will be granted only when the

---

[68]
 Gov. Br. at 110-11.

[69]
 *United States v. Plott,* 345 F. Supp. 1229, 1233 (S.D.N.Y. 1972).

[70]
 Several of defendants' motions to strike are discussed above, rather than in this section, because they are closely related to defendants' motions to dismiss the indictment based on the alleged legality of the tax shelters.

[71]
 *United States v. Sattar,* 314 F.Supp.2d 279, 320 (S.D.N.Y. 2004) (quoting *United States v. Bin Laden,* 91 F. Supp. 2d 600, 621 (S.D.N.Y. 2000).

challenged language is both (1) irrelevant to the crime charged and (2) inflammatory and prejudicial.[72]  Defendants have not met these requirements.

Defendants first move to strike allegations that they conspired to violate Internal Revenue Code Sections 7201[73] and 7206[74] by issuing opinion letters to KPMG clients concerning the FLIPS, OPIS, and BLIPS transactions.  They argue that "the opinion letters cannot form the basis of violations of Sections 7201 and 7206 . . . because [they] neither concerned the actual amount of tax owed by the clients nor advised as to how the clients' tax returns should be prepared, either of which is a fundamental element of those statutes."[75]  As noted above, however, the government intends to prove that defendants knowingly issued misleading opinion letters in order to disguise the true nature of the transactions, thereby enabling clients to report fraudulent losses without detection by the IRS.   Allegations regarding the opinion letters are relevant to this theory.

Second, several defendants move to strike from the Conspiracy Count allegations that certain defendants obstructed Senate and IRS investigations into the tax shelters on the grounds that the alleged obstruction was part of a conspiracy separate from the conspiracy to design and implement fraudulent tax shelters.[76]  Similarly, several defendants move to strike allegations

---

[72]

*United States v. Mulder,* 273 F.3d 91, 99-100 (2d Cir. 2001), *cert. denied,* 535 U.S. 949 (2002); *United States v. Scarpa,* 913 F.2d 993, 1013 (2d Cir. 1990).

[73]

26 U.S.C. § 7201.

[74]

26 U.S.C. § 7206.

[75]

D. Br. 8 at 2.

[76]

D. Brs. 1, 17, 24.

regarding payments to Ruble in exchange for favorable opinion letters, arguing that these alleged payments were not in furtherance of the original conspiracy.[77]

These motions are meritless. The indictment alleges that (1) defendants participated in a single conspiracy to design, implement, and conceal fraudulent tax shelters, (2) the obstruction of subsequent investigations was an object of that conspiracy, and (3) the opinion letters – drafted by Ruble in exchange for payments from other defendants – were one of the means and methods of the conspiracy. Accordingly, the allegations regarding the alleged obstruction and side payments to Ruble are relevant to the Conspiracy Count and will not be stricken from the indictment.

Third, defendant Ruble asks the Court to strike the allegation that defendants failed to register the tax shelters with the IRS from paragraph 80 of the indictment, which lists the affirmative acts of tax evasion giving rise to the Tax Evasion Counts.[78] He argues that a failure to act cannot constitute an affirmative act of tax evasion.

Ruble does not deny that the indictment describes other affirmative acts of evasion, including the preparation and filing of fraudulent tax returns, and therefore sufficiently alleges multiple counts of tax evasion. Nor does he move to strike the lengthy discussion of defendants' alleged failure to register the tax shelters from the Conspiracy Count.[79] Accordingly, it is hard to see how the presence of this same allegation in paragraph 80 is prejudicial or inflammatory.

---

[77] D. Br. 1.

[78] D. Br. 21.

[79] *See* Ind. ¶¶ 54-56.

Next, certain defendants move to strike the "indictment's gratuitous use of the term 'tax haven'" and "other unnecessarily inflammatory and loaded terms" such as "phony," and "concoct."[80] While defendants doubtless wish that the government had employed less colorful and prejudicial language, these terms are relevant to the conspiracy of which they stand accused. Such relevant language "may not be stricken, no matter how prejudicial it may be."[81]

Finally, several defendants move to strike references to the defendants' personal wealth and a reference to defendant Smith as a "leader" at KPMG, rather than by his official title.[82] Defendants entirely fail to show that this language is sufficiently prejudicial to warrant relief under Rule 7(d).[83]

---

[80]

D. Br. 1.

[81]

*Scarpa,* 913 F.2d at 1013.

[82]

D. Br. 1.

[83]

Several defendants move to strike from the Conspiracy Count allegations that defendant Smith gave evasive testimony in the Senate investigation on the ground that they do not give Smith sufficient notice of the offense charged and are therefore too vague to satisfy the pleading requirements of FED.R.CRIM.P. 7(c). Under Rule 7(c), however, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. LaSpina,* 299 F.3d 165, 177 (2d Cir. 2002) (internal quotation marks omitted). The indictment here satisfies these requirements as to Smith and provides significantly more detail than is required. The fact that it does not specify precisely what portion of Smith's Senate testimony was evasive is immaterial. Smith is charged with conspiracy, not perjury or obstruction, and giving evasive Senate testimony is merely one of several acts he allegedly committed in furtherance of that conspiracy. As the Second Circuit has explained, "in an indictment for conspiring to commit an offense . . . it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy." *United States v. Wydermyer,* 51 F.3d 319, 325 (2d Cir. 1995) (internal quotation marks omitted).

*Conclusion*

For the foregoing reasons, defendants' motions to dismiss, to transfer, and to strike portions of the indictment are denied.

SO ORDERED.

Dated:  April 28, 2006

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)