UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

        -against-                                     S1 05 Crim. 0888 (LAK)
                                                 06 Civ. 5007 (LAK)

JEFFREY STEIN, et al.,

                            Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re

UNITED STATES OF AMERICA,

               -against-

JEFFREY STEIN, et al.,

                            Defendants.

JEFFREY STEIN, et al.,

                            Plaintiffs,

               -against-

KPMG, LLP,

                            Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## NOTICE OF FILING

        Counsel are advised that the Court today is filing in the Court of Appeals the attached

response to its invitation by order dated December 13, 2006.

Dated:       January 8, 2007

                                    _____
                                      Lewis A. Kaplan
                                  United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

# 06-4358-cv

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

_____

JEFFREY STEIN, MARK WATSON, PHILIP WIESNER, RANDALL BICKHAM, LARRY DELAP, JEFFREY EISCHEID, DAVID GREENBERG, STEVEN GREMMINGER, CARL HASTING, JOHN LANNING, JOHN LARSON, ROBERT PFAFF, GREGG RITCHIE, RICHARD ROSENTHAL, RICHARD SMITH, CAROL G. WARLEY,

Plaintiffs-Appellees,

vs.

KPMG, LLP,

Defendant-Appellant.

## RESPONSE TO RULE 21(b)(4) INVITATION

**Honorable Lewis A. Kaplan**
**United States District Judge**
**Southern District of New York**

# Table of Contents

Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.    Mandamus . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
      A.    The Traditional Mandamus Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
      B.    Supervisory and Advisory Mandamus . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      C.    Application to this Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
            1.    Subject Matter Jurisdiction  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
            2.    Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
                  a.    The scope of the 1997 and 2002 KPMG arbitration clause . . . . . 18
                  b.    The enforceability of any otherwise applicable arbitration clauses
                        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
            3.    Other Considerations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

II.   Ancillary Jurisdiction  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
      A.    The *Garcia* Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
      B.    Ancillary Jurisdiction Exists Irrespective of *Garcia*  . . . . . . . . . . . . . . . . 28
            1.    Constitutional Authority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
                  a.    The limits of an Article III "case" or "controversy"  . . . . . . . . . 29
                  b.    Adding a party . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
                  c.    Application to this case  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
            2.    Statutory Authority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
            3.    The Exercise of Discretion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
                  a.    Factors pertinent to the exercise of discretion  . . . . . . . . . . . . . 42
                  b.    Exercise of jurisdiction here would not "open the floodgates"  . . 45

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

KPMG here challenges the District Court's order denying its motion to dismiss the KPMG Defendants'[1] complaint for advancement of the costs of defending this criminal case. It argues that the District Court lacks subject matter jurisdiction. It contends that the District Court in any case should have dismissed in favor of arbitration.

The District Court construes this Court's December 13, 2006 order as inviting comment on (1) whether the merits of the substantive issues should be reached by mandamus and, (2) if so, whether the Circuit should vacate or otherwise disturb the challenged order.

## Summary

The District Court recognizes that federal courts have only such jurisdiction as is conferred by statute. Even where they have jurisdiction, in the sense of power, to resolve issues involving non-parties in criminal cases, they should do so only in rare circumstances. The questions of power and the propriety of its exercise in this case, however, are not purely academic issues. They arise against a unique background that is important to their determination.

This case has been described as the largest criminal tax case in history. The indictment contains forty-five counts. Eighteen defendants await trial. The issues are complex. The evidence is mountainous. According to the latest account, the government has produced over 22 million pages in discovery,[2] much of it in electronic form that may be used effectively only with the

---

[1] Defined terms used herein have the meanings ascribed to them in the District Court's prior opinions in this matter.

[2] Lefcourt Aff. (docket item 821) ¶¶ 4-5. (All references to docket items are to filings reflected on the 05 Crim. 0888 (LAK) docket sheet.)

assistance of electronic evidence consultants.[3]  No end to the document production is in sight.  In addition, the government has named 68 trial witnesses[4] and identified 5,024 trial exhibits amounting to over 128,000 pages.[5]  Estimates of the duration of the trial range from a low of four to a high of eight months or more.  The cost of a minimally competent defense quite plainly is beyond the means of all but the wealthiest individuals.  The need for funds to defend this case properly therefore is exceptional and perhaps unprecedented.

In prior proceedings, the District Court, after a full evidentiary hearing, held that the government violated the rights of the KPMG Defendants to due process of law and to the assistance of counsel by causing KPMG to depart from its unvarying prior practice of paying the defense costs of employees,[6] without limit, whenever employees were sued, investigated, or charged criminally in relation to their employment activities on behalf of KPMG.  Absent the prosecution's interference, the District Court found, KPMG would have paid these defendants' defense costs, regardless of whether it was obliged by law to do so.

Rather than dismiss the indictment, as the KPMG Defendants sought, the District Court heeded this Court's admonition not to consider dismissal "unless it is otherwise 'impossible to restore a criminal defendant to the position that he would have occupied' but for the

---

[3]        *Id.* ¶ 20.

[4]        *Id.* Ex. W.

[5]        Anderson Decl. (docket item 610) ¶ 18.

[6]        For convenience of expression, this Response uses "employees" to refer to partners as well as employees.

[government's] misconduct."[7]  Reasoning that the KPMG Defendants might well be "restore[d] . . . to the position that [they] would have occupied" but for the government's actions if they prevailed on their contention that KPMG is obliged legally to advance their defense costs, the District Court held that it had ancillary jurisdiction to entertain the KPMG Defendants' advancement complaint in the criminal action.[8]  "The genesis of the present dispute [thus] was a . . . hearing, which [was] itself [part of] the underlying criminal action."[9]  Nor is KPMG a stranger to this case or to the district court.  It is an unindicted co-conspirator on Count One here, and it was charged with that conspiracy in a separate information below.[10]  Accordingly, the District Court elected to exercise its jurisdiction only in these most pressing and unusual circumstances.

The District Court's views with respect to the desirability of interlocutory review are informed by what probably is obvious.  When a district court decides an issue that, if decided differently, would dispose of or change significantly the posture of a case, the district court's interest in avoiding any expenditure of time and resources on matters that ultimately might prove to be extraneous usually would be served best by immediate appellate review.  So, although the fee advancement claims are not complex and should not involve a substantial commitment of judicial

---

[7]

> *United States v. Stein,* 435 F. Supp. 2d 330, 374 (S.D.N.Y. 2006) ("*Stein I*") (quoting *United States v. Artuso,* 618 F.2d 192, 196-97 (2d Cir.), *cert. denied*, 449 U.S. 879 (1980)); *cf. United States v. Carmichael*, 216 F.3d 224, 227 (2d Cir. 2000).

[8]

> *Stein I*, 435 F. Supp. 2d at 377-78; *United States v. Stein*, 452 F. Supp. 2d 230, 242-46 (S.D.N.Y. 2006) ("*Stein III*").

[9]

> *Garcia v. Teitler*, 443 F.3d 202, 209 (2d Cir. 2006).

[10]

> That information was dismissed on January 3, 2007 pursuant to a deferred prosecution agreement.

4

resources, the District Court is not averse to immediate appellate review of the merits of the jurisdiction and arbitration issues if such review would be appropriate.  Exceptions to the final judgment rule to permit review of interlocutory orders, however, are confined to exceptional circumstances.

In this case, application of traditional mandamus standards would require denial of a mandamus petition without reaching the merits of the jurisdiction and arbitration issues. The stringencies of traditional mandamus standards, however, do admit of a limited exception for what has been termed "advisory mandamus" – the use of mandamus to provide guidance on a novel question of general or exceptional importance to the administration of justice that should not await review by appeal from a final judgment.

Depending upon the proper reading of *Garcia v. Teitler*,[11] the question whether the District Court has ancillary jurisdiction may present a question upon which no court of appeals yet has passed.  Nonetheless, it is debatable whether the other criteria for advisory mandamus are satisfied here.  It is questionable, for example, that the issue is one of general or exceptional importance to the administration of justice, particularly given the Justice Department's recent abandonment of the policy that created the problem that led the District Court to exercise ancillary jurisdiction here.  Furthermore, KPMG would have an adequate remedy by appeal from any adverse final judgment.  Hence, use of advisory mandamus here would go beyond any prior use of the doctrine by this Circuit.  Nevertheless, this Court may conclude that expansion of the scope of advisory mandamus is appropriate to reach the merits of the ancillary jurisdiction issue.

---

[11] 443 F.3d 202.

5

The arbitration issue seems another matter.  The District Court held that (1) the arbitration clauses relied upon as to nine of the KPMG Defendants do not require arbitration of this dispute because the relevant clauses apply only to disputes between Members and the firm, whereas these nine defendants are not Members as that term is defined by the relevant agreements, and (2) any arbitration clauses that otherwise would have required arbitration by any of the KPMG Defendants are unenforceable with respect to the fee advancement claim in the circumstances of this case on the ground that they violate public policy.  The first holding presents no novel issue of general or exceptional importance to the administration of justice.  And while refusals to enforce arbitration clauses on the ground that enforcement would be against public policy are not frequent, the power of a court to decline enforcement on that basis is grounded in the Federal Arbitration Act and well established in the case law.  As the circumstances that prompted the District Court to decline enforcement here are unusual and unlikely to recur, it is doubtful that advisory mandamus would be appropriate.

Assuming that the Court reaches the merits, the District Court submits that its legal determinations were correct and that its exercise of discretion was within permissible bounds.

*Garcia*, in the District Court's view, holds that a district court has ancillary jurisdiction to decide a dispute between a criminal defendant and a non-party[12] where the dispute has its genesis in the criminal case and the resolution of the dispute is important to the district court's ability to perform its function and to do justice.  This case fits comfortably within that holding. Indeed, it is a stronger case for the exercise of ancillary jurisdiction than *Garcia*.

---

[12]     As discussed below, the former attorney against whom judgment was rendered in *Garcia* was not a party.

6

Even if *Garcia* were not properly read as the District Court reads it, the holding below should stand. Article III of the Constitution and the statutory grant of subject matter jurisdiction over federal criminal cases confer the power to resolve an ancillary dispute where, as here, the ancillary dispute is logically related to the criminal case. The dispositive question therefore is not whether the District Court has power to entertain the advancement complaint. It is whether its exercise of that power exceeds the permissible bounds of its discretion.

