UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,


       -against-                           S1 05 Crim. 0888 (LAK)


JEFFREY STEIN, et al.,

               Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## MEMORANDUM OPINION


      Appearances:


              John M. Hillebrecht
              Kevin M. Downing
              Stanley J. Okula, Jr.
              Rita M. Glavin
              Margaret Garnett
              Assistant United States Attorneys
              MICHAEL J. GARCIA
              UNITED STATES ATTORNEY

              David Spears
              SPEARS & IMES LLP
              Craig D. Margolis
              VINSON & ELKINS  LLP
              *Attorneys for Defendant Jeffrey Stein*

              Steven M. Bauer
              Karli E. Sager
              LATHAM & WATKINS, LLP
              *Attorneys for Defendant John Larson*

              David C. Scheper
              OVERLAND BORENSTEIN SCHEPER
              & KIM LLP
              *Attorneys for Defendant Robert Pfaff*

LEWIS A. KAPLAN, *District Judge.*

This matter is before the Court on a motion by defendants[1] for disclosure of documents. I assume familiarity with the prior opinions in this case.

I

A.    *The Indictment*

The superseding indictment contains forty-six counts. Count One (the "Conspiracy Count") charges all defendants with conspiracy to defraud the IRS by designing, marketing, and implementing fraudulent tax shelters for wealthy individual clients and deliberately concealing those shelters from the IRS. Defendants' scheme allegedly involved at least four separate tax shelter vehicles, one of which was called BLIPS, designed to generate phony tax losses through a series of sham transactions. Defendants allegedly sought to protect their clients from potential IRS penalties by paying co-defendant Raymond Ruble, a New York tax attorney, to issue opinion letters falsely representing that the tax shelters were likely to survive IRS review. Count One charges also that the defendants conspired to conceal the fraudulent tax shelters from the IRS by, among other things, preparing tax returns that concealed the phony tax losses, obstructing IRS and Senate investigations into the shelters, and failing to register the shelters with the IRS.[2]

Counts Two through Forty (the "Tax Evasion Counts") charge all defendants with tax evasion based on the tax returns of approximately twenty-five different tax shelter clients and

---

[1]    The moving papers are signed only by counsel for defendants Stein, Larson, and Pfaff, although throughout the motion they assume it to be made on behalf of all defendants. For ease of exposition, the Court will treat the motion as if made by all defendants.

[2]    Ind. ¶¶ 1-78.

2

defendants.[3]

Counts Forty-one through Forty-four charge defendant Ruble with evading taxes on income related to the alleged scheme, including payments he received from nominee entities controlled by John Larson and Robert Pfaff in exchange for fraudulent opinion letters included in Count One.  Two of these counts name defendants Larson and Pfaff as well.[4]

Finally, Counts Forty-five and Forty-six charge certain defendants with obstructing the IRS investigation of the tax shelters.[5]

B.      *The Genesis of the Present Controversy – the May 17, 2004 E-mail*

As the record reflects, the defense has made several applications for disclosure of materials in the hands of the IRS, all or substantially all of which have been denied.  At some point, however, the government produced to defendants, inadvertently it says, a database that contained an e-mail dated May 17, 2004 that underlies the present request for discovery.

The e-mail, written by an IRS attorney, summarized for his superiors a meeting among the prosecution team in this case and their supervisor, Assistant United States Attorney Shirah Neiman, and a host of IRS officials.[6]  It stated that the purposes of the meeting included "discuss[ing] any hazards that the prosecution team may face in addressing the tax shelter registration

---

[3]     *Id.* ¶¶ 79-80.

[4]     *Id.* ¶¶ 81-83.

[5]     *Id.* ¶¶ 84-85.

[6]     Sager Decl. Ex. A.

requirements."  It related also that the IRS representatives had given "Shirah [Neiman] a general

power point presentation on the tax shelter <u>registration</u> requirements" and supplemented that

presentation with a "draft TAM [Technical Advice Memorandum] on <u>registration</u> of BLIPS."

