UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,


      -against-                                     S1 05 Crim. 0888 (LAK)


JEFFREY STEIN, et al.,

                         Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## MEMORANDUM OPINION


Appearances:


John M. Hillebrecht
Stanley J. Okula, Jr.
Rita Glavin
Margaret Garnett
Kevin M. Downing
Assistant United States Attorneys
MICHAEL J. GARCIA
UNITED STATES ATTORNEY

Michael J. Madigan
Robert H. Hotz, Jr.
Kathleen C. Leicht
AKIN GUMP STRAUSS HAUER & FELD LLP
*Attorneys for Defendant John Lanning and on
behalf of all defendants*

Steven M. Bauer
Karli E. Sager
LATHAM & WATKINS, LLP
*Attorneys for Defendant John Larson*


David C. Scheper
OVERLAND BORENSTEIN SCHEPER & KIM LLP
*Attorneys for Defendant Robert Pfaff*


James R. DeVita
BRYAN CAVE LLP

John A. Townsend
TOWNSEND & JONES LLP

*Attorneys for Defendant Carol Warley*

LEWIS A. KAPLAN, *District Judge.*

This matter is before the Court on a motion by the government to take the depositions of four foreign witnesses pursuant to Federal Rule of Criminal Procedure 15.[1]  I assume familiarity with the prior opinions in this case.

## Background

Defendants are charged with, *inter alia*, designing and implementing fraudulent tax shelters.  Two of the shelters at issue here are the Foreign Leveraged Investment Program ("FLIP") and the Offshore Portfolio Investment Strategy ("OPIS"), which allegedly were designed to generate multi-million dollar capital losses.  For purposes of the present motion, their pertinent feature is the purported use of Cayman Islands entities to make the transactions look like legitimate investments.  The Indictment alleges that, in these transactions, "[t]he client purportedly entered into an 'investment' transaction with the Cayman Islands entity by purchasing a purported warrant or entering into a purported swap.  The Cayman Islands entity purportedly made a pre-arranged series of purported investments . . . ."[2]  In fact, the government alleges, the transactions were shams, the sole purpose of which was to generate phony tax losses.

One way the government intends to prove this at trial is by showing that the Caymans entities, instead of being owned by persons independent of the other participants in the FLIP and OPIS transactions, in fact were puppets of the defendants.  The government intends to call four witnesses – Kirsti Sewell, Morten Aasen, Thomas Hansen, and Jan Møller – who were nominal

---

[1]   The government moves also to add two of the witnesses to its witness list.  No defendant opposes this motion.

[2]   Indictment ¶ 34.

2

owners of these Caymans entities but who the government expects will testify that they had little or no involvement in or understanding of the transactions.  Among other things, they were not required to invest any money and never were informed that their participation made them nominal owners of these Caymans entities.  In addition, the government expects Hansen and Møller to testify that they were offered the opportunity to participate in the transactions as compensation for their employment at an accounting firm in Oslo.

All four are citizens and residents of Norway.  Aasen has agreed to come to New York to testify at trial.[3]  Hansen also has agreed to testify at trial, provided that his work schedule permits.[4]  Sewell informed the government, through her attorney, that she will not come to the United States to testify.[5]  Møller originally informed Norwegian investigators that he neither would speak voluntarily to United States authorities nor travel to New York for trial but later agreed to testify in Norway.[6]  All four are said to be willing to testify in Oslo at the offices of ØKOKRIM, a Norwegian investigative agency.

The government seeks leave to depose all four witnesses in Norway.  It submits declarations of Petter Nordeng, a senior public prosecutor at ØKOKRIM, stating that voluntary depositions at ØKOKRIM's offices would be conducted in English and under oath with the defendants and their attorneys present if they wished to attend, that questioning would be conducted

---

[3]     Okula Decl. (2/15/07) ¶ 4.

[4]     *Id.* ¶ 5.

[5]     *Id.* ¶ 4.

[6]     *Id.* ¶ 5; Okula Decl. (3/9/07) ¶ 3.

3

by the attorneys for the government and the defendants, that contemporaneous objections pursuant to the Federal Rules of Evidence could be made by the attorneys, and that the depositions would be video- and audio-taped.[7]   In the event that any witness decided not to testify voluntarily, the government submits that he or she could be summoned by the Norwegian courts to testify in a Norwegian court.[8]  Should that occur, the government submits, American procedural rules would govern the in-court proceedings to the extent they are not inconsistent with Norwegian law.  Mr. Nordeng expresses the opinion that no procedures relevant at the depositions would be inconsistent with Norwegian law.[9]  In view of the disposition of this motion on other grounds, it is unnecessary to determine whether this would be so.

