UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA


      -against-                                    S1 05 Crim. 0888 (LAK)


JEFFREY STEIN, et al.,

                               Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OPINION**


      Appearances:


                John M. Hillebrecht
                Stanley J. Okula, Jr.
                Rita M. Glavin
                Margaret Garnett
                Kevin M. Downing
                Assistant United States Attorneys
                MICHAEL J. GARCIA
                UNITED STATES ATTORNEY

                Michael J. Madigan
                Robert H. Hotz, Jr.
                Christopher T. Schulten
                Kathleen C. Leicht
                AKIN GUMP STRAUSS HAUER & FELD LLP
                *Attorneys for Defendant John Lanning and on behalf of all defendants*

                Charles A. Stillman
                John B. Harris
                STILLMAN, FRIEDMAN & SHECHTMAN, P.C.
                *Attorneys for Movant KPMG*

LEWIS A. KAPLAN, *District Judge.*

      This matter is before the Court on motions by (1) all defendants for an order, pursuant to FED. R. CRIM. P. 16, compelling the government to produce certain materials in the files of KPMG LLP ("KPMG") and (2) KPMG to quash a Rule 17(c) subpoena seeking the same materials.

I

*A.*    *Background*

    *1.*    *The Investigation*

      In 2001 or early 2002, the Internal Revenue Service ("IRS") began investigating tax shelters, including a number that are subjects of the indictment in this case.  In early 2002, it issued nine summonses to KPMG, which was less than fully compliant.  Accordingly, on July 9, 2002, the government filed a petition in the United States District Court for the District of Columbia to enforce them.[1]

      A few months later, the Permanent Subcommittee on Investigations of the Senate Committee on Governmental Affairs "began an investigation into the development, marketing, and implementation of abusive tax shelters by accountants, lawyers, financial advisors, and bankers."[2]  This led to public hearings in November 2003 at which several senior KPMG partners or former

---

[1]    *United States v. KPMG LLP*, 316 F. Supp. 2d 30, 31-32 (D.D.C. 2004).

    It appears, in addition, that the IRS was conducting a penalty promoter audit of KPMG.  Tr., May 9, 2006 [docket item 503], (Neiman) 270:8-11.

[2]    STAFF OF THE PERMANENT SUBCOMM. ON INVESTIGATIONS OF THE S. COMM. ON HOMELAND SEC. AND GOVERNMENTAL AFFAIRS, THE ROLE OF PROF'L FIRMS IN THE U.S. TAX SHELTER INDUS. 1 (Comm. Print 2005) ("SENATE REPORT").

2

partners – five of them now defendants here – testified.[3]  As noted elsewhere, the firm's reception

at the hearing was not favorable.[4]   In the early part of 2004, the IRS made a criminal referral to the

Department of Justice ("DOJ"), which in turn passed it on to the United States Attorney's Office for

this district ("USAO").  As detailed in a prior opinion, KPMG retained new counsel and engaged

in vigorous efforts to forestall the indictment of the firm.[5]

    2.     *The Deferred Prosecution Agreement*

        On August 29, 2005, KPMG and the government entered into a Deferred Prosecution

Agreement ("DPA").[6]  KPMG agreed, among other things, to waive indictment, to be charged in a

one-count information, to admit extensive wrongdoing, to pay a $456 million fine, and to accept

restrictions on its practice.  The government agreed that it would seek dismissal of the information

after December 31, 2006  if KPMG complied with its obligations.[7]  Moreover, two additional aspects

of the DPA are noteworthy in the present context.

        First, the DPA contained an agreed Statement of Facts (the "Statement"), accepted

by KPMG, that contained a detailed account of alleged wrongdoing on the part of the firm.  The

---

[3]     *Id.* at 1-2.

[4]     *United States v. Stein*, 435 F. Supp. 2d 330, 338-39 (S.D.N.Y. 2006) ("*Stein I*").

[5]     *Id.* at 339, 344-49.

[6]     *United States v. KPMG LLP*, 05 Crim. 0903 (LAP), docket item 4 (filed Aug. 29, 2005).

[7]     Pursuant to this agreement, the government sought and Judge Preska granted an order of *noelle prosequi* as to the information on January 3, 2007.  *Id.*, docket item 8.

3

Statement therefore is significant in that it includes factual assertions that KPMG admitted, but it may be significant also in that it may exclude factual assertions that KPMG declined to admit.

Second, the DPA obliges KPMG to cooperate extensively with the government, both in general and in the government's prosecution of this indictment.  It provides in part:

> "7.    KPMG acknowledges and understands that its cooperation with the criminal investigation by the Office [USAO] is an important and material factor underlying the Office's decision to enter into this Agreement, and, therefore, *KPMG agrees to cooperate fully and actively with the Office, the IRS, and with any other agency of the government designated by the Office ('Designated Agencies') regarding any matter relating to the Office's investigation about which KPMG has knowledge or information.*

> "8.    KPMG agrees that its continuing cooperation with the Office's investigation shall include, *but not be limited to,* the following:

> "(a).    *Completely and truthfully disclosing all information in its possession to the Office and the IRS about which the Office and the IRS may inquire, including but not limited to all information about activities of KPMG, present and former partners, employees, and agents of KPMG*;

> *    *    *

> "(d).    *Assembling, organizing, and providing, in responsive and prompt fashion and, upon request, expedited fashion, all documents, records, information, and other evidence in KPMG's possession, custody, or control as may be requested by the Office or the IRS*;

> "(e).    Not asserting, in relation to the Office, any claim of privilege (including but not limited to the attorney-client privilege and the work product protection) as to any documents, records, information, or testimony requested by the Office related to its investigation, provided that:

> "(I)    notwithstanding the provisions of this subparagraph (e), KPMG may assert the attorney-client privilege, work product protection, or other privileges with respect to (A) privileged communications between KPMG and its counsel that post-date February 1, 2004 and that concern the Office's investigation, (B) privileged communications between KPMG and Skadden, Arps, Slate, Meagher & Flom LLP, concerning the IRS's promoter penalty audit, or (C) any private litigation; and

"(II)    by producing privileged materials pursuant to this subparagraph (e), KPMG does not intend to waive the protection of the attorney-client privilege, work product protection, or any other applicable privilege as to third parties.

"(f).    Using its reasonable best efforts to make available its present and former partners and employees to provide information and/or testimony as requested by the Office and the IRS, including sworn testimony before a grand jury or in court proceedings, as well as interviews with law enforcement authorities . . . .

