UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,

       -against-                                       S1 05 Crim. 0888 (LAK)

JEFFREY STEIN, et al.,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM AND ORDER**

LEWIS A. KAPLAN, *District Judge*.

       The four remaining defendants and the government move *in limine* for various evidentiary determinations.

*I.  Defendants' Motion*

*A.*    *Testimonial Co-conspirator Declarations*

       Defendants first seek a determination that previous sworn testimony of defendants in this case – including testimony at depositions, before a Senate subcommittee and before the IRS – that might qualify as non-hearsay under Fed. R. Evid. 801(d)(2)(E)[1] – is inadmissible unless the declarants are available for cross-examination because it would violate the Confrontation Clause.

       A testimonial statement made in furtherance of a conspiracy triggers the Sixth Amendment right of confrontation, but may be admissible over Confrontation Clause objection, depending upon the objects of the conspiracy.[2] This includes truthful statements designed to lend

---

[1] The rule embodies the so-called co-conspirator exception to the hearsay rule, which actually is a misnomer in view of the fact that the Federal Rules of Evidence define hearsay in a manner that excludes statements by co-conspirators during the course and in furtherance of a conspiracy.

[2] *United States v. Stewart,* 433 F.3d 273, 292-93 (2d Cir. 2006) (statements to investigators to mislead and lend credence to false statements in furtherance of conspiracy to obstruct

2

credence to false statements intended to mislead.[3]  Nevertheless, as the parties have not provided the Court with the precise statements to which their motion relates, it is impossible to reach any definitive conclusions.  This branch of defendants' motion therefore is denied without prejudice to renewal at trial.


*B.     E-mails Offered as Business Records*

Defendants seek a determination that e-mails are not automatically admissible as business records under Fed. R. Evid. 803(6).   The government agrees in principle, but the parties disagree as to the standard to be applied.

Rule 803(6) renders admissible for its truth a record made at or near the time by a person with knowledge if the record was "kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum."  The defendants erroneously argue that the government must "show[] that the e-mails at issue were created pursuant to established company procedures for the systematic or routine making of company records."[4]  Such a specific showing is not required, as regularity of making such records and of the business activity is all that is required.[5]  Although the phrase "business duty" appears frequently in Rule 803(6) cases, the defendants read the phrase too narrowly.  The phrase "business duty" is used interchangeably with phrases such as "[being] part of a business routine"[6] or "[acting] in the regular

---

[cont.] justice or commit similar offenses not rendered inadmissible by Confrontation Clause); *United States v. Logan,* 419 F.3d 172, 178 (2d Cir. 2005) (rejecting the government's contention that co-conspirator's statements were not testimonial); *United States v. Baines,* 486 F. Supp.2d 1288, 1300 (D. N.M. 2007) (noting that *Crawford* did not "issue a mandate that *all* co-conspirator statements are to be considered non-testimonial" and concluding that when a co-conspirator "statement is testimonial it is subject to the requirements of the Confrontation Clause").

[3] *Stewart,* 433 F.3d at 293.

[4] Defendants' Memorandum in Support of their Motion in Limine [DI 932] ("Def. Mem.") at 9-10.

[5] *See, e.g.*, *Parker v. Reda* 327 F.3d 211, 215 (2d Cir. 2003); *United States v. Williams,* 205 F.3d 23, 34 (2d Cir. 2000); *United States v. Freidin,* 849 F.2d 716 (2d Cir. 1988); *In re Blech Securities Litigation,* No. 94 Civ. 7696 (RWS), 2003 WL 1610775, *5 (S.D.N.Y. 2003).

[6] *Freidin*, 849 F. 2d at 721.

course"⁷ to describe the requirement that the declarant be someone inside the business, not a third party.⁸

Once again, it is impossible to determine in the abstract which of the documents defendants have in mind satisfy the Rule and which do not. Nor is it possible to pass to an appropriately informed consideration of whether the circumstances of particular documents indicate a lack of trustworthiness. This branch of defendants' motion therefore also is denied without prejudice to renewal at trial.

C.    *IRS Litigation Documents and Closing Agreements Offered as Public Records*

The defendants argue that certain IRS documents, including Revenue Agent Reports ("RARs") and Closing Agreements, are not admissible over hearsay objection under Rule 803(8)(B) because they include "matters observed by police officers and other law enforcement personnel." The defendants argue also that Closing Agreements must be excluded under Rule 408.

1.    *Public Records*

Whether the criminal case exception of Rule 803(8)(B) applies to RARs and Closing Agreements will depend upon whether IRS agents are "other law enforcement personnel" within the meaning of the rule.

