UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
UNITED STATES OF AMERICA,

          -against-                                        S1 05 Crim. 0888 (LAK)

JEFFREY STEIN, et al.,

                       Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**MEMORANDUM AND ORDER**

LEWIS A. KAPLAN, *District Judge.*

       Defendants are charged with conspiring to defraud the United States and multiple counts of tax evasion based on a series of allegedly fraudulent tax shelters. The government originally indicted nineteen defendants on forty-six counts in a case that has been called "the largest criminal tax case in U.S. history."[1] The indictment has since been dismissed as to thirteen defendants;[2] four now remain and are currently on trial. Additional background of this case is fully set forth in the Court's prior opinions, familiarity with which is assumed.[3]

       Before trial began, the government sought *in limine* rulings on a number of trial-related matters in its letter brief of September 22, 2008. This order resolves those issues that remain outstanding.

I.    *Scope of the Fraud*

       A.    *Hearsay Objections*

---

[1] *United States v. Stein*, 521 F. Supp. 2d 266, 268 (S.D.N.Y. 2007).

[2] *United States v. Stein*, 541 F.3d 130 (2d Cir. 2008).

[3] *See, e.g., United States v. Stein*, 488 F. Supp. 2d 350 (S.D.N.Y. 2007) (deciding defendants' motion to compel production of materials from government); *United States v. Stein*, 429 F. Supp. 2d 633 (S.D.N.Y. 2006) (denying defendants' motion to dismiss, to transfer, and to strike portions of the indictment).

The government seeks to offer summary charts bearing on the breadth of the alleged fraud. According to the government, defendants' tax shelters generated "billions of dollars" in tax losses, resulting in "over a billion dollars" in taxes not paid.[4] Defendants levy multiple objections against the charts and the underlying documents on which they are based. These documents consist of tax returns, Revenue Agent Reports ("RAR"s), and Closing Agreements.

The government argues that the documents underlying the summary charts are admissible as business or public records, under Fed. R. Evid. 803(6) and 803(8). Previously, the government did not contest that the RARs and Closing Agreements were "'adversarial by nature.'"[5] This Court's order dated October 15, 2007, concluded that under Rule 803(8), specific pieces of information included in the RARs and Closing Agreements could be admissible, but their admissibility turned on whether the information was "non-adversarial."[6] The two major categories of information contained in the summary charts that the government now seeks to admit consist of (1) the tax loss attributable to the charged transactions; and (2) the tax benefit that would have resulted had the deductions been allowed.

### 1. *Claimed Tax Loss*

The tax loss information "restates the amount of loss claimed on the return, as summarized in the Closing Agreement or tax return itself."[7] Insofar as this information already has been admitted into evidence via tax returns, there no longer remains a reasonable dispute about its admissibility. Where the summary charts draw tax loss figures from tax returns and other documents that have not been admitted, the information is "non-adversarial."

To determined the claimed tax loss, the government looked at a tax return and then "verif[ied] the amount of tax loss attributable to the shelter at issue by referring to a Form 906 Closing Agreement."[8] The taxpayer or his or her accountant, not the Internal Revenue Service ("IRS"), calculated the tax loss figure that appeared on the tax return. The IRS merely confirmed that the figure on the return represented a loss resulting from one of defendants' products by comparing it to other documents. Where the IRS agent could not distinguish a loss attributable to a challenged

---

[4] Gov't Br. at 1.

[5] *United States v. Stein*, 2007 WL 3009650 (S.D.N.Y. Oct. 15, 2008).

[6] *Id.*

[7] Gov't Br. at 3.

[8] Catanzaro Dec. at ¶ 4.

transaction, the government indicated on the chart that it could not isolate the loss.[9] The claimed tax loss figures are thus admissible under Rule 803(8).

### 2. Tax Benefit

The second category of information the government seeks to admit is the tax benefit that would have resulted had the deductions been allowed. To identify the tax benefit, the government "typically rel[ied] on the RAR."[10] Again, analysis of whether a specific piece of information in an RAR is admissible under Rule 803(8) turns on whether it was "routine and non-adversarial."[11] Unlike the tax loss, the calculation of the tax benefit reflects IRS analysis and judgment. The calculation of liability is the first step in a possible adversarial process–the taxpayer could accept the calculations and waive his or her right to appeal, or dispute the IRS's conclusion within that agency or in Court.[12] This information is thus "adversarial in nature" and excludable as hearsay.

The cases cited by the government are not to the contrary. The government cites only two criminal cases in support of the admissibility of the tax benefit calculation. In the first, *United States v. Jones*,[13] the Second Circuit held that an IRS transcript was admissible under Rule 803(8). The transcript, however, was used only to demonstrate that the defendant had filed her tax return without remitting payment, demonstrating conduct inconsistent with her stated belief that one could not file a return and payment separately. The document was not offered to demonstrate any calculations by IRS agents.[14]

---

[9] *Id*. at ¶ 6(e).

[10] Catanzaro Dec. at ¶ 4.

[11] *Stein*, 2007 WL 3009650, at *2.

[12] *See* IRS Form 4549 (2005), http://www.irs.gov/pub/irs-utl/form4549.pdf; *see also Martin v. IRS*, 857 F.2d 722, 723-24 n.2 (10th Cir. 1988) (explaining that after an audit, an RAR is sent to the taxpayer describing proposed adjustments and the taxpayer's options if he or she disagrees with the agent's conclusions).