As the Supreme Court wrote in *Kokkonen v. Guardian Life Insurance Co.*,[13] a district court may assert ancillary jurisdiction "to enable [it] to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees."[14] In consequence, the exercise of ancillary jurisdiction, even where it requires the addition of a party, is appropriate where (1) the ancillary dispute arises directly out of events that occurred in the criminal case, (2) its resolution is important to the fair and proper resolution of the criminal charges on the merits, and (3) determination of the ancillary dispute would not substantially predominate over or otherwise interfere materially with the determination of the criminal charges. These criteria are satisfied here. They readily would prevent common use of ancillary jurisdiction as a basis for involving non-parties or extraneous issues in criminal cases. Moreover, the exercise of ancillary jurisdiction is especially appropriate where the additional party, at the time the ancillary proceeding began, was before the district court on a charge identical to one asserted against the parties asserting the ancillary claim.

The District Court's views with respect to the merits of the arbitration issue were set

---

[13] 511 U.S. 375 (1994).

[14] *Id.* at 379-80.

forth fully in its prior opinions.[15]  It sees no need to comment further on that issue except to the extent that the merits bear on the availability of mandamus.

## Analysis

### I.    Mandamus

*A.    The Traditional Mandamus Standard*

Mandamus and other prerogative writs "are reserved for really extraordinary causes."[16]  Mandamus is "not to be used as a substitute for appeal, even though hardship may result from delay and [a] perhaps unnecessary trial."[17]  Indeed, it often has been said that mandamus is not

---

[15]

*Stein III*, 452 F. Supp. 2d at 246-60; *United States v. Stein*, 452 F. Supp. 2d 281, 287-88 (S.D.N.Y. 2006) (denying stay pending appeal).

[16]

*Ex parte Fahey*, 332 U.S. 258, 260 (1947); *see also Aref v. United States*, 452 F.3d 202, 206 (2d Cir. 2006) ("Mandamus is an extraordinary remedy, available only in extraordinary circumstances." (citing *In re United States*, 10 F.3d 931, 933 (2d Cir. 1993))); *In re Nagy*, 89 F.3d 115, 117 (2d Cir. 1996) (requiring an "extraordinary showing" to get mandamus review in lieu of appeal from final judgment (citing *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312 (2d Cir.1988))); *In re Repetitive Stress Injury Litig.*, 11 F.3d 368, 373 (2d Cir. 1993) ("The granting of a writ of mandamus is an extraordinary measure and should be done sparingly."); *United States v. Victoria-21*, 3 F.3d 571, 575 (2d Cir. 1993) ("Such writs may not be used as a mere substitute for an appeal, but rather the power should only be exercised in extraordinary situations.") (internal quotations omitted).

[17]

*Schlagenhauf v. Holder*, 379 U.S. 104, 110 (1964) (citations omitted); *accord Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 383 (1953); *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 30 (1943); *In re Ivy*, 901 F.2d 7, 10 (2d Cir. 1990) (quoting *Roche*); *cf. In re Traffic Executive Ass'n-E. R.R.s*, 627 F.2d 631, 634 (2d Cir. 1980) (denying writ where district court disapproved settlement agreement, noting that "[t]he likelihood that class members will find it tedious and time consuming to prove their losses does not make this an out-of-the-ordinary case").

8

available unless the petitioner's right to relief is "clear and indisputable"[18] and a direct appeal from a final judgment would not be an adequate remedy.[19]  Moreover, while traditional formulations of the standard have spoken of using the writ to confine a lower court to the exercise of its proper jurisdiction,[20] it long has been clear that mandamus will not lie to review a claim of mere error in a lower court jurisdictional determination.[21]  Indeed, any different view would conflict with the requirement that the petitioner's right to relief be clear and indisputable.

---

[18] 

*E.g.*, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 18 (1983); *Bankers Life*, 346 U.S. at 384; *In re Certain Underwriter*, 294 F.3d 297, 302 (2d Cir. 2002); *In re Aguinda*, 241 F.3d 194, 202 (2d Cir. 2001); *Drexel*, 861 F.2d at 1312.

[19] 

*E.g.*, *United States v. Giffen*, ___ F.3d___, 2006 WL 3544862, at *11 n.7 (2d Cir. Dec. 8, 2006); *United States v. Amante*, 418 F.3d 220, 222 (2d Cir. 2005); *In re SEC ex rel. Glotzer*, 374 F.3d 184, 187-88 (2d Cir. 2004); *United States v. Coppa*, 267 F.3d 132, 138-39 (2d Cir. 2001); *In re von Bulow*, 828 F.2d 94, 98-99 (2d Cir. 1987).

[20] 

*See, e.g.*, *Parr v. United States*, 351 U.S. 513, 520-21 (1956); *Bankers Life*, 346 U.S. at 382-83; *Roche*, 319 U.S. at 26; *Hong Mai Sa v. Doe*, 406 F.3d 155, 159 (2d Cir. 2005) (citing *Richardson Greenshields Secs., Inc. v. Lau*, 825 F.2d 647, 652 (2d Cir. 1987)).

[21] 

*See, e.g.*, *Ex parte Chicago, R.I. & Pac. Ry. Co.*, 255 U.S. 273, 275-76 (1921) (Brandeis, J.) (mandamus does not lie to review doubtful district court jurisdictional determination); *In re Ivy*, 901 F.2d at 10 ("[T]he writ will not issue to review an order overruling a plea to the jurisdiction." (quoting *Roche*, 319 U.S. at 31)); *Ward Baking Co. v. Holtzoff*, 164 F.2d 34, 36 (2d Cir. 1947) (denying writ where "[w]e are not satisfied that the district court 'clearly' lacks jurisdiction"); *see also United States v. DiStefano*, 464 F.2d 845, 850 (2d Cir. 1972) (Friendly, J.) ("[M]ere error, even gross error in a particular case, as distinguished from a calculated and repeated disregard of governing rules, does not suffice to support issuance of the writ."); *accord, e.g.*, *Nat'l Right to Work Legal Def. v. Richey*, 510 F.2d 1239, 1242 (D.C. Cir. 1975) ("If the lower court is clearly without jurisdiction, the writ will ordinarily be granted.  If, however, the jurisdiction of the lower court is doubtful . . . the writ will ordinarily be denied." (quoting *Ex parte Chicago*, 255 U.S. at 275)) (citations omitted); *Comfort Equip. Co. v. Steckler*, 212 F.2d 371, 373 (7th Cir. 1954) ("If a rational and substantial legal argument can be made in support of the questioned jurisdictional ruling the case is not appropriate for mandamus or prohibition even though on normal appeal a reviewing court might find reversible error." (quoting *Am. Airlines v. Forman*, 204 F.2d 230, 232 (3d Cir. 1953))).

Measured by these standards, there is no basis for treating the appeal as a petition for mandamus in order to reach the merits of the issues tendered. KPMG has an adequate remedy for any error by appeal from any final judgment that may be entered against it. The fact that it may have to try the advancement claim first is not a sufficient basis, under traditional mandamus standards, to warrant any departure from the final judgment rule.[22]

B.      *Supervisory and Advisory Mandamus*

In *La Buy v. Howes Leather Co.*[23] and *Schlagenhauf v. Holder*,[24] the Supreme Court "departed in some degree" from the traditional mandamus standards to countenance the use of the writ for, respectively, supervisory and advisory purposes.[25] "[W]hat is unclear is how far" it departed.[26]

Supervisory mandamus appears to have no proper role in this case. In *La Buy*, the district court, notwithstanding prior admonitions by the Seventh Circuit against excessive use of special masters, referred two antitrust cases to special masters on the ground that its docket was too

---

[22]

*See sources cited supra* note 17.

[23]

352 U.S. 249 (1957).

[24]

379 U.S. 104.

[25]

*Kaufman v. Edelstein*, 539 F.2d 811, 817 (2d Cir. 1976) (Friendly, J.). *See generally* Note, *Supervisory and Advisory Mandamus Under the All Writs Act*, 86 HARV. L. REV. 595 (1973) (hereinafter "Harvard Note").

[26]

*Kaufman*, 539 F.2d at 817.

congested.  It did so in line with a prior practice of too frequent references to special masters[27] that the Supreme Court characterized as "little less than an abdication of the judicial function."[28]  In those circumstances, the Court held that mandamus was appropriate in furtherance of the "supervisory control of the District Courts by the Courts of Appeals."[29]  The case therefore appears to authorize "supervisory" mandamus "when a plausible case could be made for the danger of frequent recurrence" of a "probably erroneous practice."[30]  No such claim has been made here.

Advisory mandamus differs.  In *Schlagenhauf,* the Court appeared to hold that mandamus may be used to settle important questions of first impression where there is a "substantial allegation of usurpation of power" by the district court.[31]  Thus, courts of appeals seem to have some scope for use of mandamus to settle novel questions.  On the other hand, as this Court has written,

---

[27]

352 U.S. at 258.

[28]

*Id.* at 256.

[29]

*Id.* at 259-60.

[30]

*See* Harvard Note, 86 HARV. L. REV. at 609-10; *see also, e.g.*, *United States v. Yemitan*, 70 F.3d 746, 748 (2d Cir. 1995) ("[A]n arbitrary practice of sentencing without proferred [sic] reasons would amount to an abdication of judicial responsibility subject to mandamus.") (dictum); *In re United States*, 10 F.3d at 932-33 (mandamus review of order referring Title III wiretap application to magistrate judge where the referring district judge "appear[ed] to be the only judge in this circuit, if not the nation, to delegate the review of Title III orders to a federal magistrate judge" and where the referring judge had made clear his intention to do so as a general matter); *DiStefano*, 464 F.2d at 850 (mandamus appropriate when there is "a calculated and repeated disregard of governing rules"); *accord, e.g.*, *In re Bieter Co.*, 16 F.3d 929, 932 (8th Cir. 1994) (mandamus appropriate when, *inter alia*, "[t]he district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules" (quoting *Bauman v. United States Dist. Court*, 557 F.2d 650, 655 (9th Cir. 1977))); *In re Bendectin Prods. Liab. Litig.*, 749 F.2d 300, 303-04 (6th Cir. 1984) (same).

[31]

379 U.S. at 110-11.

"[n]o one could reasonably suppose that the [Supreme] Court has now subscribed . . . to a doctrine that any non-frivolous claim of error in a decision is a claim of 'usurpation of power' on the theory that courts are bound to decide all issues correctly."[32]

The Second Circuit's decisions subsequent to *La Buy* and *Schlagenhauf* do not resolve entirely the uncertainty as to the criteria dividing appropriate from inappropriate uses of advisory mandamus.