According to the e-mail, the IRS representatives explained to the prosecutors "that the <u>registration</u>

requirements are still unclear and that we [the IRS representatives] had been advised by Passthroughs

that any formal advice on the <u>registration</u> of BLIPS might be favorable to KPMG."  It reported also

that the IRS representatives "inquired about whether there could be a relaxation of the Halt on certain

types of communications" and that Ms. Neiman "stated that she would like to address any concerns

that [they] have in a small meeting format, but that any relaxations was [*sic*] unlikely with any entity

involved as a co-promoter of KPMG [and other entities]."


C.    *The Motion*

          The crux of defendants' position is their contention that the e-mail shows, and that

further discovery will confirm, that the IRS itself believed that it was unclear whether registration

of BLIPS was required by law.  They further argue that the e-mail suggests that the prosecution team

stopped the IRS from preparing the TAM because it feared that a TAM would conclude that

registration was not required and thus undermine the prosecution's case.  Accordingly, they argue,

the draft TAM and related documents are *Brady* material that will demonstrate the lack of clarity of

the legal duty to register and the reasonableness of defendants' position that registration was not

required.  They seek an order requiring disclosure of (1) the draft TAM and the PowerPoint

presentation presented by the IRS at the meeting, (2) all documents relating to the IRS Office of

Chief Counsel's decision to begin drafting a TAM relating to BLIPS and the decision to stop that

4

process prior to completion, which defendants argue must have been at the request of the United States Attorney's Office, (3) all documents relating to the May 17, 2004 meeting itself, and (4) documents in possession of the prosecution team that were received from or distributed to IRS personnel other than Criminal Investigation Division ("CID") agents on the prosecution team.

While the government disputes defendants' position, it has produced the so-called draft TAM, which actually is a misnomer,[7] as well as the PowerPoint presentation made at the meeting. What remains, therefore, is defendants' requests for documents relating to (1) the decision to begin and to stop drafting a TAM, (2) the May 17, 2004 meeting itself, and (3) all documents that the prosecutors have received from or distributed to the IRS (apart from IRS members of the prosecution team).

II

I begin with defendants' *Brady* argument. As I made clear in an earlier decision in this case, in this Circuit, there can be no violation of the government's *Brady* obligation unless the defendant has been prejudiced by the government's failure to disclose. Claims under *Brady* therefore may be assessed only after a conviction.[8] Hence, *Brady* lends no support to the motion. Rather, the question is whether I should exercise my discretion to order the requested disclosure "as a matter of

---

[7]     *See* Barral Decl. ¶ 3 ("There was never, to my knowledge, a document correctly described as a 'draft TAM.' [In the May 17, 2004 email] I was referring instead to a draft analysis of the BLIPS transaction prepared by [an IRS employee]. That analysis was prepared with the idea of submitting a final version as part of the TAM process.").

[8]     *United States v. Stein*, 424 F. Supp. 2d 720, 726 (S.D.N.Y. 2006).

5

sound case management."[9]

The parties have devoted a great deal of attention to the relevance and importance at trial of evidence, if indeed evidence exists, that some persons within the IRS believed that BLIPS did not have to be registered as a tax shelter. Defendants imply that the BLIPS registration issue is at the heart of this prosecution. Moreover, they contend that evidence that some IRS personnel believed that registration was unnecessary would confirm that the matter was unclear and, in consequence, that they could not willfully have failed to register.

To begin with, movants exaggerate the importance of this issue. While the indictment does allege that the defendants tried to conceal the true facts from the IRS and a Senate investigating committee by a number of means, failure to register shelters was only one of them and BLIPS was only one of several shelters that allegedly were not registered. Thus, defendants have blown the question of whether they were obliged to register BLIPS out of proportion to its true significance in this case.

Defendants' legal position also is questionable, even assuming that there were informed persons in the IRS who held the belief that defendants suspect.[10] I assume for purposes of discussion, but do not decide, that the government will have to prove that the failure to register BLIPS and other shelters was willful – in other words, that, as defendants put it, "the law objectively imposed a 'legal duty' to register" and defendants knew that registration was required.[11] The

---

[9]

*Id.* (quoting *United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001)).

[10]

The evidence before me suggests that this is unlikely although I do not now resolve that issue.