*Discussion*

A.    *The Standard*

Pursuant to Federal Rule of Criminal Procedure 15, a court may order prospective witnesses to be deposed to preserve their testimony for trial where there are "exceptional circumstances and in the interest of justice."[10]   A court "should review these motions on a

---

[7]

Nordeng Decl. (filed 3/9/07) ¶ 3.

[8]

*Id.* ¶ 4.

[9]

Nordeng Decl. (3/16/07) ¶ 2.

The parties dispute whether the procedures under Norwegian law would provide sufficient protection for the defendants' rights.  As the Court denies the motion on other grounds, it need not reach this issue.

[10]

FED. R. CRIM. P. 15(a)(1).

4

case-by-case basis, examining whether the particular characteristics of each case constitute 'exceptional circumstances.'"[11]  In determining whether exceptional circumstances exist, courts look to whether "(1) the prospective witness is unavailable for trial, (2) the witness' testimony is material, and (3) the testimony is necessary to prevent a failure of justice."[12]  The moving party bears the burden of showing that such exceptional circumstances are present.[13]

B.    *The Circumstances of This Case*

The highly unusual circumstances of this case have been well-documented elsewhere and need not be repeated here.  For purposes of this motion, it suffices to note briefly the tremendous burden and expense of defending this case – defendants, for example, at last count have more than 22 million pages of discovery to sift through[14] – and that the cost of bearing this burden has fallen on the shoulders of the individual defendants as a direct result of the government's unconstitutional conduct.[15]  The resources of several of the defendants have been stretched quite thin.  At least one defendant now is unable to pay his attorney, who has sought leave to withdraw.[16]

---

[11]
       *United States v. Dillman*, 15 F.3d 384, 389 (5th Cir. 1994).

[12]
       *United States v. Cohen*, 260 F.3d 68, 78 (2d Cir. 2001).

[13]
       *See id.*; *see also United States v. Whiting*, 308 F.2d 537, 541 (2d Cir. 1962).

[14]
       *See, e.g.*, Lefcourt Aff. (Nov. 10, 2006) ¶¶ 4-5 (docket item 821).

[15]
       *See United States v. Stein*, 435 F. Supp. 2d 330 (S.D.N.Y. 2006).

[16]
       *See* Gioiella Decl. (Feb. 7, 2007) at 5-6 (docket item 862).

5

For a defendant and his or her counsel to attend depositions in Norway would add significantly to this burden.  Of course, neither a defendant nor counsel need attend, but failure to do so would waive that defendant's rights under the Confrontation Clause.  Although Rule 15 provides that the government may be ordered to pay the travel and subsistence expenses of the defendant and his attorney, as well as the deposition transcript costs,[17] the defendant must shoulder the cost of attorney's fees.[18]

Thus, the question whether these depositions are in the interests of justice must be considered in light of the tremendous burden the defendants already face and the government's fault in imposing that burden upon them.  Even absent these considerations, however, the government has failed to show exceptional circumstances necessary to justify the depositions.

C.      *Unavailability*

"Unavailability is to be determined according to the practical standard of whether under the circumstances the government has made a good-faith effort to produce the person to testify at trial."[19]

1.      *Aasen and Hansen*

---

[17]

FED. R. CRIM. P. 15(d).

[18]

Although Warley suggests that Rule 15 could be interpreted to allow a court to order the government to pay attorney's fees as well as expenses, at least one circuit has held that the rule could not be so construed.  *United States v. Baker*, 603 F.2d 759, 762 (9th Cir. 1979).

[19]

*United States v. Johnpoll*, 739 F.2d 702, 709 (2d Cir. 1984).

6

Both Aasen and Hansen currently are willing to come to the United States to testify at trial.  Although Hansen has indicated that his work schedule might interfere, the government's case alone is estimated to take months.  It would seem quite likely that Hansen's work schedule will permit his attendance at some point.