*   *   *

"9.    KPMG agrees that its obligations to cooperate will continue even after the dismissal of the Information, and *KPMG will continue to fulfill the cooperation obligations set forth in this Agreement in connection with any investigation, criminal prosecution or civil proceeding brought by the Office* or by or against the IRS or the United States relating to or arising out of the conduct set forth in the Information and the Statement of Facts and relating in any way to the Office's investigation."[8]

The cooperation provisions of the DPA thus require KPMG to comply with demands by the USAO in connection with this prosecution.

B.    *The Indictment*

Only days before the filing of the information against KPMG and the DPA, the government indicted a number of individual defendants including several by-then former partners of KPMG.  The superseding indictment, which in general terms follows the original, albeit naming more defendants and asserting more charges, contains forty-six counts.

Count One (the "Conspiracy Count") charges all defendants with conspiracy to defraud the IRS by designing, marketing, and implementing fraudulent tax shelters for wealthy individual clients and deliberately concealing those shelters from the IRS.  KPMG is named as an

_____

[8]    DPA ¶¶ 7-9 (emphasis added).

unindicted co-conspirator.  The scheme allegedly involved at least four separate tax shelter vehicles, called FLIP, OPIS, BLIPS, and SOS, designed to generate phony tax losses through a series of sham transactions.  The conspirators allegedly sought to protect their clients from potential IRS penalties by paying co-defendant Raymond Ruble, a New York tax attorney, to issue opinion letters falsely representing that the tax shelters were likely to survive IRS review.  Count One charges also that the participants conspired to conceal the fraudulent tax shelters from the IRS by, among other things, preparing tax returns that concealed the phony tax losses, obstructing IRS and Senate investigations into the shelters, and failing to register the shelters with the IRS.[9]

Counts Two through Forty (the "Tax Evasion Counts") charge all defendants with tax evasion based on the tax returns of approximately twenty-five different tax shelter clients and defendants.[10]

Counts Forty-one through Forty-four charge defendant Ruble with evading taxes on income related to the alleged scheme, including payments he received from nominee entities controlled by John Larson and Robert Pfaff in exchange for fraudulent opinion letters included in Count One. Two of these counts name defendants Larson and Pfaff as well.[11]

Finally, Counts Forty-five and Forty-six charge certain defendants with obstructing the IRS investigation of the tax shelters.[12]

---

[9]    Ind. ¶¶ 1-78.

[10]    *Id.* ¶¶ 79-80.

[11]    *Id.* ¶¶ 81-83.

[12]    *Id.* ¶¶ 84-85.

C.      *The Subpoena*

In November 2006, the defendants applied for a subpoena pursuant to Rule 17(c) requiring KPMG to produce documents that may be organized in three groups:

1.      Documents relating to expert opinions prepared by or for KPMG during the period January 1, 1996 to date concerning the legality or propriety of any aspect of the tax shelters here at issue as well as documents prepared by counsel retained by KPMG that discuss or relate to any defendant or any of the events set forth in the indictment.[13]

2.      Documents relating to communications between KPMG and the government regarding the production of documents, waiver of the attorney-client privilege, or the tax shelters and events here at issue, including privilege logs.[14]

3.      Copies of certain KPMG manuals, calendars kept by or for all but three of the defendants, and deposition transcripts from litigation relating to the tax shelters at issue here in which KPMG was a party.[15]

The government opposed issuance of the subpoena, arguing among other things that the specifications in the first two groups were insufficiently specific and that they did not seek

---

[13]      Stillman Decl. (1/22/07) [docket item 858], Ex. A at 3, Specifications 1-3.

[14]      *Id.* at 4, Specifications 4-6.

[15]      *Id.* at 4-5, Specifications 7-9.

7

evidentiary material.[16]  While it did not object to production of the third group, it maintained that there was no need to issue a subpoena to KPMG because the government would "promptly request these materials from KPMG and provide them to the defense."[17]  This of course was a tacit acknowledgment – which subsequently has been made explicit – that the government has the legal right to require KPMG to produce documents for the purpose of enabling the government to disclose them to the defense.

At argument, the Court noted that KPMG would be likely to seek to quash the subpoena if it were issued and suggested that it might make more sense to issue the subpoena without prejudice to the government's arguments and then to hear the government's substantive objections at the same time as KPMG's anticipated motion to quash.  The government agreed.[18]

Following service of the subpoena, KPMG and the defendants reached agreement with respect to the third group of documents and certain documents in the first two groups.[19]   On January 22, 2007, however, KPMG moved to quash the subpoena insofar as it sought production of certain of the documents in the first two requested groups.  In briefest outline, it contends that some or all of the requested documents are privileged, that compliance would be unduly burdensome, and that the defendants have failed to meet the standard articulated in *United States v. Nixon*,[20] which it

---

[16]     Govt. Mem. [docket item 825] 1.

[17]     *Id.* at 1, 22-23.

[18]     Tr., Nov. 21, 2006 [docket item 845], 37-38.

[19]     Stillman Decl. (1/22/07) [docket item 858], Exs. C, E.

[20]     418 U.S. 683 (1974).

contends controls here.

In advance of oral argument, the Court invited the parties to address the questions (a) whether the subpoenaed documents would be discoverable under Rule 16(a)(1)(E)(i) if they were in the physical possession of the prosecution team, (b) whether they are within the government's "possession, custody or control" within the meaning of that rule by virtue of the DPA or otherwise, and (c) assuming that these conditions were met, whether the standard of Rule 16(a)(1)(E)(i) rather than that of *United States v. Nixon* should control determination of KPMG's motion to quash.[21]

At oral argument, the Court inquired whether the defendants were seeking an order, pursuant to Rule 16, compelling the government to produce the documents that are the subject of the subpoena to KPMG. They answered affirmatively. The Court then inquired whether there was any objection to treating the defendants as having made that motion. The government stated that it had no objection.[22]

Following the argument, the Court directed KPMG to submit any evidence and argument it wished "on the issue whether the documents described by the subpoena are within the government's control and whether KPMG is obliged to produce them to the government, either voluntarily or upon request."[23] KPMG responded with a memorandum of law but submitted no evidence.

---

[21]
    Order, Mar. 9, 2007 [docket item 886].

[22]
    While KPMG said that it objected, it probably lacks standing to object to the procedural mechanism adopted for bringing on a motion seeking relief only against the government. In any case, KPMG was afforded a full opportunity to submit evidence and argument. Order, Mar. 20, 2007 [docket item 898].