The Second Circuit "construe[s] 'other law enforcement personnel' to include, at the least, any officer or employee of a governmental agency which has law enforcement responsibilities."⁹ It held in *United States v. Ruffin* that "IRS personnel who gather data and information and commit that information to records which are routinely used in criminal prosecutions are performing what can legitimately be characterized as a law enforcement function."¹⁰

---

7
    Advisory Committee Notes to Rule 803.

8
    *See, e.g.*, *United States v. Reyes,* 157 F.3d 949, 952 (2d Cir. 1998); *United States v. Zapata,* 356 F. Supp.2d 323, 329 (S.D.N.Y. 2005).

9
    *United States v. Oates,* 560 F.2d 45, 68 (1977) (finding report of Custom Service chemist to be inadmissible as an observation by "other law enforcement personnel").

10
    *United States v. Ruffin,* 575 F.2d 346, 356 (2d Cir. 1978); *see also United States v. Quinto,* 582 F.2d 224, 235 (2d Cir. 1978).

4

This holding is in some tension with *United States v. Rosa*[11] and *United States v. Felix*,[12] where the Circuit held that medical examiner reports are not excluded by the criminal case exception of Rule 803(8)(B). But *Rosa* and *Felix* do not abrogate *Ruffin*. Rather, they seem to rely on a conclusion that a medical examiner's report is not an observation of law enforcement personnel because it is routine and non-adversarial.[13]

The government does not contest that the RARs and Closing Agreements are "adversarial by nature,"[14] but it argues that the specific pieces of information that it seeks to offer, via a Rule 1006 summary, are "precisely the type of routine civil matter[s] recorded by the IRS."[15] The defendants do not address the specific data the government seeks to offer let alone explain how they might fall within the 803(8)(B) exclusion.[16]

It seems possible that specific pieces of information included in the IRS documents are non-adversarial and appropriately offered via the government's summaries. But it is impossible to tell without reviewing the specific information that the government proposes to include. Accordingly, this branch of defendants' motion also is premature.

---

[11] 11 F.3d 315 (2d Cir. 1993).

[12] 467 F.3d 227 (2d Cir. 2006).

[13] *Rosa*, 11 F.3d at 332.

[14] Defendants' Joint Reply Memorandum in Support of their Motion in Limine [DI 994] ("Def. Reply") at 12.

[15] Government's Response Memorandum [DI 963] ("Gov't Resp.") at 46.

[16] Def. Mem. at 12. Defendants address the RAR and Closing Agreements as a whole. "The RARs include statements like: 'Since the transaction entered into lacks economic significance and is entered into primarily for this tax avoidance purpose' and 'underpayment attributable to fraud.' The Closing Agreements with taxpayers are replete with statements that the 'taxpayers concede,' including items 'not properly disclosed.'" *Id*.

5

      2.     *Closing Agreements*

The defendants argue that Closing Agreements with the IRS should be excluded under Rule 408.[17] The argument is unpersuasive.

The government offers the Closing Agreements for the purpose of providing a predicate for summary exhibits indicating only the identity of each shelter and taxpayer, the loss claimed, and the amount of tax due absent the loss claimed. It does not propose to use them to prove liability for, invalidity of, or, in the sense of the rule, the amount of a disputed claim. In consequence, the Closing Agreements, to this extent and for this purpose, are not excluded by Rule 408. This branch of defendants' motion is denied.

D.     *Expert Opinions by Lay Witnesses*

Defendants offer the uncontroversial proposition that lay and percipient witnesses may not give expert testimony and, on that basis, to exclude unspecified government evidence. In the absence of specific information as to precisely what testimony is included in defendants' challenge, the Court cannot properly rule on the objection.

E.     *Legal Conclusions in Documentary Evidence*

Defendants seek also to preclude, presumably by redaction, any statements of law in documentary evidence. They contend that such evidence would confuse and mislead the jury as to the applicable legal standards.[18]

It is difficult to understand, at least in the abstract, how this case possibly could be tried without at least some of the evidence to which defendants object. Among the government's claims, for example, is the contention that factual recitals in various legal opinions were materially false and misleading. Even more basically, however, the Court sees no reason to think that the jury

---

[17] Newly amended Rule 408 provides that: "Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount . . . : (1) furnishing or offering or promising to furnish or accepting or offering or promising to accept a valuable consideration in compromising or attempting to compromise the claim ; and (2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority."

[18] Def. Mem. at 17.

could not follow limiting instructions with respect to any statements in documents that may be admitted or that it would not scrupulously adhere to the Court's instructions at the close of the evidence.