[13] 958 F.2d 520 (2d Cir. 1992).

[14] *Id.* at 521-22.

In the second case, *United States v. Solomon*,[15] the Ninth Circuit affirmed the district court's admission of tax returns "not for the truth of their content, but to establish the existence of a limited partnership deduction."[16] The *Solomon* court did not permit the admission of IRS calculations under Rule 803(8), and its decision does not support the proposition that such calculations are admissible under any hearsay exception.

The other cases cited by the government are civil cases, in which Rule 803(8)(B)'s law enforcement personnel exception did not apply.[17] They either permitted the admission of IRS documents to demonstrate routine activities, such as the fact that a taxpayer received a form, or to show that an assessment in fact had been made.[18] Other cases demonstrate that assessments may be used in civil cases as presumptive–but not conclusive–proof of what the taxpayer owes where the amount of the assessment is at issue.[19] This line of cases does not apply here, in a criminal case where the tax benefit is not directly at issue. Even if it did, the evidence would be inadmissible under Rule 403 simply based on the waste of time involved in the defendants contesting each figure.

Finally, the cases cited by the government do not support an argument that the tax benefit information is separately admissible under the business records exception or Rule 803(8)(A).

### B. Other Objections

The defendants argue also that admitting the charts and underlying documents into evidence would violate the Confrontation Clause.[20] The tax loss figures contained in the charts are not akin to a witness statement taken in the course of an interrogation by a law enforcement officer,

---

[15] 825 F.2d 1292 (9th Cir. 1987)

[16] *Id.* at 1299.

[17] *See United States v. Fior D'Italia, Inc.*, 536 U.S. 238 (2002); *Perez v. United States*, 312 F.3d 191 (5th Cir. 2002); *Malkin v. United States*, 243 F.3d 120 (2d Cir. 2001); *Hughes v. United States*, 953 F.2d 531 (9th Cir. 1991); *United States v. Sitka*, 1994 WL 389473 (D. Conn. May 19, 1994).

[18] *Malkin*, 243 F.3d at 122-23; *Hughes*, 953 F.2d at 539-40.

[19] *Fior D'Italia, Inc.*, 536 U.S. at 243; *Perez*, 312 F.3d at 195.

[20] Defs' Br. at 26-27.

as in *Crawford*.[21] As these figures are not "testimonial" in the *Crawford* sense, their admission does not implicate the Sixth Amendment.[22]

Finally, the defendants raised numerous objections to the accuracy of the summary charts themselves, rather than to the admissibility of information contained in the underlying documents. As the concerns defendants cited related almost exclusively to tax benefit rather than tax loss, to the extent that any issues relating to the accuracy of the charts still remain, defendants may renew their objections if and when they become relevant. Furthermore, this ruling does not decide the issue of whether the tax loss figures are admissible under Rule 403 due to the possible unfair prejudicial effect sums totaling in the billions of dollars may have on the jury, especially in these troubled economic times. Defendants are free also to raise this issue if and when it becomes relevant.

## II. Additional Exhibits and Witnesses

The government has requested that it be permitted to call four additional witnesses, all of whom the government states it first interviewed after August 2007. Mr. Greenberg opposes the government's request as to three of the witnesses: Sung Lee, Doug Lowry, and Mark Gallagher. The government has not responded to Mr. Greenberg's objections and has not adequately explained why it has "good cause" to call the additional witnesses, as required by the Court's April 7, 2006 order.[23] Accordingly, the government's request is denied without prejudice to renewal if and when the government demonstrates good cause.

The government seeks also to add a number of new exhibits. Certain of these exhibits relate to David Amir Makov, who became a cooperating witness only after the government submitted its original witness list. Mr. Greenberg does not object to the admission of the bulk of these exhibits, and accordingly, the government's request to add them is granted.

Mr. Greenberg does, however, object to two Makov-related exhibits (5049 and 5050) that relate to the profitability of transactions similar to SOS on the grounds that they will be prejudicial and confusing. As these objections relate to admissibility rather than good cause, they are denied without prejudice to renewal at the time the government seeks to admit them. The government's request to add Exhibits 5049 and 5050 to its exhibit list is granted.

---

[21] *See Crawford v. Washington*, 541 U.S. 36, 51-52 (2004).

[22] *Id.* at 52.

[23] *United States v. Stein*, 424 F. Supp. 2d 720, 724 (S.D.N.Y. 2006).

       The remainder of the exhibits the government seeks to admit includes exhibits that "focus more precisely on [the remaining] four defendants."[24] While this does not necessarily demonstrate good cause, neither does Mr. Greenberg demonstrate that he would be prejudiced. The government provided these exhibits to defense counsel in January 2008 and they do not appear to be voluminous. According to the government, the approximately sixty exhibits consist of about twelve "tax returns, engagement or opinion letters, and deal 'closing documents,'" while the remainder are one to two page emails.[25] The government's request to add these exhibits to its list is granted. Again, any objections that Mr. Greenberg has as to the admissibility of the documents may be made at the time the government seeks to admit them.

       SO ORDERED.

Dated:       November 3, 2008

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[24] Gov't Br. at 7.

[25] *Id*. at 6.