In *American Express Warehousing, Ltd. v. Transamerica Insurance Co.*,[33] the Circuit, although it denied mandamus, read *Schlagenhauf* as creating an "escape hatch" from the finality rule "[w]hen a discovery question is of extraordinary significance or there is extreme need for reversal of the district court's mandate before the case goes to judgment."[34]  "[T]he touchstones . . . of review by mandamus are usurpation of power, clear abuse of discretion and the presence of an issue of first impression."[35]

Some subsequent discovery cases have invoked this standard, sometimes along with reference to more traditional criteria.[36]  More recently, the Circuit has said essentially the same thing, albeit without specific characterization of review in such circumstances as "advisory."  It has written

---

[32]  *Kaufman*, 539 F.2d at 819.

[33]  380 F.2d 277 (2d Cir. 1967).

[34]  *Id.* at 282.

[35]  *Id.* at 283.

[36]  *See, e.g.*, *In re Attorney General of the United States*, 596 F.2d 58, 63 (2d Cir. 1979); *Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 591 F.2d 174, 181 (2d Cir. 1979).

12

that it

> "will entertain a petition for a writ of mandamus . . . to cure a defective pretrial discovery order if the petitioner demonstrates '(1) the presence of a novel and significant question of law; (2) the inadequacy of other available remedies; and (3) the presence of a legal issue whose resolution will aid in the administration of justice.'"[37]

These cases establish that mandamus sometimes may be granted to reverse an erroneous discovery ruling where the ruling orders discovery that could not be undone on appeal from a final judgment because the allegedly undiscoverable information will have been disclosed. One case holds also that an order finding the Attorney General of the United States in contempt for failing to produce allegedly privileged documents is "of extraordinary significance" and reviewable on mandamus.[38] But the discovery mandamus cases shed little light on the appropriate course in this case, in part because KPMG, unlike the holder of an alleged privilege or other protection against discovery, could suffer no cognizable harm if review were denied unless and until there is a final judgment against it.

Nor do most of the Circuit's post-*Schlagenhauf* mandamus cases in non-discovery contexts bear strongly on the facts at bar, although several contain expressions that cut against

---

[37]

*Glotzer*, 374 F.3d at 187 (quoting *Coppa*, 267 F.3d at 137-38 (quoting *In re United States*, 903 F.2d 88 (2d Cir.1989))) (alteration in original); *see also In re County of Erie*, 2007 WL 11024, *2 (2d Cir. Jan. 3, 2007); *In re Long Island Lighting Co.*, 129 F.3d 268, 271 (2d Cir. 1997); *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 233 (2d Cir. 1993); *Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159, 163 (2d Cir. 1992); *In re von Bulow*, 828 F.2d at 96-100.

[38]

*Attorney General*, 596 F.2d at 63-64.

mandamus in this case.[39]   The cases arguably most relevant here, although they did not explicitly frame the question in terms of advisory mandamus, are *In re International Business Machines Corp.*[40] and *United States v. Amante.*[41]

In *IBM*, the Circuit granted mandamus to halt Judge Edelstein's consideration of whether the Tunney Act provision requiring judicial approval of consent decrees in government antitrust cases[42] applied to stipulations of dismissal under Federal Rule of Civil Procedure 41(a)(1).[43] It did so, however, not simply because it disagreed with the district court's retention of jurisdiction

---

[39]

   *In re United States*, 903 F.2d 88 (2d Cir. 1990), held that mandamus would lie to determine whether a district judge could delegate conduct of *voir dire* in a felony case to a magistrate judge without the government's consent, given that the issue was likely to recur and should be settled promptly.  *Id.* at 89.  *Kaufman*, 539 F.2d 811, held that mandamus would not lie to review an order denying motions to quash subpoenas directing expert witnesses to testify for the government in a civil antitrust case in view of the fact that the district judge gave "careful consideration . . . to the law as announced by this court" and the conclusion that *La Buy* and *Schlagenhauf* do not mean that mandamus will lie to review "any non-frivolous claim of error." *Id.* at 818-19.  *DiStefano*, 464 F.2d 845, denied mandamus to review a trial court order dismissing indictments because the government was not ready to proceed despite the fact that the government, under then-existing law, had no right of appeal.  It relied upon the proposition that "mere error, even gross error in a particular case, as distinguished from a calculated and repeated disregard of governing rules, does not suffice to support issuance of the writ."  *Id.* at 850.  *United States v. Weinstein*, 452 F.2d 704 (2d Cir. 1971), granted the writ to vacate a district court order dismissing an indictment after a jury verdict despite the lack of specific error warranting dismissal where neither a statute nor the inherent power of the court provided the authority to do so.  *See also United States v. Dooling*, 406 F.2d 192 (2d Cir. 1969) (mandamus granted directing district judge to sentence criminal defendants after jury returned guilty verdict after fair trial).

[40]

   687 F.2d 591 (2d Cir. 1982).

[41]

   418 F.3d 220.

[42]

   15 U.S.C. § 16(e)(1).

[43]

   Judge Edelstein had heard argument on the issue but had not yet issued a decision.  687 F.2d at 596.

to consider the issue, but for three other reasons.  First, both parties were united in their desire that the case be dismissed outright.[44]  Second, the case already had gone on for thirteen years, tying up "one of the nation's largest industrial concerns," during which time "many of the underlying products [had become] commercially outmoded."[45]  Finally, there was no serious basis for the assertion that the Tunney Act applied to a Rule 41(a)(1) dismissal in light of the plain language of the statute and "the clear and indisputable legislative history."[46]

*Amante* concerned a different question, viz. whether a district court had erred in bifurcating a simple felon-in-possession firearm case to require first a trial on the issue of possession and then a separate trial on the issue of the prior felony conviction, which would take place only after a jury finding of possession.  In granting mandamus to vacate the bifurcation order, the Circuit relied upon its conclusions that (1) the issue was significant because "[i]ts resolution will affect numerous defendants in similar trials and will aid in the administration of criminal justice," and (2)  "no remedy [wa]s available to the government other than mandamus."[47]

C.    *Application to this Case*

1.    *Subject Matter Jurisdiction*

As noted above, and as explained in greater detail below, the District Court reads

---

[44]
    *Id.* at 600.

[45]
    *Id.* at 599-600.

[46]
    *Id.* at 600-02.

[47]
    418 F.3d at 222.

*Garcia* to hold that a district court has ancillary jurisdiction to decide a dispute between a criminal defendant and a non-party where the dispute has its genesis in the criminal case and the resolution of the dispute is important to the district court's ability to perform its function and to do justice.  If that view of *Garcia* is correct, the subject matter jurisdiction aspect of the challenged order would present no novel question.  Advisory mandamus would be inappropriate.

Assuming *arguendo* that *Garcia* did not resolve that issue, the ancillary jurisdiction question would be a novel one in the sense that neither the parties nor the District Court has found another appellate case in point.  Nevertheless, it does not necessarily follow that advisory mandamus would be appropriate to reach the merits of that issue, essentially for two reasons.

First, KPMG has an adequate remedy by appeal from any adverse final judgment. The fact that it may have to try the advancement claim does not undermine that conclusion.  In fact, this Circuit has said that "the writ will not issue to review an order overruling a plea to the jurisdiction" because "mandamus may not be resorted to as a mode of review" that would circumvent the Congressional policy inherent in the final judgment rule.[48]  Moreover, resolution of the ancillary jurisdiction issue by this Court at this stage of the proceeding carries with it the risk that it will decide the issue unnecessarily[49] and, perhaps even more important, without benefit of a full record.[50]

---

[48]        *In re Ivy*, 901 F.2d at 10 (quoting *Roche*, 319 U.S. at 27-31); *accord Bankers Life*, 346 U.S. at 382-83.

[49]        Naturally, if KPMG were to prevail below, the Circuit never would have to consider the issue.

[50]        The KPMG Defendants' letter brief argues that it would be premature to determine the extent to which the resources available to them are constraining the preparation of their

Second, there seems to be little likelihood that the issue will recur, as it has arisen only by an unusual and possibly unique confluence of improbable circumstances.  The issue arose because (1) KPMG had an unbroken practice of paying defense costs, (2) KPMG had no charter or by-law provision or, evidently, any other writing making clear either that any such payments were required or that they were matters of grace, (3) the Department of Justice's Thompson Memorandum and prosecutors acting pursuant to it successfully pressured KPMG not to pay the KPMG Defendants' legal fees, (4) KPMG is a partnership, thus rendering unavailable the state court summary proceeding that would have allowed prompt determination of the advancement dispute if KPMG had been a corporation,[51] and (5) the dimensions of this litigation require resources for a proper defense well beyond the means of all but the richest persons.  In short, the case is a "perfect storm."

Neither this "perfect storm," nor anything resembling it, is likely to recur with any frequency, if ever.  The underlying cause now is gone, as the Department of Justice on December 12, 2006 abandoned its policy of pressuring business entities not to pay employee defense costs.[52]

---

defenses.  They point out that the stay issued by the Circuit stopped discovery on that among other issues.  KPMG Defendants' Letter Br. 7 n.5.  The trial record, if the trial were to go forward, might well be considerably fuller with respect to the KPMG Defendants' need for resolution of the advancement claims now in order properly to defend themselves against the criminal charges.

[51]    See DEL. CODE ANN. tit. 8, § 145(k).

[52]    See United States Dep't of Justice press rel. #06-828, Dec. 12, 2006, *available at* http://www.usdoj.gov/opa/pr/2006/December/06_odag_828.html (last visited Jan. 4, 2007); Prepared Remarks of Deputy Attorney General Paul J. McNulty at the Lawyers for Civil Justice Membership Conference Regarding the Department's Charging Guidelines in Corporate Fraud Prosecutions, Dec. 12, 2006, *available at* http://www.usdoj.gov/dag/speech/2006/dag_speech_061212.htm (last visited Jan. 4, 2007); Memorandum, *Principles of Federal Prosecution of Business Organizations*, *available at*

Even if the government again were to pressure an employer as it did here, the rights of any affected employees vis-a-vis their employer probably would be clear from indemnification and advancement provisions that are common in corporate charters, by-laws, and employment contracts.  In any case, there is a material likelihood that future disputes over advancement of legal fees in criminal prosecutions could be resolved promptly through summary state court proceedings that are available to many corporate employees, but that are not available here because KPMG is a partnership.[53]

Finally, without diminishing the complexity and dimensions of this case, the circumstances here do not approach those of *IBM*.  This case is less than two years old, not thirteen.  Unlike *IBM*, it concerns eighteen individuals; it does not affect "one of the nation's largest industrial concerns."   Unlike *IBM*, the District Court is not insisting on conducting proceedings that no party wants; it is seeking to resolve a claim vigorously asserted by the KPMG Defendants, the resolution of which is important to the proper disposition of the criminal charges against them.  Unlike the Tunney Act question presented in *IBM*, the proper resolution of the issue on which mandamus is sought, the scope of ancillary jurisdiction in criminal cases, is not self evident.  As the Circuit has written, "[t]he boundaries of ancillary jurisdiction are not easily defined and the cases addressing it are hardly a model of clarity."[54]  And unlike the statutory construction question presented in *IBM*, which potentially could have been raised in any government antitrust case, the subject matter jurisdiction question here is unlikely to recur.  Similarly, this case differs from *Amante* in that there

---

[53]     http://www.usdoj.gov/dag/speech/2006/mcnulty_memo.pdf (last visited Jan. 4, 2007).