[11]

Defs. Mem. 19.

question whether there was a legal duty to register, given particular facts, would seem to be a question of law for the Court and thus a matter on which it would be inappropriate to take evidence before a jury. The question of what the defendants subjectively believed presumably would be one of fact on which the views of others are pertinent principally and perhaps only to the extent that those views were known to and relied upon by the defendants.[12]

Undaunted, defendants argue that any views of IRS personnel favorable to them would be relevant and admissible on the basis of, *inter alia*, *James v. United States*,[13] *United States v. Critzer*,[14] and *United States v. Garber*.[15]

*James* was an unusual case. The Supreme Court had held in 1946 in *Commissioner v. Wilcox*[16] that embezzled funds did not constitute taxable income. In 1952, however, the Court held

---

[12]

  I recognize that "relevant evidence" is defined as "evidence having *any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401 (emphasis added). Hence, if a defendant claimed at trial that he or she believed that registration of BLIPS was not required, proof that some IRS employee who had the same information also thought that registration was unnecessary might be relevant in the sense that the existence of such a belief on the part of the IRS employee would bear on the reasonableness of the defendant's belief and thus make it more probable that the defendant's profession of good faith was credible. But this seems a very remote possibility and one that, at present, is entirely theoretical. Moreover, even if such a person could be found, and even if the predicate of identity of information could be established, the likelihood of exclusion of the evidence under Rule 403 would be great because such evidence would entail a substantial risk of confusing the issues, misleading the jury, and wasting a good deal of time.

[13]

  366 U.S. 213 (1961).

[14]

  498 F.2d 1160 (4th Cir. 1974).

[15]

  607 F.2d 92 (5th Cir. 1979) (en banc).

[16]

  327 U.S. 404 (1946).

7

in *Rutkin v. United States*[17] that extorted money does constitute taxable income and, in so doing, limited *Wilcox* to its facts.  James was convicted of tax evasion by failing to report embezzled funds as income on his 1951 through 1954 returns.  A plurality of the Supreme Court overturned the conviction on the ground that, although the rationale of *Rutkin* vitiated *Wilcox*, "the element of willfulness could not be proven . . . so long as the statute contained the gloss placed upon it by *Wilcox* at the time the alleged crime was committed."[18]

This case is quite different.  There were not conflicting Supreme Court decisions on whether registration of BLIPS or any like shelter was necessary.  Nor, given the Supreme Court's cursory discussion of willfulness, must *James* be read as going nearly as far as defendants would take it.

*Critzer* and *Garber* are of somewhat more aid to the defendants.  In *Critzer*, the Fourth Circuit reversed a tax evasion conviction where the taxpayer, a Native American, concededly had been told by the Department of Interior that the income in question was not taxable.  In language unnecessary to the result, it added that, where two co-ordinate branches of the government reach opposite conclusions on the tax issue, "[a]s a matter of law, the requisite intent to evade and defeat income taxes is missing.  The obligation to pay is so problematical that the defendant's actual intent is irrelevant."[19]  *Garber*, in contrast, involved a tax question of first impression.  There, a divided *en banc* court, relying in part on *Critzer*,  reversed a criminal conviction on the ground that the trial

---

[17]

      343 U.S. 130 (1952).

[18]

      366 U.S. at 221-22.

[19]

      498 F.2d at 1162.

8

court had erred in (1) excluding expert testimony to the effect that "a recognized theory of tax law support[ed]" the taxpayer's subjective belief that the income was not taxable, and (2) refusing to charge the jury that a reasonable misconception of the tax law would negate the necessary intent.[20] *Critzer* and *Garber* therefore suggest that sufficient uncertainty concerning a tax question forecloses a finding of willfulness as a matter of law.  In the view of the *Garber* majority, it also renders expert testimony admissible to support a taxpayer's claim of innocent intent.  Nevertheless, *Critzer* and *Garber* do not get defendants where they want to go.