The government contends that the mere fact that the witnesses are beyond the subpoena power of the Court renders them unavailable for the purposes of Rule 15.  But speculation that a willing witness might change his or her mind before trial does not alone justify the expense and burden of deposing the witness where it appears likely that the deposition ultimately will be unnecessary.  Notably, courts generally have authorized depositions in such circumstances only where the burden was minimal because the parties already were traveling to the witness's location for other reasons.

In *United States v. Drogoul*,[20] for example, the Eleventh Circuit considered a motion to take depositions of thirteen foreign nationals in Italy, six of whom were willing to testify in the United States.  After concluding that exceptional circumstances warranted the depositions of the seven who were not willing to testify in the United States, the court turned to the six willing witnesses.  The court noted initially that "[i]n the ordinary case, exceptional circumstances do not exist when the prospective deponent has declared that he or she is willing to testify at trial. . . . [I]f there is very little chance that a deposition will be admissible – if the witnesses are available to testify live, for example – the district court need not engage in the wasteful practice of authorizing

---

[20] 1 F.3d 1546 (11th Cir. 1993).

useless depositions."[21]  In the circumstances presented by the case, however, some witnesses were going to be deposed in Italy in any event.  "Far from being a substantial waste of time and resources, therefore, allowing the depositions of the six additional witnesses would involve the expenditure of only marginally more time, money, and effort."[22]  Although the court noted also that the six willing witnesses were beyond the subpoena power of the United States courts and might change their mind before trial, this was not the critical factor in its decision.[23]

    2.    *Sewell and Møller*

        Sewell and Møller have informed the government that they would testify in Norway but will not travel to the United States.  The government has not provided the Court with any indication of its attempts, if any, to persuade them to come to the United States.  The Court thus is unable to determine whether it has made the requisite "good-faith effort to produce the person to

---

[21]
    *Id.* at 1557.

[22]
    *Id.*

[23]
    *See id.* (summarizing that exceptional circumstances were present because of the materiality of the testimony, the fact that the witnesses were beyond the court's subpoena power, "and, *critically*, the fact that the parties already must take depositions in Italy") (emphasis in original).

    The only other case cited by the government for this proposition is similar.  *See United States v. Des Marteau*, 162 F.R.D. 364, 368 (M.D. Fla. 1995) (authorizing the deposition of a foreign national in Quebec who "may be" willing to testify at trial because the testimony was material, the witness could change her mind and was beyond the court's subpoena power, and "the parties must travel to the Province of Quebec for other depositions").

testify at trial."[24]   Even assuming, *arguendo*, that they would be unavailable to testify at trial, however, the government has failed to show their testimony is material in light of the availability of Aasen and Hansen.

D.     *Materiality*

The defendants dispute the materiality of any of the proposed testimony, both in general and with respect to certain of the individual defendants.

As the Court has found that Aasen and Hansen are not unavailable for purposes of Rule 15, it need not determine whether their testimony is material.

In light of Aasen and Hansen's current availability to testify at the trial, the materiality of the testimony of Sewell and Møller appears, on this record, to be minimal.  The government has identified only one distinction between the testimony to be provided by the four witnesses: Hansen and Møller would testify that they were offered the opportunity to participate in the transactions as compensation for their employment at an accounting firm; the other two witnesses would not.  Thus, the testimony of Sewell and Møller simply would be cumulative of that of Aasen and Hansen, and "a court may properly deny the motion [to take depositions] if the proposed testimony would be cumulative."[25]  In any case, the government has not persuaded me that depositions of Sewell and

---

[24]

*Johnpoll*, 739 F.2d at 709; *see also United States v. Oudovenko*, No. 00 Cr. 1014 (JG), 2001 WL 253027, at *2 (E.D.N.Y. Mar. 7, 2001) ("[Defense] counsel's affirmation [that the witnesses would not voluntarily travel to the United States to testify at the trial] fails to establish that he or [the defendant] made a good faith effort to secure the presence of these witnesses at trial, such as by offering to pay their travel expenses.").

[25]

*United States v. Grossman*, No. S2 03 Cr. 1156 (SHS), 2005 WL 486735, at *3 (S.D.N.Y. Mar. 2, 2005).

Møller are necessary to prevent a failure of justice.

10

*Conclusion*

For the foregoing reasons, the government's motion to take depositions and to supplement its witness list [docket item 867] is granted to the extent that it may add Hansen and Møller to its witness list.  It is denied in all other respects without prejudice to renewal if the availability of Aasen and Hanson changes.

SO ORDERED.

Dated:          April 17, 2007

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)