[23]
    *Id.*

9

While the motion was under consideration, the defendants and KPMG reached agreement with respect to all aspects of the subpoena save Specification 6, and KPMG withdrew the motion to quash except as to that item.[24]

II

The Court begins with the defendants' motion to compel the government to produce the documents described by Specification 6 of the subpoena served upon KPMG. This raises essentially two questions: whether the documents are "material to the preparation of the defense" and, to whatever extent they are, whether they are within the government's "possession, custody or control."

A.    Materiality

The "materiality standard [of Rule 16] normally is not a heavy burden; rather, evidence is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal."[25] "Evidence that the government does not intend to use in its case in chief

---

[24]

KPMG asserts that it has produced some, but not all, documents responsive to this request. KPMG Mem. (4/5/07) [docket item 909] 13. Since KPMG's production thus far is incomplete, the Court will address the obligations of the government and KPMG to produce all documents in this specification.

[25]

*United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (internal quotations marks and citations omitted).

is material if it could be used to counter the government's case or to bolster a defense."[26]  "There

must be some indication that the pretrial disclosure of the disputed evidence would . . . enable[] the

defendant significantly to alter the quantum of proof in his favor."[27]  With this in mind, the Court

turns to the disputed specification of the subpoena which, as noted above, describes also the

documents sought under Rule 16 from the government.

> Specification 6 seeks:
>
> All documents relating to communications between KPMG or its outside counsel and the United States Attorney's Office for the Southern District of New York, the United States Department of Justice, the United States Internal Revenue Service or the United States Senate relating to FLIP, OPIS, BLIPS and SOS and any of the events alleged in the Superseding Indictment, including, but not limited to, correspondence and drafts of the Deferred Prosecution Agreement and any submissions made by KPMG to the United States Attorney's Office for the Southern District of New York, the United States Department of Justice, the United States Internal Revenue Service, or the United States Senate.

Thus, the principal categories of documents sought include:

> (1)     Correspondence between KPMG and both the Senate subcommittee and the
>
>         IRS.  In this case, KPMG undoubtedly has copies of the documents, whereas
>
>         the likelihood that the USAO also has copies is unclear.
>
> (2)     Correspondence between KPMG and the USAO and the Justice Department.
>
>         This includes a so-called White Paper and appendices, in which KPMG
>
>         argued that the firm should not be indicted, and almost certainly drafts of the
>
>         Statement of Facts, but may include also letters and e-mails relating to the

---

[26]

*United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993).

[27]

*United States v. Maniktala*, 934 F.2d 25, 28 (2d Cir. 1991) (quoting *United States v. Ross*, 511 F.2d 757, 762-63 (5th Cir.) (citations omitted), *cert. denied*, 423 U.S. 836 (1975)).

11

underlying facts, KPMG's cooperation with the USAO's investigation, and related matters. Both KPMG and the prosecution team doubtless have copies of all of these materials.

(3)     Documents *relating to* communications between KPMG, on the one hand, and the USAO, the Justice Department, the Senate subcommittee and the IRS on the other.[28] These probably include memoranda concerning meetings and telephone conversations, but may well include other materials as well. In contrast to the documents described in (a) and (b) above, materials in this category probably are internal in nature. In other words, neither KPMG nor the government is likely to have copies of the internal materials of the other.

*1.     Correspondence Between KPMG and the IRS and the Senate Subcommittee*

Category 1 is the easiest to resolve. The indictment charges the defendants with participation, along with KPMG, in a conspiracy to conceal the allegedly fraudulent tax shelters from the IRS and obstructing IRS and Senate investigations. In the circumstances, correspondence between KPMG on the one hand and the IRS or the Senate on the other is likely to "play an important role in uncovering admissible evidence, aiding witness preparation, corroborating

---

[28]     Although KPMG initially asserted its understanding that the defendants did not seek documents in this category, *see* KPMG Mem. (1/22/07) [docket item 857] 18-19; Tr., Mar. 12, 2007 [docket item 903], 49, it recently stated that this initial belief was mistaken. Ltr., Charles A. Stillman, Apr. 26, 2007. Defendants have confirmed that they seek these documents. Ltr., Robert H. Hotz, Jr., Apr. 25, 2007.

testimony, or assisting impeachment or rebuttal."[29]  In consequence, these documents are material

to the preparation of the defense.

### 2. Correspondence Between KPMG and the USAO and Justice Department

Category 2 presents a marginally more difficult question.  The government argues that

disclosure of communications between a subject of an investigation and the prosecution in the course

of negotiating a plea or other disposition could affect the manner in which such negotiations are

conducted.[30]  But this point cannot be taken too far.  For one thing, statements made during plea

negotiations routinely are disclosed in criminal trials of other defendants in a variety of contexts.[31]

For another, the government is required by the Constitution to disclose exculpatory evidence

regardless of whether it obtained that evidence in the course of plea negotiations.[32]  So there is no

---

[29]

*Lloyd*, 992 F.2d at 351.

[30]

Tr., Mar. 12, 2007 [docket item 903], 98-99.

The government, however, candidly admits that statements made by one prospective defendant in the course of settlement negotiations are not rendered inadmissible upon the offer by another under the terms of FED. R. EVID. 410.  *Id.* at 99.

[31]

When, for example, one of a number of defendants pleads guilty and testifies against others who stand trial, those who stand trial are entitled under the Jencks Act, 18 U.S.C. § 3500, to the minutes of the plea allocution and any written statement made or adopted by the witness.  Similarly, law enforcement officers' notes and memoranda of statements made during proffer sessions routinely are produced when the officers take the stand.  There may well be other examples.