F.  *References to Entities in Statements of Non-Testifying Co-Defendants*

Defendants Ruble, Larson, and Pfaff argue that, under *United States v. Bruton*,[19] references to entities with which they have been associated – Presidio in the case of Larson and Pfaff, Brown & Wood in the case of Ruble – must be excised from any statements of non-testifying co-defendants that are admitted at trial.[20]

In *Bruton*, the Supreme Court held that the Confrontation Clause prohibits introduction of a non-testifying co-defendant's statement that implicates the defendant in a crime.[21] Statements that become incriminating "only when linked with evidence introduced later at trial," however, do not create *Bruton* problems.[22] In contrast, a statement that refers to the defendant by a nickname does create a *Bruton* problem because the connection between nickname and defendant is direct and obvious.[23]

In *Chen*, the Second Circuit held that there was no *Bruton* problem when a statement referring to a specific entity (the Board) was admitted in a trial with co-defendants who were members of the entity (directors).[24] In reaching this conclusion, the *Chen* panel held that based on the specific statements at issue did not implicate *Bruton* because "[t]he statements that inculpate [defendants] only do so when placed in context with other testimony . . . ."[25]

---

[19] *Bruton v. United States*, 391 U.S. 123 (1968).

[20] Def. Mem. at 20.

[21] *Bruton*, 391 U.S. at 126.

[22] *Gray v. Maryland*, 523 U.S. 185, 195 (1998) (quoting *Richardson v. Marsh*, 481 U.S. 200, 208 (1987)).

[23] *Gray*, 523 U.S. at 195.

[24] *United States v. Chen*, 393 F.3d 139, 148-50 (2d Cir. 2004).

[25] *Id.* at 150.

7

Defendants argue that the inferential step required to link an entity name to a defendant associated with that entity is obvious and direct. The government argues that the inferential step is more attenuated.

Defendants do not challenge specific statements as raising *Bruton* issues. *Chen* makes clear that the inferential step between entity name and a member of that entity is not, *per se*, sufficiently obvious and direct to raise a *Bruton* issue. The Court can evaluate the obviousness and directness of the inference only in the context of a given statement. Accordingly, this branch of defendants' motion is denied subject to defendants' right to raise the issue with respect to specific statements as they are offered.

G.   *Vulgar Language in Certain Exhibits*

Defendants move to replace the phrase "shit and [*sic*] get off the pot," which appears in three government exhibits, with less potentially offensive language. The idea that a New York jury would be so offended by this phrase, occurring on three of the 128,000 pages of documentary evidence that the government proposes to offer, as to result in serious unfair prejudice is unpersuasive.

H.   *Chenery Associates Inc. Payments*

Defendants move to preclude, under Rule 403, evidence of payments made by Chenery in 2000-2002 to Ruble's trust. The government argues that these payments, along with 1996 and 1997 payments offered under Rule 404(b), establish a pattern – Ruble reported payments if the payor independently reported the payments, but reported only some of payments if the payor did not report the payments – that is probative of Ruble's intent or knowledge in the charged counts of personal tax evasion.[26]

The 2000-2002 payments are offered to show intent or knowledge and have an uncertain probative value that depends, in part, on the admissibility of the 1996 and 1997 payments. By memorandum and order of Oct. 12, 2007, the Court deferred ruling on the admissibility under Rule 404(b) of the 1996 and 1997 payments until it is clear that intent is in issue and the probative value of the evidence is clearer.[27] For the same reasons, it is appropriate to defer ruling on the admissibility of the 2000-2002 payments until such time, if any, as the Court addresses again the admissibility of the 1996 and 1997 payments.

---

[26] Gov't Resp. at 59-60.

[27] DI 1246.

8

## II.  The Government's Motion

### A.  Admissibility of Out-of-Court Statements

The government seeks preliminary rulings on the admissibility of general categories of out-of-court statements.  The government argues that many of these statements will be admissible over hearsay objection (1) under Fed. R. Evid. 801(c) as non-hearsay, (2) under Fed. R. Evid. 801(d)(2)(E) as non-hearsay statements made in furtherance of a "joint venture," or (3) under Fed. R. Evid. 803(6) as business records.

These bases of admissibility cannot be applied in the abstract.  Admissibility ultimately must turn on characteristics of the particular items of evidence and the purpose for which it is offered.  Any definitive rulings must await trial.  Nevertheless, the Court addresses the parties' conflicting understandings of the scopes of these bases for admissibility in order to promote efficiency at trial.

#### 1.  Non-hearsay

In summarizing the definition of hearsay, the government makes two potentially inaccurate statements about the applicable standard.

First, the government asserts that verbal acts and communications relevant thereto are not hearsay.[28]  But there is no independently defined category of verbal acts that is excluded from the hearsay definition.  Rule 801(c) excludes from the definition of hearsay statements that are not offered to prove the truth of the matter asserted.  Verbal acts are hearsay only to the extent that they are offered to prove the truth of the matter asserted.  In the same way, communications relevant to a verbal act are not hearsay only to the extent the communications make up the verbal act and thus are not offered for their truth.