        Delaware and New York, perhaps among other states, have statutory proceedings for summary determination of such issues.  DEL. CODE ANN. tit. 8, § 145(k); N.Y. BUS. CORP. LAW § 724.  In both cases, however, the statutes apply only to corporations.

[54]     *Garcia*, 443 F.3d at 208.

is no issue here that "will affect numerous defendants in similar trials" and KPMG has an adequate remedy for any adverse judgment by direct appeal.

In sum, the use of advisory mandamus to reach the merits of the subject matter jurisdiction issue here would go significantly beyond anything this Circuit has countenanced before.

### 2.   *Arbitration*

The challenged order is predicated on two rulings with respect to KPMG's contention that the advancement claims of the KPMG Defendants are subject to arbitration.

### a.   *The scope of the 1997 and 2002 KPMG arbitration clause*

First, the District Court held that the arbitration clause upon which KPMG relies with respect to nine of the defendants, which appeared in its 1997 and 2002 partnership agreements, does not apply.  It requires arbitration of certain disputes between KPMG and its "Members," which the agreements define to mean partners and principals.  These nine individuals are not partners or principals.  They therefore are not Members as defined by the agreement.  They are "Separated Members," a term defined to mean former partners and principals.  And although the agreements differentiate between Members and Separated Members throughout, the arbitration clause does not include Separated Members among the persons obliged to arbitrate disputes with the firm.  Indeed, subsequent to the departure of these individuals, KPMG changed the arbitration clause prospectively to cover disputes between the firm, on the one hand, and *both* Members and Separated Members, on the other.

Notwithstanding the desirability of interlocutory review here, it is doubtful that this

would be a proper subject even of advisory mandamus.  The legal principle that governs the question is plain:  Even where an arbitration clause relied upon is "broad" and issues as to the scope of the clause generally are matters for arbitrators,[55] the arbitrability of a dispute nevertheless must be determined by the court where "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."[56]  Thus, even if the District Court erred, the error was not in determining the applicable rule of law.  It could have been only in the application of an established principle, viz. its holding that the language of this particular arbitration clause permits it to be said with "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."

> b.   *The enforceability of any otherwise applicable arbitration clauses*

The second arbitration-related issue is the correctness of the District Court's holding that any otherwise applicable arbitration clauses are unenforceable as against public policy, on the facts of this case, as applied to these fee advancement claims.[57]

---

[55]   *See PaineWebber, Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996).

[56]   *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960)); *accord Paramedics Electromedicina Comercial Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 653 (2d Cir. 2004); *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 99 (2d Cir. 1999); *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997).

[57]   This ruling is of significance principally to the seven KPMG Defendants who remained at KPMG after the firm changed its partnership agreement prospectively to make the arbitration clause applicable to disputes between Separated Members and the firm.  It would be material to the other nine defendants only in the event the ruling concerning the scope of the 1997 and 2002 version of the arbitration clause were erroneous.

The legal principles governing this issue also are clear.  Section 2 of the Federal Arbitration Act requires enforcement of arbitration clauses subject to the statute "save upon such grounds as exist at law or in equity for the revocation of any contract."[58]  Thus, "generally applicable contract defenses . . . may be applied to invalidate arbitration agreements without contravening § 2."[59]  This includes the defense that the arbitration agreement is unenforceable as against public policy,[60] although the public policy, as in any such case, "must be well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'"[61]  Thus, the enforceability issue does not raise a legal question of broad significance for other cases or for the administration of justice.  The only question

---

It is important to note also that the District Court's holding on this point was quite narrow. It declined to enforce any otherwise applicable arbitration clauses only to the extent that doing so was necessary to deal with the concern underlying its exercise of ancillary jurisdiction – the need for a prompt resolution of the KPMG Defendants' claim that they have a right to have KPMG advance the defense costs.  The District Court has not ruled on any claim that otherwise applicable arbitration clauses are unenforceable to the extent that they may require arbitration of claims for indemnification (as opposed to advancement), *see Stein I*, 435 F. Supp. 2d at 354-55 (differentiating between indemnification and advancement), which in any case could not be determined until the end of the criminal case. Nor has it ruled on any claim that such clauses are unenforceable as applied to KPMG's counterclaims. Indeed, it has not yet been called upon to rule whether its ancillary jurisdiction would extend to indemnification claims and counterclaims.

[58]   9 U.S.C. § 2.

[59]   *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *see also Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 364-65 (2d Cir. 2003).

[60]   *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 42 (1987) ("[A] court may refuse to enforce contracts that violate law or public policy.") (citing *W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber, Cork, Linoleum and Plastic Workers of Am.*, 461 U.S. 757, 766 (1983))).

[61]   *W.R. Grace*, 461 U.S. at 766 (quoting *Muschany v. United States*, 324 U.S. 49, 66 (1945)) (collective bargaining agreement enforceable because it did not violate public policy).

is the correctness of the application of settled principles to the particular and exceptional facts of this case.

* * *

Mandamus is not an appropriate vehicle for review of an application of settled principles to the particular facts of a case even if that application arguably is erroneous.[62]    In consequence, it would seem that there is not a strong case for using mandamus to review either of the arbitration issues raised by the challenged order.

### 3.    Other Considerations

KPMG's letter brief alleges a "necessity for intervention" by the Circuit because, among other reasons, the District Court "is operating according to some undefined procedural system in which neither the Federal Rules of Civil Procedure nor the Federal Rules of Criminal Procedure clearly apply," "deemed the [KPMG] Defendants to have filed a motion (which they did not actually file)," "ultimately . . . set a six-week period of artificially limited 'discovery,' culminating in a 'trial' at which KPMG would be prohibited from introducing evidence on its own defenses and counterclaims," and "even denied KPMG's demand for a jury trial because, *inter alia*, the Seventh Amendment right to a jury trial in civil cases purportedly did not attach to a proceeding that was ancillary to a criminal prosecution."[63]  These assertions are meritless and, in several cases, seriously

---

[62]

       *See, e.g.*, *In re Weisman*, 835 F.2d 23, 27 (2d Cir. 1987) (where district court applied "well-settled principles of law" to privilege question, mandamus not warranted regardless of "whether or not we would agree with [this] ruling were we reviewing a final judgment on appeal").

[63]

       KPMG Letter Br. 4-5 & n.3.

misleading.

First, Federal Rule of Criminal Procedure 57(b) provides that "[a] judge" in a criminal case "may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district."  The District Court has made clear, by express reference to this rule, that the ancillary proceeding will be handled "by applying the Federal Rules of Civil Procedure to the extent they are consistent with the Criminal Rules."[64]  There is no "undefined procedural system."

Second, KPMG complains that the District Court treated a motion by the KPMG Defendants as one to require KPMG to advance defense costs when, in fact, no such motion had been filed.[65]  That is incorrect.  The KPMG Defendants moved in January 2006 for "an order directing that advancement of legal fees be provided to the KPMG defendants."[66]  One of their memoranda in support of that motion invoked *Garcia* and sought an order requiring KPMG to pay

---

[64]

*Stein III*, 452 F. Supp. 2d at 269.

[65]

KPMG Letter Br. 4.

The statement by the District Court, alluded to but not quoted by KPMG, was that it would "treat the papers already filed by the KPMG Defendants as a motion for an order directing KPMG to advance the defense costs reasonably incurred and to be incurred by them from the date of the indictment forward" and "the papers already filed by KPMG as an opposition to that motion."  *Stein I*, 435 F. Supp. 2d at 379 n.238.  The point simply was that neither the KPMG Defendants nor KPMG, in the event the KPMG Defendants elected to commence an ancillary proceeding, would be obliged to refile under the ancillary docket number the papers that already had been filed under the criminal docket number.  Courts, of course, properly do such things all the time in the interests of economy and efficiency.  Moreover, KPMG was permitted to file a second opposition to the motion after the ancillary proceeding was commenced.  *Id.*

[66]

Docket item 268 at 2.

their legal fees.[67]  Indeed, KPMG, well before the advancement complaint was served, responded to the motion.[68]

       Third, limits on discovery are common and proper.  Some are imposed expressly by the Federal Rules of Civil Procedure, and district judges may impose others pursuant to explicit authority contained in those rules.[69]  Moreover, the District Court's order here imposed some limits "[u]nless otherwise ordered by the Court."[70]  KPMG never applied for additional discovery.

       Fourth, KPMG has not been prohibited "from introducing evidence on its own defenses and counterclaims."  Although there are substantial issues as to the legal sufficiency of many of them and, to the extent that any counterclaims may be sufficient, whether the counterclaims should be severed from a trial of the advancement claims,[71] those issues have not yet been decided.

       Finally, in a decision now under reconsideration, the District Court did strike KPMG's jury demand.  Contrary to the statement in KPMG's letter brief, however, it did not do so "because . . . the Seventh Amendment right to a jury . . . did not attach to a criminal proceeding that

---

[67]

    Docket item 458 at 7-9.

[68]

    Docket item 520.

[69]

    *See, e.g.*, FED. R. CIV. P. 26(b)(1), 26(b)(2), 26(c), 33(a), 16(c)(6).

[70]

    *Stein III*, 452 F. Supp. 2d at 275 n.179.

    The District Court declined to limit interrogatories and requests for admissions beyond the limits contained in the Federal Rules.  Tr., Sept. 26, 2006 (docket item 804) at 28.

[71]

    *See Stein III*, 452 F. Supp. 2d at 269, 271-75.