As an initial matter, these cases are not controlling in this Circuit nor particularly persuasive.  The Second Circuit has rejected *Garber*.  Indeed, it has affirmed the exclusion of expert testimony as to the uncertainty of the tax law, relying instead on "prior cases on willfulness [that] consistently require factual evidence of the defendants' state of mind to negate willfulness under any theory."[21]  Indeed, the Fifth Circuit also has stepped back from *Garber*, limiting it to its "bizarre facts" and holding "that, where the uncertainty of the law does not approach legal vagueness, the admissibility of an expert's testimony is governed by relevancy under Fed. R. Evid. 403" and "can be easily outweighed by considerations of potential prejudice and of confusing the jury."[22] Moreover, *Critzer* and *Garber* seem to me, at least at present, to conflate two entirely different questions – whether the criminal statute was unenforceable under the void-for-vagueness doctrine

---

[20]

607 F.2d at 99.

[21]

*United States v. Ingredient Tech. Corp.*, 698 F.2d 88, 97 (2d Cir. 1983); *see also United States v. Harris*, 942 F.2d 1125, 1132 n.6 (7th Cir. 1991); *United States v. Curtis*, 782 F.2d 593, 599-600 (6th Cir. 1986).

[22]

*United States v. Daly*, 756 F.2d 1076, 1083 (5th Cir. 1985) (discussing with approval *United States v. Burton*, 737 F.2d 439 (5th Cir. 1984)).

9

and the factual question whether the defendant acted with the requisite intent.[23]  The former is a question of law for the court while the latter is a factual question to be decided by the trier of fact on the basis of evidence as to what the defendant knew and believed.  But it is unnecessary to make a definitive ruling on this point in order to decide the present motion, as the issue here is only whether I should order disclosure of the documents as a matter of sound case management.

Sound case management involves consideration of many factors.  Certainly one is whether pretrial disclosure is likely materially to reduce the risk of either a mid-trial delay occasioned by the need to pursue important evidence that could have been disclosed earlier or, in the event of a conviction, the need for a new trial to remedy an otherwise avoidable *Brady* violation.  Another is the extent to which pretrial disclosure of otherwise undiscoverable materials would delay and complicate the trial without materially serving the cause of a just outcome.

I am unpersuaded that ordering disclosure of the remaining categories of material sought by the defendants is necessary or appropriate in the interests of sound case management.

To begin with, defendants have made no showing that the request for disclosure of all documents in the possession of the prosecution team that went to or emanated from the IRS (exclusive of CID agents on the prosecution team) is anything more than a proverbial fishing expedition.  The request is not tailored to the issue that ostensibly forms the basis for the motion – the allegation that IRS personnel believed that there was no legal obligation to register BLIPS.  I cannot see how granting that request is likely to do more than satisfy defendants' curiosity.

---

23    *See Garber*, 607 F.2d at 110-12 (Tjoflat, J., dissenting); *see also* Note, *Criminal Liability for Willful Evasion of an Uncertain Tax*, 81 COLUM. L. REV. 1348, 1359-64 (1981); *United States v. Mallas*, 762 F.2d 361, 364 n.4 (4th Cir. 1985) (declining to follow *Garber* to the extent it deviates from the principle that "[t]he uncertainty of a tax law, like all questions of vagueness, is decided by the court as an issue of law").

10

Nor do I see why defendants should be given access to documents relating to the IRS Office of Chief Counsel's decision, if there was one, to begin drafting a TAM relating to BLIPS and any decision to stop that process prior to completion.  The former aspect of the request is directed to proving that some in the IRS regarded the registration issue as uncertain, while the latter goes to whether the USAO told the IRS to stop the process.  It is far from clear that proof of either would be relevant, material, and not excludable under Federal Rule of Evidence 403.  In any case, the information now in defendants' hands is more than adequate to enable them to pursue both questions, to the extent they are so advised, without running an unacceptable risk of the adverse consequences that disclosure as a matter of case management is intended to avoid.

Finally, I see no need for discovery of additional documents relating to the May 17, 2004 meeting.  The defense now has the e-mail summarizing the meeting, the PowerPoint presentation that was made there, and a list of the persons who attended.  To whatever extent anything that occurred at the meeting might be relevant – and no persuasive theory that it is relevant has been offered – defendants are well able to pursue the matter without additional disclosure.

III

For the foregoing reasons, the motion of documents [docket item 838] is denied in all respects.

SO ORDERED.

Dated:           February 9, 2007

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)