[32]

*Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment."); *see also California v. Trombetta*, 467 U.S. 479, 485 (1984) (due process requires "[t]he prosecution [to] reveal the contents of plea agreements with key government witnesses") (citing *Giglio v. United States*, 405 U.S. 150

13

blanket foreclosure of discovery of communications made during plea negotiations.  The question

again comes down to whether there is any real "indication that the pretrial disclosure of the disputed

evidence would . . . enable[] the defendant[s] significantly to alter the quantum of proof in [their]

favor."[33]

### (a)    The White Paper

Perhaps the defendants' principal focus in this category is the White Paper, which

they suppose may discuss facts that would supply leads helpful to them in developing their cases or,

at least, lead to information useful for the cross-examination of various government witnesses.  They

are especially interested in a section entitled "KPMG Did Not Corruptly Obstruct The Investigations

By The IRS Or The Senate Permanent Subcommittee On Investigations" (the "Obstruction

Section").[34]

The Court has reviewed the White Paper and appendices *in camera*.  In the main, they

are not material to the preparation of the defense.  The Obstruction Section, however, does contain

KPMG's explanation of three incidents that appear to be at the heart of the obstruction claims in the

---

[footnotes]

(1972)); *Giglio v. United States*, 405 U.S. at 151, 155 (due process violation where government "failed to disclose an alleged promise made to its key witness that he would not be prosecuted if he testified for the Government"); *cf. United States v. Paulino*, 445 F.3d 211, 224-25 (2d Cir. 2006) (no *Brady* violation for failure to disclose third party's allegedly exculpatory plea discussions because plea discussions not exculpatory and defendant knew relevant facts).

[33]

*United States v. Maniktala*, 934 F.2d at 28 (quoting *United States v. Ross*, 511 F.2d at 762-63).

[34]

They are aware of this section by virtue of disclosure to them earlier in this litigation of the document's table of contents.

14

present indictment.  In one instance, KPMG attributed a failure to produce certain documents to confusion on the part of KPMG personnel responsible for responding to an IRS summons.  In another, it sought to shift responsibility for an allegedly misleading statement by a KPMG attorney to a KPMG partner who allegedly relied in turn upon a statement by a defendant in this case.  In short, the Obstruction Section of the White Paper is material.

(b)    *Drafts of the Statement of Facts*

The Statement of Facts that was filed publicly with the DPA was not the first draft, but the culmination of a negotiation between KPMG and the USAO.  Disclosure of the give and take as to what KPMG was prepared to admit and what the government unsuccessfully sought is likely to shed light on matters at issue in this case.  Disclosure therefore is likely to "play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal."[35]

(c)    *Other Communications*

For reasons explained above, other communications (i.e., communications other than the White Paper and drafts of the Statement of Facts) between KPMG and the USAO and the Department of Justice that relate to the facts at issue in this indictment plainly are material to the defense.  To the extent that this category sweeps more broadly, however, the Court is unpersuaded that it seeks material disclosure.

---

[35]    *Lloyd*, 992 F.2d at 351.

### 3.    *Documents Relating to the Foregoing Communications*

As indicated above, Category 3 is the broadest, seeking to catch in its net internal documents relating to communications between KPMG on the one hand and the various relevant government entities on the other.  It would require production of memoranda of telephone conversations and other communications between KPMG and government entities.  But it would apply also to such matters as internal discussions about how to respond to positions taken by the government, what offers might be made, and a host of other matters bearing little or no necessary relationship to the facts at issue in this case.

As an initial matter, defendants are not entitled to "internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case" regardless of whether they otherwise would be material.[36]  Hence, the only aspect of Category 3 that is in play is internal KPMG documents.

Insofar as Category 3 seeks production of documents (i) summarizing or recording the substance of communications between KPMG and government agencies that relate to the facts at issue in this indictment, or (ii) discussing evidence bearing on the accuracy of the Statement of Facts or any admissions sought by the government, Category 3 seeks information material to the preparation of the defense for the reasons already given.  The Court is not satisfied, however, that Category 3 seeks material information to the extent it would sweep more broadly.

\*      \*      \*

---

[36]    FED. R. CRIM. P. 16(a)(2).

In sum, the Court finds that part but by no means all of Specification 6 seeks information material to the preparation of the defense.  For the most part, the material documents are in the possession of the USAO and, in some cases, also in KPMG's possession.  To a very limited extent, they apparently are in the exclusive possession of KPMG.

## B.      Possession, Custody or Control

### 1.      The Legal Standard

Rule 16(a)(1)(E) provides in relevant part that the government, upon request, must permit a defendant to inspect and copy an item material to the preparation of the defense "if the item is within the government's possession, custody or control."[37]  In consequence, the next question is whether documents in the hands of KPMG and/or its counsel and agents are within the "possession, custody or control" of the government within the meaning of Rule 16.

The government takes the position that the DPA gives it the unqualified right to demand from KPMG the production of any documents within KPMG's control except to the extent that such documents (a) are privileged, and (b) fall within the limited carve-out from KPMG's waiver of privilege that appears in paragraph 8(e)(I) of the DPA.[38]  Indeed, as the Court has noted, the government originally resisted the issuance of a Rule 17(c) subpoena to KPMG in part on the ground that a subpoena was not necessary for certain of the requested materials because the government would "promptly request these materials from KPMG and provide them to the

---

[37]
       FED. R. CRIM. P. 16(a)(1)(E).

[38]
       Tr., Mar. 12, 2007 [docket item 903], 65.

17

defense."[39]  Nevertheless, both the government[40] and KPMG[41] argue that the DPA does not give the government "possession, custody or control" of documents that are within the hands of KPMG and its agents.  This position is untenable.

The phrase "possession, custody or control" has a venerable history in the federal rules of procedure.  It first appeared in 1938 in the original version of Civil Rule 34, which provided for discovery in civil cases of documents in the "possession, custody, or control" of any party.[42]  As adopted in 1945, Criminal Rule 16 did not use the phrase, but it was incorporated by the 1966 amendments into the predecessor of current Rule 16(a)(1)(E), which permitted discovery from the government, upon motion, of documents "within the possession, custody or control of the government" upon a showing of materiality to the preparation of the defense.[43]  The 1991 revision of Civil Rule 45, which governs subpoenas, also adopted the term, using it in Rule 45(a)(1)(C).

There is no hint in the history of these rules that the meaning of the phrase differs depending upon which rule is in question.  To the contrary, the phrase in each case defines in identical language the extent of the obligation of a party subject to a duty to produce evidence to respond.  Common sense, not to mention settled principles of construction, suggests a uniform

---

[39]  Govt. Mem. [docket item 825] 1, 22-23.

[40]  Tr., Mar. 12, 2007 [docket item 903], 95-96.

[41]  KPMG Mem. (4/5/07) [docket item 909] 14-17.

[42]  FED. R. CIV. P. 34, 308 U.S. 707 (1939) (amended 1946).

[43]  FED. R. CRIM. P. 16(b), 383 U.S. 1098 (1965) (amended 1974).

18

construction.[44]  Hence, case law under all of the relevant rules is equally instructive.