Second, the government asserts that the "admission of non-hearsay 'raises no Confrontation Clause concerns.'"[29]  This implies that a non-hearsay statement *never* could raise a Confrontation Clause issue.  The scope of the Confrontation Clause, however, is defined in terms of testimonial statements, not in terms of hearsay.  A more accurate statement is that out-of-court statements not offered for their truth raise no Confrontation Clause concerns.[30]

---

[28]  Government's Memorandum in Support of Its Motions in Limine [DI 1035] ("Gov't Mem.") at 6-7.

[29]  *Id.* at 7.

[30]  *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004).

### 2.    The Co-Conspirator Exception

The government asserts that a statement may be admitted under Rule 801(d)(2)(E) as long as the statement was made by a joint venturer and was in furtherance of a joint venture, whether or not the joint venture was for a lawful purpose.[31] Specifically, it maintains that it need only show that a defendant and the declarant "were joint venturers in the endeavor of designing, marketing and implementing the shelters at issue" in order to warrant receipt of the declarant's out-of-court statement under Rule 801(d)(2)(E).[32]

There is a conflict among the circuits on this point.[33] Many Second Circuit cases suggest that our Circuit is of the view that only statements in furtherance of conspiracies to accomplish illegal objectives are admissible. In *Ragland*, for example, the Second Circuit wrote that the "threshold requirement for admissibility is satisfied by a showing of a likelihood of an illicit association between the declarant and the defendant . . . ."[34] Similarly, it observed in *Gigante* that "it is the unity of interests stemming from a specific shared criminal task that justifies Rule 801(d)(2)(E)."[35] Indeed, the Circuit's standard for determining whether a statement is in furtherance of a conspiracy reveals the assumption that the conspiracy must be unlawful: "Statements by a coconspirator are in furtherance of the conspiracy within the meaning of Rule 801(d)(2)(E) if they prompt the listener to respond in a way that facilitates the carrying out of criminal activity."[36] Nevertheless, the Circuit more recently said in *Russo* that "the objective of the joint venture that

---

[31] Rule 801(d)(2)(E) provides that a statement is "not hearsay" if the statement is offered against a party and is "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy."

[32] Gov't Mem. at 14.

[33] *See* 5 WEINSTEIN'S FEDERAL EVIDENCE § 801.34[3][a], at 801-78 to 801-78.2 (2007).

[34] *United States v. Ragland*, 375 F.2d 471, 477 (2d Cir. 1967). *See also United States v. Matos*, 905 F.2d 30, 34 (2d Cir. 1990); *United States v. Garcia-Duarte*, 718 F.2d 42, 45 (2d Cir. 1983); *United States v. Terry*, 702 F.2d 299, 320 (2d Cir. 1983); *United States v. Lombardozzi*, No. 02 Cr. 273 (PLK), 2003 WL 1956290, *1 (S.D.N.Y. 2003); 5 WEINSTEIN'S FEDERAL EVIDENCE § 801.34[3][a] n.11.3.

[35] *United States v. Gigante*, 166 F.3d 75, 83 (2d Cir. 1999) ("general conspiracy to be members of the Mafia" insufficient to satisfy the Rule 801(d)(2)(E); statement must be in furtherance of "a conspiracy with some specific criminal goal").

[36] *United States v. Rahme*, 813 F.2d 31, 35 (2d Cir. 1987).

justifies deeming the speaker as the agent of the defendant need not be criminal at all."[37]  The question is whether *Russo* goes as far as the government suggests.

Having reviewed the specific categories of documents that the government proffers on this basis, it is apparent that the co-conspirator exception in all or most cases is not the principal hearsay exception upon which the government relies.  The Court sees little benefit in offering what could well amount to an advisory opinion on this important question.  Accordingly, it declines to rule on the point in advance of trial.

B.   *Proposed Defense Experts*

The government initially moved to preclude the testimony of two expert witnesses: Andrew Miller, Ph.D. and Deen Kemsley, Ph.D.,[38] arguing that the proposed testimony of both is likely to be irrelevant and duplicative.[39]  Its reply memorandum, however, proposed that the Court "defer resolution of its motion on the defendants' experts until a more appropriate point during the trial."[40]  The Court defers judgment on this branch of the government's motion.

### III.   Conclusion

The *in limine* motions of the defendants and the government [docket items 931 and 1035] are granted to the extent set forth above and otherwise denied.

SO ORDERED.

Dated:   October 15, 2007

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[37] *United States v. Russo*, 302 F.3d 37, 45 (2d Cir. 2002).

[38] Gov't Mem. at 39-44.

[39] *Id.* at 38-44.

[40] Government's Reply Memorandum in Support of its Motion in Limine [DI 1187] at 14-15.