24

was ancillary to a criminal prosecution." It expressly declined to reach that issue.[72] It rested the decision instead on the fact that the advancement complaint in substance is a claim for specific performance of an alleged contract – an equitable claim with respect to which there is no right to a jury trial.[73]

## II.   Ancillary Jurisdiction

Federal courts possess "only that power authorized by Constitution and statute."[74] Moreover, ancillary jurisdiction in criminal cases rarely should be exercised to resolve claims other than the criminal charges before the district court. Nevertheless, the exercise of ancillary jurisdiction to decide the fee advancement claims against KPMG is consistent with the law of this Circuit. In any case, in the exceptionally unusual circumstances of this case, it is within the limited jurisdiction of the district court. The suggestion that "criminal defendants routinely will hale into federal court their employers, former employers and insurers on the theory that these non-parties ought to advance the defendants' legal fees"[75] if the decision below stands is incorrect.

## A.   The Garcia Case

In determining that it had ancillary jurisdiction, the District Court relied heavily on

---

[72]

United States v. Stein, 452 F. Supp. 2d 276, 279 (S.D.N.Y. 2006).

[73]

Id. at 279-80.

[74]

Kokkonen, 511 U.S. at 377.

[75]

KPMG Br. 24.

*Garcia v. Teitler.*[76] Having considered the appellate briefs, the District Court remains convinced that there is no persuasive, principled distinction between *Garcia* and this case. If anything, this case is stronger for the exercise of ancillary jurisdiction.

The facts of *Garcia* are familiar. Two defendants in a criminal case jointly retained attorney Teitler and paid him a $40,000 retainer. The district court, following a *Curcio* hearing, disqualified Teitler from representing both. The defendants then informed Teitler that neither wished his services any longer. Teitler refused to return any part of the retainer. The district court then granted Teitler's motion to be relieved as counsel. Later, the district court exercised ancillary jurisdiction to resolve the fee dispute between Teitler and his former clients, ultimately ordering Teitler to return most of the money. The stated need for taking jurisdiction was that the defendants were "of limited means and . . . the funds paid to Teitler may be needed to pay their new counsel."[77]

The Court of Appeals affirmed, holding that the district court had ancillary jurisdiction to resolve the dispute. Although the Circuit's opinion is discussed extensively in the opinions below, one point bears particular emphasis in the present posture of this case.

In the course of holding that the enactment of the civil supplemental jurisdiction statute[78] has no bearing on the district court's ancillary jurisdiction in criminal matters, the *Garcia* court pointed out that the district court's subject matter jurisdiction rested on 18 U.S.C. § 3231.[79]

---

[76]   443 F.3d 202.

[77]   *Id.* at 209.

[78]   28 U.S.C. § 1367.

[79]   443 F.3d at 207.

Section 3231 is the basis of the District Court's jurisdiction in this case as well.  Hence, unless *Garcia* properly can be distinguished from this case, the existence of ancillary jurisdiction in the circumstances of this case is not an open question in this Circuit.

The only distinction seriously offered is the contention that this case involves the addition of a party, KPMG, to the criminal case whereas Teitler was an attorney who had appeared in *Garcia*.  But that argument lacks merit both from the perspective of the facts of *Garcia* and on a doctrinal basis.

To begin with, Teitler was not charged in the indictment. He was nothing more than an attorney.  As this Circuit held in *Grimes v. Chrysler Motors Corp.*,[80] attorneys are not parties to the cases they litigate, and jurisdiction over fee disputes cannot be sustained on the theory that they are.[81]  Hence, there is no escaping the fact that *Garcia* upheld the exercise of ancillary jurisdiction over someone who was not a party to the criminal case on a monetary claim as to which there was no independent basis of jurisdiction.

Nor can the fact that Teitler had been the defendants' attorney otherwise bear the weight that KPMG seeks to place upon it.  By the time the district court undertook to resolve the fee dispute, Teitler's motion to be relieved as counsel had been granted.  He no longer was the defendants' attorney.  Thus, assuming that ancillary jurisdiction exists to resolve fee disputes between defendants in criminal cases and their attorneys of record, Teitler simply did not fall into that category when the district court acted.

---

[80]     565 F.2d 841 (2d Cir. 1977).

[81]     *Id.* at 843-44.

Finally, the fact that Teitler, as an attorney, was an officer of the court and thus subject to its discipline adds nothing. *Garcia* was not an attorney disciplinary proceeding. There was no charge before the district court of any violation of the disciplinary rules and no referral by the district judge to the court's grievance committee. In fact, the district judge advised a friend of the criminal defendants to contact the "disciplinary committee for the bar."[82] Thus, the district court simply adjudicated the criminal defendants' claim, as to which there was no independent basis of jurisdiction, that Teitler owed them money.

But there is a far more fundamental problem with relying on a distinction based on the fact that Teitler was an attorney whereas KPMG is the KPMG Defendants' former employer.

As noted, jurisdiction must be conferred by statute. The statute relied upon by *Garcia*, 18 U.S.C. § 3231, does not explicitly grant jurisdiction to district courts to resolve fee disputes between criminal defendants and either their present or former attorneys any more than it grants jurisdiction to resolve fee advancement disputes with former employers. *Garcia* therefore must rest on two propositions. First, Section 3231 implicitly confers upon district courts the power to resolve fee and other disputes where that is necessary "'to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.'"[83] Second, this

---

[82]

443 F.3d at 210-11.

[83]

*Id.* at 208 (quoting *Kokkonen,* 511 U.S. at 379-80).

This Circuit repeatedly has held that district courts have ancillary jurisdiction to decide, even after termination of criminal cases, motions by defendants to expunge arrest records, require return of fingerprints and arrest photographs, and return seized property, *see id.* at 207 (citing *Rufu v. United States*, 20 F.3d 63, 65 (2d Cir. 1994); *Soviero v. United States*, 967 F.2d 791, 792 (2d Cir. 1992); *Mora v. United States*, 955 F.2d 156, 158 (2d Cir. 1992); *United States v. Schnitzer*, 567 F.2d 536, 538 (2d Cir. 1977)) – none of which is mentioned explicitly in 18 U.S.C. § 3231. It is difficult to see how expunging arrest records, returning

28

power is exercised appropriately where the ancillary dispute has its "genesis" and is important to doing justice in the criminal case, even in rare circumstances by adding a party not named in the charging instrument.[84]

This case thus fits squarely within *Garcia*.   In both cases, the ancillary dispute has its genesis in the criminal case – in *Garcia* in the disqualification of Teitler for conflict of interest and here in the government's violation of the due process and Sixth Amendment rights of the KPMG Defendants.   In both cases, the ancillary dispute concerns defendants' claims to money allegedly owed them by others that they wish to use in defending against criminal charges.   Indeed, the need for resolution of the ancillary dispute doubtless is far greater here for two reasons.   First*, the scope, complexity, and cost of defending against the criminal charges in this case far exceed those in *Garcia*.   Second, resolution of this dispute may have an important bearing on the proper disposition of the KPMG Defendants' motion to dismiss the indictment on the basis of the government's violation of their constitutional rights, a factor supporting the exercise of ancillary jurisdiction that was not present in *Garcia*.

Accordingly, the exercise of ancillary jurisdiction here is consistent with *Garcia*. Indeed, the District Court respectfully submits that a contrary conclusion properly could be reached only by an *en banc* court overruling that case.

---

seized property, and the like after the conclusion of a criminal case is more important to the proper functioning of a district court than ensuring that the defendants in a pending criminal case have a swift means of resolving claims to funds that allegedly are needed to mount a proper defense where they were deprived of those funds as a result of unconstitutional actions by the prosecution.

[84]

*See* 443 F.3d at 209.

B.      *Ancillary Jurisdiction Exists Irrespective of* Garcia

Even if the Court of Appeals disagrees with this analysis of *Garcia*, the District Court respectfully submits that it has the constitutional and statutory authority to adjudicate this ancillary matter and that its exercise of discretion to do so is appropriate.

1.      *Constitutional Authority*

        a.      *The limits of an Article III "case" or "controversy"*

Ancillary jurisdiction[85] rests on the understanding that a federal court, though of limited jurisdiction, obtains jurisdiction "over a case or controversy in its entirety."[86]

The most frequently cited statement of the scope of an Article III case or controversy appears in *United Mine Workers of America v. Gibbs.*[87]   The Court there held, among other things,

---

[85]

"Ancillary," "pendent," and "supplemental" jurisdiction all refer to the ability of a federal court to hear claims that have no independent basis for subject matter jurisdiction, but which are related to a case over which an independent basis for jurisdiction exists. Although the doctrines of ancillary and pendent jurisdiction have developed largely separately, the Supreme Court has recognized that they are "two species of the same generic problem." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, ___, 125 S.Ct. 2611, 2621 (2005) (citing *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 37 (1978)).

Pendent jurisdiction generally is understood to refer to an additional claim asserted by a plaintiff. *See Bank Of India v. Trendi Sportswear, Inc.*, 239 F.3d 428, 436 (2d Cir. 2000). Ancillary jurisdiction usually refers to claims brought by a party other than the plaintiff, *see id.*, but also refers more generally to those matters a court must resolve to do complete justice in the case at hand, *see, e.g.*, *Kokkonen*, 511 U.S. at 380 (ancillary jurisdiction used "to enable a court to function successfully").   Supplemental jurisdiction was the terminology adopted by Congress in enacting 28 U.S.C. § 1367, and courts have understood the statute to refer both to pendent and ancillary jurisdiction. *See Exxon Mobil*, 545 U.S. at ___, 125 S.Ct. at 2621 ("Nothing in § 1367 indicates a congressional intent to recognize, preserve, or create some meaningful, substantive distinction between the jurisdictional categories we have historically labeled pendent and ancillary.").

This Response uses the term "ancillary jurisdiction" to refer to claims brought by a party other than the plaintiff and to proceedings necessary "to enable a court to function successfully." *Kokkonen*, 511 U.S. at 379-80. It uses supplemental jurisdiction in all other instances unless otherwise appropriate in the context of a particular case.

[86]

*Sandlin v. Corporate Interiors Inc.*, 972 F.2d 1212, 1216 (10th Cir. 1992) (quoting 6 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1444 (2d ed. 1990)).

[87]

383 U.S. 715 (1966).

that a district court in a federal question case had the power to decide a state law claim asserted by the plaintiff despite the lack of any independent jurisdictional basis over the state claim.  It rested the existence of that power on the fact that "[t]he state and federal claims . . . derive[d] from a common nucleus of operative fact. . . . [and the] plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding."[88]

While many courts have assumed that *Gibbs* set the outer limits of an Article III "case or controversy,"[89] this appears to be incorrect, at least with respect to some instances of ancillary jurisdiction.[90]  In *Kokkonen*, the Supreme Court wrote that ancillary jurisdiction has been asserted both "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees."[91]  As Article III's case or controversy requirement is the boundary of federal judicial power, *Kokkonen* makes clear that an ancillary proceeding over which there is no independent basis of subject matter jurisdiction is within Article III if it is appropriate to "enable a court to function successfully," even where there is no factual

---

[88]

       *Id.* at 725.