One noted commentator aptly summarized the scope of the obligation:

"Legal ownership of the requested documents or things is not determinative, nor is actual possession necessary if the party has control of the items.  *Control* has been defined to include 'the legal right to obtain the documents requested upon demand.'  The term 'control' is broadly construed."[45]

These principles have been applied in a wide variety of situations.  Parent corporations have been compelled to produce documents in the hands of subsidiaries, subsidiaries documents in the hands of their parent entities, corporations documents in the hands of employees, clients documents in the hands of attorneys, corporate officers and directors documents in the hands of their corporations, and patients documents in the hands of health care providers.[46]  Indeed, the

---

[44]

*E.g.*, *Golden Trade, S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 525 (S.D.N.Y. 1992); *United States v. Skeddle*, 176 F.R.D. 258, 261 n.5 (N.D. Ohio 1997).

[45]

7 MOORE'S FEDERAL PRACTICE § 34.14[2][b], at 34-63 to 34-64 (3d ed. 2006) (footnotes omitted); *accord Gerling Int'l Ins. Co. v. CIR*, 839 F.2d 131, 140 (3d Cir. 1988) (quoting 8 CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE & PROCEDURE § 2210) (control includes "the legal right to obtain the documents required on demand"); *In re Citric Acid Litig.*, 191 F.3d 1090, 1107-08 (9th Cir. 1999) (same); *Cochran Consulting, Inc. v. Uwatec USA, Inc.*, 102 F.3d 1224, 1229-30 (Fed. Cir. 1996) (same); *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995) (same); *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1426 (7th Cir. 1993) (same); *United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989) (same); *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984) ("Control is defined not only as possession, but as the legal right to obtain the documents requested upon demand."); *SEC v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 471 (S.D.N.Y. 2000) (control is "the legal right, authority, or practical ability to obtain the materials sought upon demand"); *Florentia Contracting Corp. v. Resolution Trust Corp.*, No. 92 Civ. 1188 (PKL), 1993 WL 127187, at *3 (S.D.N.Y. Apr. 22, 1993) (same).

[46]

*See, e.g.*, *Dietrich v. Bauer*, No. 95 Civ. 7051 (RWS), 2000 WL 1171132, at *3-4 (S.D.N.Y. Aug. 16, 2000) (parent/subsidiary), *clarified on reconsideration*, 198 F.R.D. 397, 401-01 (S.D.N.Y. 2001); *Ferber v. Sharp Elecs. Corp.*, No. 84 Civ. 3105 (RO)(MHD), 1984 WL 912479 (S.D.N.Y. Nov 28, 1984) (Dolinger, M.J.) (subsidiary/parent); *Herbst v. Able*, 63 F.R.D. 135, 138 (S.D.N.Y. 1972) (corporation/employee); *CSI Inv. Partners II,*

19

principles have been applied even where the legal relationship arguably was less compelling.  In *In re NTL Securities Litigation*,[47] a corporate defendant was sanctioned for failing to produce documents that were in the hands of another company where the possessor was under a contractual obligation to provide the documents to the defendant.[48]  And in *In re Auction Houses Antitrust Litigation*,[49] a corporation was ordered under an analogous portion of Civil Rule 33 to answer interrogatories calling for information in the hands of its former chief executive officer where the former officer had contracted to provide the company with such information as it might request in exchange for substantial severance payments that had not all been made.

While there have been few criminal cases dealing with the meaning of "possession, custody or control," they are, not surprisingly, to the same effect.  In *United States v. Kilroy*,[50] for example, the defendant, a former employee of Standard Oil charged with interstate transportation of stolen securities, sought discovery from the government under Rule 16 of certain bank records that were in the hands of his former employer.  The government resisted.  In light of the fact that Standard Oil was cooperating with the government, however, the court ruled for the defendant.  It

---

*L.P. v. Cendant Corp.*, No. 00 Civ. 1422 (DAB)(DFE), 2006 WL 617983, at *6 (S.D.N.Y. Mar. 13, 2006) (Eaton, M.J.) (client/attorney); *United States v. Int'l Bus. Machs. Corp.*, 71 F.R.D. 88, 91 (S.D.N.Y. 1976) (officer/corporation); *Schwartz v. Travelers Ins. Co.*, 17 F.R.D. 330 (S.D.N.Y. 1954) (patient/doctor).

[47]

Nos. 02 Civ. 3013 (LAK)(AJP), 7377 (LAK)(AJP), 2007 WL 241344 (S.D.N.Y. Jan. 30, 2007) (Peck, M.J.).

[48]

*Id.* at *16-17.

[49]

196 F.R.D. 444 (S.D.N.Y. 2000).

[50]

523 F. Supp. 206 (E.D. Wis. 1981).

wrote:

> "I see no objection to an order requiring the Government, as the defendant asks, to use its 'best efforts' to obtain from Standard Oil all of the documents in its possession which came out of the defendant's former office.  The Government has 30 days to try to obtain the records.  Standard Oil is admittedly not a party to this suit and has no obligation to turn over any of its records to the defendant or to the Government except at trial pursuant to a valid subpoena.  Since Standard Oil is cooperating with the Government in the preparation of the case and is making available to the Government for retention in the Government's files any records which Standard Oil has and which the Government wants, however, it is not unreasonable to treat the records as being within the Government's control at least to the extent of requiring the Government to request the records on the defendant's behalf and to include them in its files for the defendant's review if Standard Oil agrees to make them available to the Government.  The alternative course is to require the defendant to subpoena the records for production at trial and, at the time of production, to grant him a recess adequate to allow him to thoroughly review the records.  I see no need for disruption of the trial in that manner when it appears that the records are, practically speaking, within the Government's control."[51]

### 2.     The Arguments of KPMG and the Government

Given the terms of the DPA and the government's admission that it has the unqualified right to demand production by KPMG of any documents it wishes for purposes of this case, subject to the limited privilege carve-out of paragraph 8(e)(I), the requested documents, to the extent the Court has found them material to preparing the defense, appear to be within the possession, custody or control of the government.  Nevertheless, both KPMG and the government resist this conclusion, albeit on different bases.

KPMG makes two arguments.  It contends first that the government does not have

---

[51]

*Id.* at 215.

*See also United States v. Skeddle*, 176 F.R.D. at 261-62 (government required to obtain documents previously made available to prosecutors, but returned by them, from company possessing them and produce documents to defendant).

"Rule 16 control over documents that are not in its physical possession – whether or not the government may assert a claim to the documents pursuant to Paragraph 8 of the DPA."[52]  It contends also that the DPA simply vested discretion in the government to request documents from KPMG, leaving this Court unable to compel the government to make such a request.  Neither of these arguments is persuasive.