[89]

       *See Owen Equip.*, 437 U.S. at 371 ("It is apparent that *Gibbs* delineated the constitutional limits of federal judicial power."); *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) ("[W]e have held that disputes are part of the 'same case or controversy [under Article III of the United States Constitution]' within § 1367 when they 'derive from a common nucleus of operative fact.'" (quoting *Promisel v. First Am. Artificial Flowers Inc.*, 943 F.2d 251, 254 (2d Cir. 1991))).

[90]

      *See, e.g.*, Denis F. McLaughlin, *The Federal Supplemental Jurisdiction Statute – A Constitutional and Statutory Analysis*, 24 Ariz. St. L.J. 849, 908-09 (1992) (hereinafter "McLaughlin").

[91]

      511 U.S. at 379-80 (citations omitted).

interdependence between the action and the ancillary claims.[92]  As will appear, that would be so in this case even if there were no factual interdependence, as in fact there is.  But it is unnecessary to decide in this case whether *Gibbs* defines the outer boundaries of the case or controversy requirement, as *Gibbs* has been interpreted very broadly by this Circuit and others.  The advancement claim against KPMG is within its capacious boundaries.

In *Jones v. Ford Motor Credit Co.*,[93] this Circuit held that the *Gibbs* standard was satisfied where a defendant in a federal discrimination-in-lending case brought permissive counterclaims to collect auto loans allegedly due from the plaintiffs, claims with respect to which there was no independent basis of jurisdiction.  There was no factual overlap between the defendant's alleged discrimination and the plaintiffs' debts on their auto loans.  But the Circuit held that the fact that both claims "originate[d] from the Plaintiffs' decisions to purchase Ford cars" was sufficient to satisfy the case or controversy requirement and to permit the exercise of ancillary jurisdiction over the counterclaim.[94]

---

[92]

     *Jones v. Ford Motor Credit Co.*, 358 F.3d 205 (2d Cir. 2004), made a similar suggestion, in reference to 28 U.S.C. § 1367(a), which authorizes district courts to exercise supplemental jurisdiction in certain instances to the extent allowed by the Constitution: "Several commentators have suggested . . . that the extent of constitutional jurisdiction is broader than the *Gibbs* test, as Article III may not require a particular factual relationship between joined claims or counterclaims and federal claims that provide the basis for jurisdiction." *Id.* at 212 n.5; *see also Channell v. Citicorp Nat'l Servs., Inc.*, 89 F.3d 379, 385-86 (7th Cir. 1996); McLaughlin, 24 ARIZ. STATE L.J. at 910-13.  *But see Burgess v. Omar*, 345 F. Supp. 2d 369, 371 n.1 (S.D.N.Y. 2004).  Indeed, *Garcia* held that the *Gibbs* test did not apply in determining the existence of ancillary jurisdiction because the district court's authority was based on *Kokkonen*'s second prong.  443 F.3d at 210 n.3.

[93]

     358 F.3d 205.

[94]

     *Id.* at 214.  *See also Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995) ("A loose factual connection between the [state and federal] claims is generally sufficient."); *In re Sept. 11th Liab. Ins. Coverage Cases*, 333 F. Supp. 2d 111, 116 (S.D.N.Y. 2004) (same);

Even more telling for purposes of this case, this Circuit held recently that the *Gibbs* test was satisfied where the ancillary claim arose as a result of a previous federal court litigation. In *Achtman v. Kirby, McInerney & Squire, LLP*,[95] the defendant law firm had represented a plaintiff class in a previous federal securities action. Following the conclusion of the class action, the plaintiffs, members of the class in the prior case, sued the former lead counsel for malpractice. Notwithstanding the lack of any independent basis of subject matter jurisdiction over the malpractice case, this Circuit upheld the district court's exercise of jurisdiction, reasoning that the fact that the malpractice action arose as a result of the previous securities class action was sufficient to warrant the exercise of ancillary jurisdiction.[96]

The significance of *Achtman* lies in the fact that the securities fraud suit and the malpractice action certainly did not arise out of common facts in the sense, for example, that claims for securities fraud and common law fraud often do. The factual overlap was far more limited. Thus, in concluding that the malpractice claim against the class action lawyers arose out of a nucleus of operative fact common to the already concluded securities fraud claim, i.e., in holding that *Gibbs* was satisfied, the Circuit necessarily relied heavily upon the logical relationship between the

---

*Zaloom v. Trupin*, No. 86 Civ. 465, 1991 WL 270458, at *3 (KMW) (S.D.N.Y. Dec. 10, 1991) (same); *Matthews v. Mem'l Sloan-Kettering Cancer Ctr.*, No. 83 Civ. 6065, 1985 WL 151, at *1 (SWK) (S.D.N.Y. Mar. 19, 1985) (same). *But see Mason v. Richmond Motor Co.*, 625 F. Supp. 883, 886-87 (E.D. Va. 1986) (rejecting "loose factual connection" standard), *aff'd*, 825 F.2d 407 (4th Cir. 1987) (unpublished table decision).

[95] 464 F.3d 328.

[96] *Id.* at 336. Holding that the district court had supplemental jurisdiction pursuant to 28 U.S.C. § 1367, the Circuit declined to address whether ancillary jurisdiction, in the sense of a court's "inherent power," "would also exist over these claims." *Id.* at 333 n.2. This Response refers to the claim as ancillary in light of the fact that it was brought against a party that was not a defendant in, and after completion of, the class action.

securities claim and the malpractice claim.

### b.    Adding a party

This Circuit has held, in a series of opinions by Judge Friendly, that the fact that a supplemental claim brings a new party into a suit does not alter the constitutional analysis.[97] The fact that these were civil cases is immaterial, as Article III does not distinguish between civil and criminal

---

[97]    *Almenares v. Wyman*, 453 F.2d 1075, 1084 n.12 (2d Cir. 1971), *cert. denied*, 405 U.S. 944 (1972); *Leather's Best, Inc. v. S.S. Mormaclynx*, 451 F.2d 800, 809-10 (2d Cir. 1971); *Astor-Honor, Inc. v. Grosset & Dunlap, Inc.*, 441 F.2d 627, 629-30 (2d Cir. 1971) (dictum); *accord,* McLaughlin, 24 ARIZ. ST. L.J. at 899-904.  The Supreme Court has not decided this issue, but has "assume[d], without deciding, that the constitutional criterion for pendent-party jurisdiction is analogous to the constitutional criterion for pendent-claim jurisdiction." *Finley v. United States*, 490 U.S. 545, 549 (1989); *see also Moor v. County of Alameda*, 411 U.S. 693, 715 (1973).

This conclusion is supported by cases finding ancillary jurisdiction where additional parties are joined pursuant to the flexible joinder provisions of the Federal Rules of Civil Procedure.  These cases do not apply a different constitutional test even though new parties to the case are added.  *See Dery v. Wyer*, 265 F.2d 804, 807 (2d Cir. 1959) ("It is the theory of [Rule 14] that the defendant's right against the third party is merely the outgrowth of the same aggregate or core of facts which is determinative of the plaintiff's claim.  In this view, the court which has jurisdiction over the aggregate of facts which constitutes the plaintiff's claim needs no additional ground of jurisdiction to determine the third-party claim which comprises the same core of facts."); *United Artists Corp. v. Masterpiece Prods.*, 221 F.2d 213, 217 (2d Cir. 1955)  ("[I]n the case of a counterclaim which is compulsory, ancillary jurisdiction should extend to additional parties, regardless of an ensuing lack of diversity."); *accord Sweeney v. Athens Reg'l Med. Ctr.*, 917 F.2d 1560, 1565 (11th Cir. 1990) ("Ancillary jurisdiction allows the court to hear claims that bear a logical relationship to the aggregate core of operative facts which constitutes the main claim over which the court has an independent basis of federal jurisdiction.  Such a nexus would allow claims of intervenors of right.") (quotations and citation omitted); *Bauer v. Uniroyal Tire Co.*, 630 F.2d 1287, 1290 n.2 (8th Cir. 1980) ("[A] federal court has ancillary jurisdiction over compulsory counterclaims that seek to bring in additional parties."); *H. L. Peterson Co. v. Applewhite*, 383 F.2d 430, 433 (5th Cir. 1967) ("[U]nder Rule 14, the court has ancillary jurisdiction over a third party defendant even absent diversity of citizenship. . . . It is settled that where . . . the counterclaim is compulsory . . . no independent jurisdictional ground need exist where an additional party . . . is brought into the case by the counterclaimant.").

cases.[98]

c.     *Application to this case*

To begin with, describing the involvement of KPMG in this case as the addition of a party would understate seriously KPMG's relationship to this case.  KPMG is an unindicted co-conspirator in this case[99] and, until January 3, 2007, was a defendant on a felony information pending in the district court that charged substantially the same conspiracy as is charged in Count One of the indictment in this case.[100]  The charge against KPMG was pending in a different case only because the government elected to charge KPMG in a separate accusatory instrument with the same crime with which the KPMG Defendants are charged.  But this is icing on the cake.  The advancement claim against KPMG would be part of the same case or controversy as this case even if KPMG neither had been charged nor named as a co-conspirator.

_____

[98]

Nor does the question whether a non-party seeks entry into a case or is brought in against its will impact the question of constitutional power.  "[N]o action of the parties can confer subject-matter jurisdiction upon a federal court.  Thus, the consent of the parties is irrelevant." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

[99]

Docket item 57 ¶¶ 1, 72-78.

[100]

*Compare id.* ¶¶ 72-78, *with United States v. KPMG LLP*, No. 05 Crim. 0903 (LAP), docket item 3 ¶¶ 37-42.

Although the information charging KPMG now has been dismissed, "[t]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989) (diversity jurisdiction) (citing *Smith v. Sperling*, 354 U.S. 91, 93 & n. 1 (1957)); *see also FDIC v. Four Star Holding Co.*, 178 F.3d 97, 100-01 (2d Cir. 1999) (subject matter jurisdiction over mortgage foreclosure action, which existed under 12 U.S.C. § 1819 because FDIC was a party, was not lost when FDIC transferred interest in the subject property because jurisdiction that exists at time of commencement is not divested by subsequent events).