The first argument cannot be reconciled with the plain language of Rule 16.  The rule speaks of "possession, custody or control," not simply "possession."  KPMG's argument would read the words "custody or control" out of the rule in flat contravention of the principle that all words in a statute, rule or contract are to be given meaning whenever possible.[53]  It therefore is not surprising that every circuit to have considered the question has held that "control" under the federal rules of procedure includes the legal right to obtain the documents in question.

Here, the DPA gives the government the legal right to obtain these documents subject to the limited carve-out set forth in paragraph 8(e)(I).  Despite having been afforded the opportunity to do so, KPMG has offered no evidence that the DPA does not mean precisely what it says.  The cases it relies upon are not even remotely in point.[54]

---

[52] KPMG Mem. (4/5/07) [docket item 909] 14.

[53] *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (internal quotation marks omitted).

[54] *United States v. Fort*, 472 F.3d 1106 (9th Cir. 2007), held only that investigative records in the hands of state law enforcement authorities are not within the possession, custody or control of federal prosecutors.  While both *United States v. Adkins*, 741 F.2d 744 (5th Cir. 1984), and *United States v. Matthews*, 20 F.3d 538 (2d Cir. 1994), contain language that, read out of context, might suggest that the government's Rule 16 obligations are limited to

Nor does KPMG's other argument carry the day.  The rule requires that the government produce all documents material to preparing the defense that are within its possession, custody or control.  The text affords the government no greater discretion in determining whether to ask KPMG for the documents than it would have if the documents were in the hands of an Assistant United States Attorney.  Once control is established, the obligation exists.

The government too resists the conclusion that the documents that KPMG is obliged by the DPA to produce upon request are within the government's control.  It asserts that language obligating entities with which the government enters into non-prosecution or deferred prosecution agreements to produce documents upon the government's request "is standard" and that the implications of holding that such language places the documents in the government's control would be "untenable."[55]  Although the government has provided no such evidence, the Court assumes that such provisions have become common in non-prosecution and deferred prosecution agreements.  But the government has offered no reason whatever to justify a conclusion that finding documents that parties to such agreements are legally obliged to supply the government upon request to be within the government's control would be either "untenable" or undesirable.  The plain language of Rule 16 makes clear that documents material to the defense that are within the government's control are

_____

documents in its physical possession or the physical possession of a government agent, neither dealt with a situation in which the government had the legal right to require the production of materials.  Neither, therefore, concerned the proper construction of the word "control" in Rule 16, which is the pertinent issue here.  And *United States v. Finnerty*, 411 F. Supp. 2d 428 (S.D.N.Y. 2006), held only that there was no possession, custody, or control because the New York Stock Exchange is not a government agency and was not involved in a joint investigation with federal prosecutors.  The court noted specifically, in fact, that the NYSE had refused some of the government's requests for documents.  *Id.* at 433.

[55]  Tr., Mar. 12, 2007 [docket item 903], 95-96.

producible.  That the government has begun making broad use of agreements of this sort only in comparatively recent years or that it might regard compliance with the rule in such cases to be inconvenient warrants no different conclusion.  If it is uncomfortable with the consequences of such provisions, it need not insist upon them in future cases.

Accordingly, the Court finds that the requested documents, to the extent set forth above, are in the possession, custody or control of the government subject only to the paragraph 8(e)(I) carve-out.  As the Court concludes below, in the discussion of KPMG's privilege objection to the Rule 17(c) subpoena, that KPMG has failed to establish any privilege or work product protection, all responsive documents are within the government's control.  The government therefore will be directed to produce them pursuant to Rule 16.  Moreover, as KPMG is before the Court and has had a full opportunity to be heard, it too will be so directed.


### III

The Court turns now to KPMG's motion to quash the Rule 17(c) subpoena served upon it.  It deals first with the scope of the documents available under the Rule and then turns to KPMG's privilege and burden arguments.


*A.*      *The Scope of Rule 17(c) in the Present Context*

Rule 17(c) provides:

**"(c)      Producing Documents and Objects.**

**"(1)      In General.**   A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates.  The court may direct the witness to produce the designated items in court before trial or before

they are to be offered in evidence.  When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

"**(2)    Quashing or Modifying the Subpoena.**    On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive."

On the face of it, the Rule appears to permit, subject to the court's discretion, the use of compulsory process to obtain pretrial disclosure in criminal cases provided only that compliance with a subpoena not be unreasonable or oppressive.  In *United States v. Nixon*,[56] a case involving a subpoena issued on motion of the government, however, the Supreme Court made clear that the Rule is not so capacious, at least as respects pretrial disclosure:

"[I]n order to require production prior to trial, the moving party must show:  (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'"[57]

KPMG and the government contend that *Nixon* supplies the controlling rule with respect to the subpoena to KPMG.  They argue that the defendants are on a "general 'fishing expedition,'" that the documents sought have not been described specifically, and that the materials sought are neither evidentiary nor relevant.  Defendants argue also that *Nixon* is not the proper standard and, in any case, that they have satisfied its requirements.

The Court begins with the applicable standard.  There is no question that courts confronted with subpoenas in criminal cases, at least subpoenas seeking pretrial production, have

---

[56]

418 U.S. 683 (1974).

[57]

*Id.* at 699-700 (footnote omitted).

25

applied *Nixon* almost without exception.  The Court has done so itself.[58]  But it is vitally important never to let the frequent repetition of a familiar principle obscure its origins and thus lead to mindless application in circumstances to which the principle never was intended to apply.  That is what both KPMG and the government seek here.  But *Nixon* should not so readily be divorced from the concerns that produced it.

The Federal Rules of Criminal Procedure became effective in 1946.  Rule 16 created only a narrow right of pretrial discovery from the government.  Rule 17 provided for the issuance of subpoenas requiring pretrial production without specifying the circumstances in which such pretrial disclosure might be appropriate subject only to the ability of the court to quash subpoenas if compliance would be unreasonable or oppressive.  The question quickly arose whether the seemingly generous availability of Rule 17 subpoenas returnable before trial would trump Rule 16's limitations on pretrial disclosure from the government.