The District Court here held that the government violated the defendants' constitutional rights by interfering with KPMG's payment of legal fees in the criminal case. Resolution of the question whether KPMG legally is obliged to advance those fees is important to determination of the remedy. Moreover, in finding that the government had acted improperly, the District Court necessarily considered KPMG's past practice with respect to such payments, a practice that is central to the KPMG Defendants' claim that the prior payments were made pursuant to a contract implied in fact. Thus, there is a logical relationship between the government's actions with respect to KPMG's payment of legal fees that are at issue in the criminal case and the question whether KPMG legally is obligated to pay. Indeed, there is factual overlap between the claims at least to the extent that KPMG's past practices are material to both. In consequence, *Gibbs*' definition of "case or controversy" is satisfied here.

### 2.    *Statutory Authority*

The existence of a case or controversy is a necessary but not sufficient condition for the existence of supplemental jurisdiction. Lower federal courts cannot exercise Article III judicial power without a congressional grant conferring jurisdiction.[101]

The Supreme Court has placed special emphasis on the need for a statutory grant in cases in which a supplemental claim adds a new party to a case. It has directed federal courts to ensure "that Congress in the statutes conferring jurisdiction has not expressly or by implication

---

[101]    *See Owen Equip.*, 437 U.S. at 372 ("Constitutional power is merely the first hurdle that must be overcome in determining that a federal court has jurisdiction over a particular controversy. For the jurisdiction of the federal courts is limited not only by the provisions of Art. III of the Constitution, but also by Acts of Congress.").

negated [the existence of pendent party jurisdiction]."[102]   In *Finley v. United States*,[103] the Court underscored this, holding that "with respect to the addition of parties, as opposed to the addition of only claims, we will not assume that the full constitutional power has been congressionally authorized, and will not read jurisdictional statutes broadly."[104]

In civil cases, this is seldom an issue in light of 28 U.S.C. § 1367, which was enacted in the wake of *Finley* and provides explicit authority for the addition of parties in many instances. It remains, however, to consider the impact, if any, of *Finley* on ancillary jurisdiction in criminal cases.

As an initial matter, it is doubtful that *Finley* applies to ancillary jurisdiction at all. It recognized that "a federal court may assert authority over . . . a claim 'ancillary' to jurisdiction otherwise properly vested" "in a narrow class of cases" in which "the added claims involve added parties over whom no independent basis of jurisdiction exists."[105] It distinguished one case on the ground that the distinguished case "explicitly rested upon 'ancillary' jurisdiction."[106]   Moreover, it relied heavily on *Owen Equipment*, which distinguished ancillary jurisdiction as well: "It is not

---

[102]

*Aldinger v. Howard*, 427 U.S. 1, 18 (1976).

"Pendent party jurisdiction" may be used to refer to any supplemental claim that brings an additional party into the case.

[103]

490 U.S. 545.

[104]

*Id.* at 549.

[105]

*Finley*, 490 U.S. at 551.

[106]

*Id.* at 551 n.4 (noting that, without the exercise of ancillary jurisdiction in the distinguished case, "[a]ny decree on the counterclaim would presumably have been worthless").

38

unreasonable to assume that, in generally requiring complete diversity, Congress did not intend to confine the jurisdiction of federal courts so inflexibly that they are unable to protect legal rights or effectively to resolve an entire, logically entwined lawsuit.  Those practical needs are the basis of the doctrine of ancillary jurisdiction."[107]

The conclusion that *Finley* did not affect ancillary jurisdiction is supported by the fact that courts interpreting *Finley* before the enactment or applicability of Section 1367 held that *Finley* did not preclude the addition of parties under longstanding third-party practices such as interpleader and impleader.  This Circuit, noting that "[p]rior to the *Finley* decision, it was well-settled that when diversity between parties is lacking, a court could assert ancillary jurisdiction over an additional party joined to a compulsory counterclaim pursuant to Rule 13(h)," held that "*Finley* does not invalidate this widely accepted practice."[108]  Similarly, this Circuit recently rejected the argument that *Finley* "precludes the exercise of ancillary jurisdiction over the third-party impleader action for

---

[107]    437 U.S. at 377 (noting further that "neither the convenience of litigants nor considerations of judicial economy can suffice to justify extension of the doctrine of ancillary jurisdiction to a plaintiff's cause of action against a citizen of the same State in a diversity case"); *see also Peacock v. Thomas*, 516 U.S. 349, 356 (1996) (noting, without mentioning *Finley*, that "we have approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments"); *Grimes*, 565 F.2d at 844 (holding that *Aldinger*, 427 U.S. 1, did not control because "jurisdiction over the distribution of the settlement funds can be sustained as ancillary to jurisdiction over the claim itself").  *But see Lewis v. Windsor Door Co.*, 926 F.2d 729, 731 (8th Cir. 1991) ("Although *Finley* concerned pendent-party jurisdiction, its language and references apply as well to ancillary jurisdiction.") (interpreting FTCA, the same statute at issue in *Finley*).

[108]    *Associated Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121, 1125 (2d Cir. 1990) (noting generally that "[a]lthough *Finley* circumscribed pendent party jurisdiction, we believe that the Court's language in *Finley* did not signal a retreat from established third-party practices").

indemnification."[109]  Thus, while *Finley* sounded a cautionary note with respect to the addition of

parties, it did not preclude their addition pursuant to ancillary jurisdiction, at least in the absence of

a statute foreclosing its existence.

Even assuming that *Finley* applies in the instant case, the statutory grant of

jurisdiction here does not bar ancillary jurisdiction over additional parties.  Section 3231 of the

Criminal Code[110] provides that "[t]he district courts of the United States shall have original

jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United

States."  In contrast to the statute at issue in *Finley*, which expressly authorized only claims "against

the United States," Section 3231 does not exclude any parties from the jurisdictional grant.[111]

Post-*Finley*, pre-Section 1367 cases interpreting other jurisdictional statutes support

the conclusion that Section 3231 does not preclude the addition of parties to an ancillary matter in

---

[109]

> *Bank of India*, 239 F.3d at 437 (§ 1367 did not apply because the litigation began before its effective date); *see also Washington Hosp. Ctr. Nat'l Rehab. Hosp. v. Collier*, 947 F.2d 1498, 1501-02 (D.C. Cir. 1991) (*Finley* did not preclude ancillary jurisdiction over third-party claims); *King Fisher Marine Serv., Inc. v. 21st Phoenix Corp.*, 893 F.2d 1155, 1161 (10th Cir.), *cert. denied*, 496 U.S. 912 (1990) ("[A] court has ancillary jurisdiction of a defendant's proper rule 14(a) claim against a third-party defendant without regard to whether there is an independent basis of jurisdiction so long as the court has jurisdiction of the main claim between the original parties.").

[110]

> 18 U.S.C. § 3231.

[111]

> The Supreme Court recently confirmed that Congress need not speak explicitly to authorize supplemental jurisdiction over additional parties.  *Exxon Mobil*, 545 U.S. at ___, 125 S.Ct. at 2620 ("We must not give jurisdictional statutes a more expansive interpretation than their text warrants [citing *Finley*]; but it is just as important not to adopt an artificial construction that is narrower than what the text provides.  No sound canon of interpretation requires Congress to speak with extraordinary clarity in order to modify the rules of federal jurisdiction within appropriate constitutional bounds.") (holding that § 1367 authorizes supplemental jurisdiction over additional plaintiffs in a diversity action who fail to allege the requisite amount in controversy).

criminal cases. In *Roco Carriers, Ltd. v. M/V Nurnberg Express*,[112] for example, this Circuit held that the admiralty jurisdiction statute, another general grant of jurisdiction, did not preclude the addition of new parties to a supplemental claim. It distinguished *Finley* because, *inter alia*, the language of the admiralty jurisdiction statute is broad, conferring jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction," whereas the statute in question in *Finley* granted jurisdiction only with respect to "claims against the United States."[113] Other circuits, interpreting this and other jurisdictional statutes, similarly have held that jurisdiction over supplemental claims against new parties exists in civil cases brought under broad jurisdictional statutes despite the lack of an express grant of power to join additional parties.[114]

---

[112]

899 F.2d 1292 (2d Cir. 1990).

[113]

*Id.* at 1296 (noting also that the statute at issue in *Finley* waived sovereign immunity, that such statutes are interpreted narrowly, and that admiralty jurisdiction is founded on the historical recognition of the importance of efficient and uniform resolution of maritime claims).

At least twice, however, this Circuit has made statements indicating that no pendent-party jurisdiction survived *Finley*. *See Greenblatt v. Delta Plumbing & Heating Corp.*, 68 F.3d 561, 576 (2d Cir. 1995) ("Prior to the enactment of § 1367, pendent-party jurisdiction was not authorized." (citing *Finley*)); *Staffer v. Bouchard Transp. Co.*, 878 F.2d 638, 643 n.5 (2d Cir. 1989) ("[P]endent-party jurisdiction apparently is no longer a viable concept." (citing *Finley*)) (dictum).

[114]

*See Ponce Fed. Bank v. Vessel "Lady Abby"*, 980 F.2d 56, 57-59 (1st Cir. 1992) (Breyer, J.) (pendent-party jurisdiction under admiralty statute); *Loeber v. Bay Tankers, Inc.*, 924 F.2d 1340, 1345-47 (5th Cir.), *cert. denied*, 502 U.S. 819 (1991) (same); *Teledyne, Inc. v. Kone Corp.*, 892 F.2d 1404, 1408-10 (9th Cir. 1990) (pendent-party jurisdiction under Foreign Sovereign Immunities Act because statute extends jurisdiction to "any civil action" and was enacted after *Gibbs*, so Congress was aware of pendent-party jurisdiction); *Rodriguez v. Comas*, 888 F.2d 899, 906 (1st Cir. 1989) (pendent-party jurisdiction for § 1983 claims because statute, providing jurisdiction over "any civil action authorized by law to be commenced by any person" is "open-ended – applying to any person and over any civil action"). *But see Sarmiento v. Texas Bd. of Veterinary Med. Exam'rs*, 939 F.2d 1242, 1246-48 (5th Cir. 1991) (no pendent-party jurisdiction under § 1983 because *Finley*

Section 3231, like all statutes conferring jurisdiction on the federal courts, should be read to confer the authority needed to give effect to the statutory grant – "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees."[115]  This authority sometimes – though rarely – will justify the exercise of ancillary jurisdiction over non-parties.[116]  "[A]ll courts, absent some specific statutory denial of power, possess ancillary powers to effectuate their jurisdiction."[117]

This view is consistent with the fact that federal courts long have exercised ancillary jurisdiction in criminal cases over claims for the return of seized property and to expunge criminal records,[118] even where this has required the addition of non-parties.  For example, the District of

---

requires that Congress have "expressly spoken to allow it"); *Ortega v. C.J. Schramm*, 922 F.2d 684, 688-93 (11th Cir. 1991) (no pendent-party jurisdiction under § 1983 despite statutory grant over "any civil action" because jurisdictional statute states actions must be "authorized by law" and § 1983 "authorizes only actions against persons" who subjected plaintiff to a deprivation of federal rights); *Alumax Mill Prods., Inc. v. Cong. Fin. Corp.*, 912 F.2d 996, 1007 (8th Cir. 1990) (no pendent-party jurisdiction under RICO where statute provides for jurisdiction "to prevent and restrain violations of [relevant provisions]" and that persons injured by statutory violations "may sue" in federal court).