In *Bowman Dairy Co. v. United States*,[59] the Supreme Court, unsurprisingly, held that Rule 17 must be read in light of Rule 16:

> "It was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms.  Rule 17 provided for the usual subpoena ad testificandum and duces tecum, which may be issued by the clerk, with the provision that the court may direct the materials designated in the subpoena duces tecum to be produced at a specified time and place for inspection by the defendant.  Rule 17(c) was not intended to provide an additional means of discovery.  Its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials."[60]

---

[58]

*See, e.g.*, *United States v. Scala*, 439 F. Supp. 2d 278 (S.D.N.Y. 2006) (Kaplan, J.).

[59]

341 U.S. 214 (1951).

[60]

*Id.* at 220.

*Bowman* was followed swiftly by *United States v. Iozia.*[61]  Judge Weinfeld there held

that a Rule 17(c) subpoena returnable before trial requires good cause and that good cause requires

a showing:

> "(1) That the documents are evidentiary and relevant; (2) That they are not otherwise
> procurable by the defendant reasonably in advance of trial by the exercise of due
> diligence; (3) That the defendant cannot properly prepare for trial without such
> production and inspection in advance of trial and the failure to obtain such inspection
> may tend unreasonably to delay the trial; [and] (4) That the application is made in
> good faith and is not intended as a general fishing expedition."[62]

*Nixon* adopted Judge Weinfeld's test.

The significance of this is plain.  The *Bowman-Iozia-Nixon* standard exists to

reconcile the broad language of Rule 17(c) with the limitations on pretrial discovery inherent in the

far narrower language of Rule 16.  In other words, its function is to prevent the "exception" (i.e., the

broad language of Rule 17(c)) from swallowing the "rule" (i.e., the Rule 16 limitations on the

discovery available to criminal defendants).  Here, however, no reconciliation of Rules 16 and 17(c)

is necessary to the extent that the documents defendants seek are material to the preparation of their

defense. *Nixon* therefore does not even address, much less resolve, the issue of the appropriate

standard where a Rule 17(c) subpoena is sought to compel production by a person in physical

possession of materials that are within the legal control of the government and to which defendants

have a right under Rule 16(a)(1)(E).

KPMG nevertheless argues that *Nixon* should be applied here to quash to the

subpoena and thus to rely only upon a demand by the government that KPMG give the documents

---

[61]

    13 F.R.D. 335 (S.D.N.Y. 1952).

[62]

    *Id.* at 338.

to it so that the government may produce them to the defendants.  But its argument is unpersuasive.

First, as the foregoing discussion shows, there is no reason to limit the plain language of Rule 17(c) where, as here, there is no conflict between the limited discovery afforded by Rule 16 and the broad words of Rule 17(c).  The text of Rule 17(c) alone strongly suggests the conclusion that the subpoena should be enforced unless compliance would be unreasonable or oppressive.  No rational purpose would be advanced by going through the charade of ordering the government to request the documents from KPMG so that the government may turn them over to the defendants.

Second, the Court cannot imagine any proper reason for KPMG to insist on applying the *Nixon* criteria even to documents producible under Rule 16(a)(1)(E).  True, it perhaps is conceivable that the government, if the subpoena were quashed, would decide, notwithstanding its legal obligations and its previous statements, not to insist that KPMG produce the documents to it under the DPA.  But no one has suggested any legitimate basis for the government to make such a decision.  To the contrary, the government already has offered to make the request, at least with respect to certain of the specifications.  So KPMG must have in mind refusing to comply and thus forcing the government to sue it to enforce KPMG's obligations under the DPA – a course that would do nothing save, perhaps, stalling a final resolution and perhaps the trial of this case indefinitely.  KPMG should not be permitted to employ empty formalisms that contribute nothing to a just, speedy and economical resolution of this matter on the merits.

Finally, and perhaps most importantly, KPMG has had a full and fair opportunity to litigate any claim that it is not obliged to produce to the government the documents that the Court has found to be material to the defense.  Its arguments have been rejected.  There is no proper reason to permit it to attempt to revisit this ground in another forum.

28

The Court therefore applies Rule 16's standard and declines to quash the subpoena to the extent it seeks documents that it has held are material to the preparation of the defense and within the possession, custody or control of the government.

B.    *The Privilege Claim*

KPMG's motion to quash makes broad, unspecific and unsubstantiated claims of attorney-client privilege and work product protection.  These claims are pertinent both to its motion to quash the Rule 17(c) subpoena and to its contention that documents in its physical possession that are within the government's legal control by virtue of the DPA nevertheless are beyond the government's authority under paragraph 8(e)(I).[63]

"The broad outlines of the attorney-client privilege are clear: '(1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.'"[64]

---

[63]    At oral argument, counsel for KPMG quoted *United States v. Nachamie*, 91 F. Supp. 2d 552, 564 (S.D.N.Y. 2000), for the proposition that communications between the government and a third party about whether the government will bring charges against the third party are not discoverable because they may be protected by work product privilege. Tr., Mar. 12, 2007 [docket item 903], 106.  *Nachamie*, however, was applying the *Nixon* standard to a Rule 17(c) subpoena.  Rule 16 contains its own exception for materials protected by work product privilege, FED. R. CRIM. P. 16(a)(2), which does not bar the production ordered by the Court.  As the Court is applying Rule 16's standard to the subpoena directed to KPMG, *Nachamie* would be inapposite in any case.  The Court therefore need not address the question whether it is persuasive on this point.

[64]    *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 119 F.3d 210, 214 (2d Cir. 1997) (quoting *In re Grand Jury Subpoena Duces*

As an initial matter, the Category 1 and 2 documents were not communications between attorney and client, were not intended to be and were not in fact kept confidential by KPMG, and were not made for the purpose of obtaining or rendering legal advice.  They were parts of exchanges with the government.  They never were privileged.[65]

Category 3 documents in KPMG's hands in theory might have been privileged or contained protected work product.  It is well settled, however, that "[t]he burden of establishing the existence of an attorney-client privilege, *in all of its elements*, rests with the party asserting it."[66] Thus, KPMG had the burden of identifying the documents as to which it claims privilege and, with respect to each, demonstrating "that [it] was: (1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice."[67]  "That burden cannot be met by 'mere conclusory or ipse dixit

_____

*Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1036 (2d Cir. 1984)).

There are two important qualifications to this summary, although neither is material here. First, the privilege in some circumstances covers communications from the lawyer to the client.  Second, "in appropriate circumstances [it] extends to otherwise privileged communications that involve persons assisting the lawyer in the rendition of legal services." *In re Grand Jury Subpoenas Dated Mar. 24, 2003 Directed to (A) Grand Jury Witness Firm and (B) Grand Jury Witness*, 265 F. Supp. 2d 321, 324-25 (S.D.N.Y. 2003).