[115]

*Kokkonen*, 511 U.S. at 380.

[116]

*Garcia* expressly relied on this authority. *See* 443 F.3d at 208 ("[W]e hold that resolving a fee dispute after an attorney withdraws following a *Curcio* hearing is within a district court's ancillary powers, as it relates to the court's ability to 'function successfully.'").  So too did a long line of civil cases exercising ancillary jurisdiction over attorney fee disputes. The fact that the underlying matters in these cases were civil is immaterial, as *Garcia* noted properly – a court's ability to manage its proceedings, and the necessity for doing so, is no different if a case is criminal or civil.  *See id.* at 209 ("We reject appellant's attempts to distinguish these [attorney fee] cases on the ground that the present dispute arises from a criminal matter.").

[117]

*Morrow v. District of Columbia*, 417 F.2d 728, 737 (D.C. Cir. 1969).

[118]

*See Garcia*, 443 F.3d at 207 (citing cases).

Columbia Circuit held that ancillary jurisdiction existed over a non-party's claim relating to property seized by the government in a criminal prosecution.  In doing so, it noted that, while prior cases involving seized property "all involved motions by defendants in the criminal proceedings rather than motions by third parties, none has turned on that circumstance, nor have we given it analytical significance."[119]   Other cases have upheld the exercise of jurisdiction over claims to seized property[120] and have acknowledged district courts' jurisdiction over claims of privilege,[121] in each case by non-parties.

The ancillary proceeding here had its genesis in and is intimately related to the criminal case.  Hence, both the Constitution and the jurisdictional statute authorize the exercise of ancillary jurisdiction in this case.  This does not end the analysis, however, because the existence of power does not necessarily warrant its exercise.

3.      *The Exercise of Discretion*

Ancillary jurisdiction rarely should be used in criminal cases, especially to resolve disputes involving non-parties, even if for no reason other than the risk of delaying and complicating

---

[119]

*United States v. Hubbard*, 650 F.2d 293, 307 & n.56 (D.C. Cir. 1981).

[120]

*United States v. Frank*, 763 F.2d 551 (3d Cir. 1985) (reversing district court's finding of no jurisdiction); *United States v. Spilotro*, 680 F.2d 612, 616 (9th Cir. 1982) (declining to review non-party's petition for mandamus when non-party could have moved before the district court under the district court's ancillary jurisdiction).

[121]

*United States v. RMI Co.*, 599 F.2d 1183, 1186 (3d Cir. 1979) ("[I]t is settled law that persons affected by the disclosure of allegedly privileged materials may intervene in pending criminal proceedings and seek protective orders."); *see also United States v. Crawford Enters., Inc.*, 735 F.2d 174, 176 (5th Cir. 1984) (same).

the determination of criminal charges.  On the other hand, there are exceptional cases in which such an exercise of jurisdiction is within the discretion of the trial court.  This, the District Court submits, is such a case.  Moreover, the circumstances here are such that this exercise of discretion may be upheld without permitting use of ancillary jurisdiction to bring non-parties into criminal cases except in the rarest of situations.

### a.    Factors pertinent to the exercise of discretion

As an initial matter, the factors relevant to whether the exercise of supplemental jurisdiction in a civil case is proper – e.g., whether resolution of an added claim would require "[n]eedless decisions of state law,"[122] whether the state law and other issues unique to the added claim would "substantially predominate,"[123] whether the district court already is familiar with the controversy at the heart of the additional claim,[124] and the like – bear consideration in criminal cases as well.  But the exercise of ancillary jurisdiction in criminal cases, particularly where it would add an additional party, gives rise to concerns that are not present in civil cases – interference with the public interest in the prompt resolution of criminal charges and, perhaps in some cases, the imposition of demands on federal prosecutors as a result of their involvement in collateral disputes

---

[122]

*Gibbs*, 383 U.S. at 726.

[123]

*Id.* at 726-27.

[124]

*See Achtman*, 464 F.3d at 336 ("[T]he lower court's familiarity with the subject matter of the suit lent support to the exercise of jurisdiction because familiarity . . . would enormously facilitate rapid disposition of a fee dispute, while a great deal of the record would have to be considered anew and relitigated in a state court unfamiliar with the proceedings." (quoting *Cluett, Peabody & Co. v. CPC Acquisition Co.*, 863 F.2d 251, 256 (2d Cir. 1988))) (original alterations omitted).

involving criminal defendants. In consequence, there must be compelling justification for the exercise of ancillary jurisdiction in a criminal case, and especially so where that exercise involves the addition of a party. That justification must be found in the closeness of the relationship between the criminal case and the genesis of the ancillary dispute and, *Kokkonen* suggests, in the need for resolution of the ancillary dispute to enable the just and fair disposition of the criminal case. All of these factors are present in this case.

First, the relationship between the criminal case and the genesis of the fee advancement claim could not be closer. The government violated the KPMG Defendants' Fifth and Sixth Amendment rights in the criminal case by pressuring KPMG to cut off payment of defense costs upon indictment. Hence, the fee advancement issue arises directly out of the government's conduct in relation to the criminal case. Furthermore, when the ancillary proceeding began, KPMG was a defendant in a pending criminal case in this district that charged it with the same conspiracy alleged in Count One in this case, and it is named as an unindicted co-conspirator here. It was a defendant in a separate case only because the government, for reasons of its own, elected to charge it in a separate accusatory instrument.

Second, this Circuit has made it clear that a district court should not consider dismissal of an indictment for government misconduct "unless it is otherwise 'impossible to restore a criminal defendant to the position that he would have occupied' but for the [government's] misconduct."[125] Hence, there is a compelling need to decide the advancement dispute in order to

---

[125]     *United States v. Artuso*, 618 F.2d 192, 196-97 (2d Cir.), *cert. denied*, 449 U.S. 879 (1980); *cf. United States v. Morrison*, 449 U.S. 361, 365, 367 (1981) (noting "[o]ur approach has thus been to identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial" and characterizing dismissal as "drastic relief"); *United States v. Carmichael*, 216 F.3d 224,

determine whether it is possible to remedy the constitutional violation by means short of dismissal. Put another way, resolution of the advancement claim is of singular importance to whether the District Court successfully can perform its function here.  It bears directly on whether the criminal charges can be decided on the merits without (1) the KPMG Defendants being handicapped by a lack of resources directly traceable to government misconduct or (2) the government being handicapped by dismissal or other sanctions for that misconduct that could prevent or prejudice its ability to obtain a conviction if a conviction otherwise would be appropriate.

Finally, circumstances that easily would justify the exercise of ancillary jurisdiction were this a civil case abound.  As demonstrated above, the issue at the heart of the fee advancement dispute – whether KPMG's uniform practice for more than thirty years of paying its employees' legal fees gave rise to a contract implied in fact – substantially overlaps with issues already considered by the District Court in the handling of the KPMG Defendants' claim that the government violated their constitutional rights by pressuring KPMG to cut off payment of their defense costs.  Determination of the fee advancement claim against KPMG would not substantially predominate over the resolution of the criminal charges.  To the contrary, it would be a very modest bit of business in comparison to the broad, complex, and time consuming issues presented by the criminal case.  The discovery period was only days from completion when the Circuit stayed proceedings.  The parties' estimates of the length of the trial of the advancement claims are in the range of six days to two weeks,[126] a period that is insignificant when compared to the overall size of this action.

227 (2d Cir. 2000) (remedy for constitutional violation must be tailored to place defendant in position he would have occupied but for constitutional error).

[126]

Joint status report (docket item 775) at 10.

b.      *Exercise of jurisdiction here would not "open the floodgates"*

Permitting the exercise of ancillary jurisdiction where (1) the ancillary dispute arises directly out of events that occurred in the criminal case, (2) its resolution is important to the fair and proper resolution of the criminal charges on the merits, and (3) determination of the ancillary dispute would not substantially predominate over or otherwise materially interfere with the determination of the criminal charges would not open the floodgates to the frequent addition of parties or collateral disputes to criminal cases.[127]   It certainly would not permit "criminal defendants routinely [to] hale into federal court their employers, former employers and insurers on the theory that these non-parties ought to advance the defendants' legal fees," as KPMG claims.[128]   This is especially so where, as here, the "non-party" is an unindicted co-conspirator in the indictment and, when the ancillary proceeding began, was a defendant on an identical conspiracy charge pending in the same district court.

**Conclusion**

The District Court appreciates the Court of Appeals' invitation to express its views. The proceedings before it would be facilitated by prompt review of the merits of the challenged order.   The District Court respectfully submits that it would be inappropriate to reach the merits under traditional or supervisory mandamus standards.   It submits as well that the Court of Appeals

---

[127]      Application of these criteria would have produced the same result in *Garcia.  United States v. Weissman*, No. 94 Crim. 760, 1997 WL 334966 (CSH) (S.D.N.Y. June 16, 1997), on the other hand, would have come out differently, as the ancillary dispute there did not arise out of events that occurred in the criminal case.

[128]      KPMG Br. 24.

47

is better situated to determine, in light of the considerations set forth above, whether and to what extent the merits appropriately are reached by advisory mandamus.

Accordingly, the District Court submits that the Court of Appeals should treat KPMG's appeal as a motion for leave to file a petition for a writ of mandamus on the papers previously filed. That motion should be granted. The petition should be denied, either on the ground that (1) this is not an appropriate case in which to use mandamus to review the merits of the challenged order or, (2) on the merits. The jurisdictional ruling was within the District Court's power and was a permissible exercise of its discretion. The arbitration ruling was correct.

Dated:  January 8, 2007

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)