[65]    KPMG apparently concedes this.  KPMG Mem. (1/22/07) [docket item 857] 18-19.

[66]    *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000) (quoting *Int'l Bhd. of Teamsters*, 119 F.3d at 214) (alteration in original, emphasis added); *see also United States v. Schwimmer*, 892 F.2d 237, 244 (2d Cir. 1989); *In re Horowitz*, 482 F.2d 72, 82 (2d Cir. 1973).

[67]    *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996); *accord*, *In re Grand Jury Proceeding*, 79 F. App'x 476, 477 (2d Cir. 2003).

assertions' in unsworn motion papers authored by attorneys."[68]  Work product claims are subject to similar principles.[69]

KPMG has offered no evidence that any Category 3 documents were confidential attorney-client communications or attorney work product in inception, let alone that they have remained confidential.  Accordingly, KPMG has failed to carry its burden of demonstrating that the materials in question are protected.[70]

C.    *Alleged Burden*

KPMG's  motion sought to quash Specifications 1 through 6 of the subpoena on the ground that compliance would be unduly burdensome.  It is unclear to what extent this objection was

---

[68]

    *OneBeacon Ins. Co. v. Forman Int'l, Ltd.*, No. 04 Civ. 2271 (RWS), 2006 WL 3771010, at *4 (S.D.N.Y. Dec. 15, 2006) (quoting *Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*, 215 F.R.D. 466, 472 (S.D.N.Y. 2003) (quoting *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 146 (2d Cir. 1987) (quoting *In re Bonanno*, 344 F.2d 830, 833 (2d Cir. 1965)))).

[69]

    *E.g.*, *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 384 (2d Cir. 2003).

[70]

    *See von Bulow*, 811 F.2d at 146 (burden of proving elements of privilege not discharged by "mere conclusory or ipse dixit assertions"); *see also Bogle v. McClure*, 332 F.3d 1347, 1358 & n.9 (11th Cir. 2003) (affirming finding of no privilege where appellants failed to provide any evidence on certain elements); *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 709 n.5 (5th Cir. 2001) (affirming finding of no privilege for failure to provide evidence and rejecting "[t]he dissent's argument that the district court was obliged to examine each document before ruling [because] . . . the claimants of the attorney-client privilege had the burden of demonstrating that each document withheld was entitled to protection"); *United States v. Aramony*, 88 F.3d 1369, 1392 n.14 (4th Cir. 1996) (where a party "provided no support, such as affidavits, for his claim that the disputed communications were protected by the attorney-client privilege[, . . .] the district court was entitled to find that he had not met his burden in establishing that these communications were protected by the attorney-client privilege").

directed to Specification 6 alone,[71] and it could not have been directed to the narrow subset of the documents sought by Specification 6 that the Court has found to be material.  In any event, it is unpersuasive.

A person or entity served with a subpoena or discovery request:

"cannot evade its discovery responsibilities by simply intoning this familiar litany that the [disclosure sought would be] burdensome, oppressive or overly broad.  In *Roesberg* [*v. Johns-Manville Corp.*, 85 F.R.D. 292, 296-97 (E.D. Pa. 1980)], the Court articulated defendant's burden:

"'Defendant must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.'"[72]

KPMG's entire showing on the issue of burden consists of a declaration of counsel that states that KPMG has been named in numerous civil suits regarding these tax shelters and that an initial survey of its outside counsel indicated that those counsel "possess over 1000 boxes of documents as well as numerous gigabytes of electronic data potentially responsive to the Subpoena requests."[73]  In consequence, the declaration submitted on KPMG's behalf was not sufficient to establish the extent of the burden that would be required to comply with the subpoena.  Moreover, the matters at issue now have been dramatically reduced because KPMG has withdrawn the motion as to all specifications save Specification 6, and the Court has narrowed Specification 6 substantially.

---

[71]

KPMG Mem. (1/22/07) [docket item 857] 18-19.

[72]

*Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y. 1984) (internal quotations, alterations and citations omitted).

[73]

Stillman Decl. (1/22/07) [docket item 858] ¶ 10.

There is simply no basis upon which to conclude that compliance with Specification 6, as modified, would be burdensome save that it would make little sense to require KPMG to produce Category 2 documents absent some reason to believe that the government does not have or will not produce all of them to the extent the Court has found production required.

IV

Accordingly, the defendants' motion for an order, pursuant to Fed. R. Crim. P. 16(a)(1)(E), directing the government to produce the materials described in the subpoena directed to KPMG is granted to the extent that the government, on or before May 11, 2007, shall produce to defendants the following documents in its possession, custody or control, including such documents as are in the physical possession of KPMG:

1.  Correspondence between KPMG on the one hand and the IRS or the Senate relating to FLIP, OPIS, BLIPS, SOS and any of the events alleged in the superseding indictment.

2.  The Obstruction Section (as defined above) of the KPMG White Paper.

3.  All drafts of the DPA Statement of Facts.

4.  Communications between KPMG and the USAO and Department of Justice relating to FLIP, OPIS, BLIPS, SOS and any of the events alleged in the superseding indictment.

5.  Documents prepared by KPMG or its counsel (i) summarizing or recording in any way the substance of communications between KPMG on the one hand and the USAO, the Department of Justice, the IRS, or the Senate on the other

33

that relate to the events alleged in the superseding indictment, or (ii) discussing evidence bearing on the accuracy of the Statement of Facts or any admissions sought by the government.

The motion is denied in all other respects.  As these documents are within the physical possession of KPMG but also within the legal control of the government, and as KPMG is before the Court and has had a full opportunity to be heard on the question whether it is obliged to produce them pursuant to the DPA, KPMG shall produce the documents described by paragraphs 1 and 5 to defendants and the government on or before May 11, 2007.  Inasmuch as the documents described by paragraphs 2 through 4 are in the physical possession of the government, there appears to be no need to require KPMG also to produce them.

KPMG's motion to quash the subpoena [docket item 856] is withdrawn insofar as it seeks to quash Specifications 1 through 5.  Insofar as the motion to quash is directed to Specification 6, it is granted except insofar as Specification 6 seeks production of the documents described in paragraphs 1 and 5 above.  KPMG shall produce all documents described in paragraphs 1 and 5 to the defendants and the government on or before May 11, 2007.

SO ORDERED.

Dated:       May 1, 2007

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)